UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
AURELIUS CAPITAL PARTNERS, LP                          :
and AURELIUS CAPITAL MASTER, LTD.,                     :
                                                       :        07 Civ. 2715 (TPG)
                          Plaintiffs,                  :
                                                       :
                        - against -                    :
                                                       :
REPUBLIC OF ARGENTINA,                                 :
                                                       :
                          Defendant.                   :
-------------------------------------------------------------------- X
AURELIUS CAPITAL PARTNERS, LP                          :
and AURELIUS CAPITAL MASTER, LTD.,                     :
                                                       :        07 Civ. 11327 (TPG)
                          Plaintiffs,                  :
                                                       :
                        - against -                    :
                                                       :
REPUBLIC OF ARGENTINA,                                 :
                                                       :
                          Defendant.                   :
                                                       :
-------------------------------------------------------------------- X

(captions continued on inside cover)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO VACATE THE EX PARTE ATTACHMENT ORDER CONCERNING THE INSTITUTO NACIONAL DE TECNOLOGIA AGROPECUARIA'S RICE GENE TECHNOLOGY

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina and Instituto
Nacional de Tecnología Agropecuaria

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi
Christopher P. Moore

------------------------------------------------------------------------- X

BLUE ANGEL CAPITAL I LLC,

                    Plaintiff,

                    - against -

THE REPUBLIC OF ARGENTINA,

                    Defendant.

07 Civ. 2693 (TPG)

------------------------------------------------------------------------- X

AURELIUS CAPITAL MASTER, LTD. and ACP
MASTER, LTD.,

                    Plaintiffs,

                    - against -

THE REPUBLIC OF ARGENTINA,

                    Defendant.

09 Civ. 8757 (TPG)

------------------------------------------------------------------------- X

AURELIUS CAPITAL MASTER, LTD. and ACP
MASTER, LTD.,

                    Plaintiffs,

                    - against -

THE REPUBLIC OF ARGENTINA,

                    Defendant.

09 Civ. 10620 (TPG)

------------------------------------------------------------------------- X

AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.,

                    Plaintiffs,

                    - against -

THE REPUBLIC OF ARGENTINA,

                    Defendant.

10 Civ. 1602 (TPG)

------------------------------------------------------------------------- X

------------------------------------------------------------------------ X

AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.,

                     Plaintiffs,

                     - against -

THE REPUBLIC OF ARGENTINA,

                     Defendant.

10 Civ. 3507 (TPG)

------------------------------------------------------------------------ X

AURELIUS CAPITAL MASTER, LTD. and AURELIUS
OPPORTUNITIES FUND II, LLC,

                     Plaintiffs,

                     - against -

THE REPUBLIC OF ARGENTINA,

                     Defendant.

10 Civ. 3970 (TPG)

------------------------------------------------------------------------ X

BLUE ANGEL CAPITAL I LLC,

                     Plaintiff,

                     - against -

REPUBLIC OF ARGENTINA,
                     Defendant.

10 Civ. 4101 (TPG)

------------------------------------------------------------------------ X

BLUE ANGEL CAPITAL I LLC,

                     Plaintiff,

                     - against -

REPUBLIC OF ARGENTINA,
                     Defendant.

10 Civ. 4782 (TPG)

------------------------------------------------------------------------ X

------------------------------------------------------------------------ X

AURELIUS CAPITAL MASTER, LTD. and AURELIUS  :
OPPORTUNITIES FUND II, LLC,                :         10 Civ. 8339 (TPG)
                                  :

             Plaintiffs,          :
                                    :

             - against -       :
                                    :

THE REPUBLIC OF ARGENTINA,        :
                                    :

             Defendant.      :

------------------------------------------------------------------------ X

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

I.   PROPERTY OF INTA – AN "AGENCY OR
     INSTRUMENTALITY" OF THE REPUBLIC UNDER
     THE FSIA – CANNOT BE USED TO SATISFY THE
     REPUBLIC'S OBLIGATIONS ........................................................................ 2

II.  THE ATTACHMENT ORDER MUST BE VACATED
     BECAUSE INTA IS NOT USING ANY CONTRACTUAL
     RIGHT TO RECEIVE ROYALTIES FOR A
     COMMERCIAL ACTIVITY IN THE UNITED STATES .............................. 2

     A. INTA Is Not *Using* Its Contractual Right To Receive Royalties ................ 2

     B. Any Contractual Right INTA Has To Receive Royalties
        Is Not In The United States ........................................................................ 7

CONCLUSION ................................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abkco Industries, Inc. v. Apple Films, Inc.,*
39 N.Y.2d 670 (1976) .......................................................................................... passim

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.,*
475 F.3d 1080 (9th Cir. 2007) ......................................................................... 3-4, 6, 7

*Af-Cap Inc. v. Republic of Congo,*
383 F.3d 361 (5th Cir. 2004) ............................................................................... 4-5

*Atwood Turnkey Dilling, Inc. v. Petroleo Basileiro, S.A.,*
875 F.2d 1174 (5th Cir. 1989) ............................................................................... 6

*Aurelius Capital Partners, LP v. Republic of Argentina,*
584 F.3d 120 (2d Cir. 2009) .................................................................................. 7

*Conn. Bank of Commerce v. Republic of Congo,*
309 F.3d 240 (5th Cir. 2002) ......................................................................... 4, 5-6, 7

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,*
462 U.S. 611 (1983)................................................................................................ 1

*Garb v. Republic of Poland,*
440 F.3d 579 (2d Cir. 2006)................................................................................... 1

*NML Capital, Ltd., v. Republic of Argentina,*
No. 03 Civ. 8845 (TPG), 2011 WL 1533072 (S.D.N.Y. Apr. 22, 2011) ........................... 4

*Walker Int'l Holdings v. Republic of Congo,*
395 F.3d 229 (5th Cir. 2004) ................................................................................. 6

**Rules and Statutes**

28 U.S.C. § 1610(a) ........................................................................................... 3, 6-7

28 U.S.C. § 1605(a)(2)............................................................................................ 7

The Republic of Argentina and INTA submit this reply memorandum in support of their motion to vacate the *ex parte* INTA Attachment Order obtained by plaintiffs over "*[a]ll property interests of any kind held by or for the use of the Republic*," including interests related to the purported commercialization of an herbicide-resistant rice variety and royalty and licensing fees the Republic, or INTA, may be entitled to receive from BASF Corporation.[1]

## PRELIMINARY STATEMENT

The Court should vacate the INTA Attachment Order. INTA's assets may not be used to satisfy the Republic's obligations and plaintiffs have not identified property of the Republic being used for a commercial activity in the United States.

INTA is an "agency and instrumentality" separate from the Republic because INTA does not perform an inherently governmental function under *Garb v. Republic of Poland*, 440 F.3d 579, 595 (2d Cir. 2006), nor does the Republic exercise control over the agency necessary to overcome the presumption of separateness afforded under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983). INTA's assets are therefore immune from attachment and execution to satisfy obligations of the Republic, a conclusion already once reached by this Court.

Even if INTA could be deemed one and the same as the Republic, plaintiffs fail to identify any property of INTA being used for a commercial activity in the United States. INTA is not using its contractual rights to receive royalties under its licensing agreements with BASF

---

[1]  Unless otherwise specified, all defined terms have the meaning assigned in the Republic's Memorandum of Law in Opposition to Plaintiffs' Motion to Confirm the Ex Parte Attachment Order Concerning the Instituto Nacional de Tecnologia Agropecuaria's Rice Gene Technology and in Support of Motion to Vacate, dated June 30, 2011 ("Opening Br."); Plaintiffs' Opening BASF Brief, dated May 17, 2011 is defined as "Pl. Br."

B.V. (nor any royalties themselves) for a commercial activity. Nor are any of INTA's

contractual rights even located in the United States.

Accordingly, the Court should grant the Republic and INTA's motion to vacate

the INTA Attachment Order.

## I.   PROPERTY OF INTA – AN "AGENCY OR INSTRUMENTALITY" OF THE REPUBLIC UNDER THE FSIA – CANNOT BE USED TO SATISFY THE REPUBLIC'S OBLIGATIONS

As demonstrated in the Republic and INTA's opening brief, and as held by this

Court, INTA, as a "separate legal person" and "organ" of the Republic, constitutes an "agency or

instrumentality" and accordingly is not liable for the obligations of the Republic. The Republic

and INTA respectfully refer to the accompanying reply brief concerning U.S. patent interests and

incorporate the arguments here. *See* Reply Mem. of Law in Supp. of Mot. to Vacate the Ex Parte

Attachment Order Concerning U.S. Patents and Patent Applications, dated Sept. 16, 2011. INTA

reiterates that:

- It conducts scientific research and development concerning agriculture and cattle ranching;

- It does not perform an inherently governmental function; and

- It is not dominated or controlled by the Republic, nor would acknowledging its separate status work a fraud or injustice; to the contrary, disregarding the separateness of INTA would work an injustice on the agency itself, as well as its third party researchers and business partners.

The INTA Attachment Order should accordingly be vacated.

## II.   THE ATTACHMENT ORDER MUST BE VACATED BECAUSE INTA IS NOT USING ANY CONTRACTUAL RIGHT TO RECEIVE ROYALTIES FOR A COMMERCIAL ACTIVITY IN THE UNITED STATES

### A.   INTA Is Not *Using* Its Contractual Right To Receive Royalties

As set forth in the Republic and INTA's opening brief, both the restraint of

INTA's potential royalty payments themselves *and* its underlying contractual right to receive

2

them is improper. *See* Opening Br. at 20 ("INTA's contractual right to receive royalties in the future . . . has neither been used in the United States nor is it located in the United States at all"); *id.* at 23-26. Plaintiffs' "clarification" that they seek to attach the undefined "intangible contractual rights" of INTA that exist separate and apart from any potential royalty payments and their claim that the Republic and INTA have only focused on the latter therefore adds nothing new to their meritless arguments. *See* Pls.' Omnibus BASF Mem. of Law, dated Aug. 31, 2011 ("Pl. Omni. Br.") at 5-7.

Nor does plaintiffs' focus on contractual rights, rather than actual money received, allow them to evade the FSIA's strict requirement that restrained sovereign property be "used for a commercial activity in the United States" for it to be attachable. *See* 28 U.S.C. § 1610(a). Although *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670 (1976), upon which plaintiffs principally rely, held that under New York law contractual rights are attachable property, that case did not involve a sovereign debtor and thus says nothing about the restraint of contractual rights within the context of the FSIA, which imposes the separate and distinct requirement that the property be "used for a commercial activity" if it is to be attached.

*First*, the fact that INTA has not used the contractual royalty obligations owed to it by BASF B.V. "in a commercial activity separate from the transaction that generated" them defeats plaintiffs' attachments. *See Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095 (9th Cir. 2007), *citing Walker Int'l Holdings v. Republic of Congo*, 395 F.3d 229, 235 (5th Cir. 2004). Although INTA's contractual right to receive royalty payments may have been generated by a commercial transaction (the negotiation and execution of the contract), that fact is irrelevant because that alone does not demonstrate that the resulting contract rights are now "used for commercial activity" as required by Section 1610(a) of the FSIA. *Af-Cap,* 475

3

F.3d at 1087 ("'What matters under [Section 1610(a)] is what the property is 'used for,' not how

it was generated or produced.'") (citation omitted). As this Court and every circuit court to

address the issue have held, a sovereign must employ its property for a commercial activity

before it may be attachable under Section 1610. *See NML Capital, Ltd., v. Republic of*

*Argentina*, No. 03 Civ. 8845 (TPG), 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011)

("[w]hile a contract to purchase goods in the United States constitutes commercial activity, that

property is not subject to attachment if it is not itself 'used for' commercial activity within our

borders.") (citation omitted); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 251

(5th Cir. 2002) ("*CBC*") ("[E]ven if a foreign state's property has been generated by commercial

activity in the United States, that property is not thereby subject to execution or attachment if it is

not [also] 'used for' commercial activity within our borders."). Because INTA has indisputably

not employed its contractual rights for *any* activity here, let alone one that is commercial in

nature (such as assigning the royalty rights to a third party, or using them as collateral for a loan

or to service a debt), plaintiffs' attachment must be vacated as a matter of law.

   Plaintiffs' attempt to escape this conclusion by distinguishing plainly applicable

caselaw fails. Although plaintiffs argue that the property at issue in the *CBC* line of cases "is

strictly confined . . . to the *royalties themselves*," Pl. Omni. Br. at 16 (emphasis in original), *see*

*also* Pl. Omni. Br. at 17, 20-21, as opposed to the "contractual right" to royalty payments, that

assertion is belied by the express language of the cited opinions. The Fifth Circuit in *CBC*

described the property executed upon as "the garnishees' intangible obligations to pay royalties."

*See CBC*, 309 F.3d at 261-62; *see also Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 365 (5th

Cir. 2004) ("The Garnishees' obligation to make these tax and royalty payments to the Congo

is… at issue in this case.). Plaintiffs themselves concede as much when embracing the Fifth

4

Circuit's decision in *Af-Cap* for their situs argument. *See* Pl. Br. at 14 ("In *Af-Cap*, the Fifth Circuit Court of Appeals squarely addressed the situs for FSIA purposes of an *intangible right to royalty payments*") (emphasis added).

In addition, plaintiffs persist, as they did in their opening brief, in misconstruing the Fifth Circuit's holding in *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361 (5th Cir. 2004), as framing the "used for" test as considering whether the facts and circumstances demonstrate that the attachment would not interrupt the public acts of a foreign state. *See* Pl. Br. at 27; Pl. Omni. Br. at 18-20. Of course, to the extent plaintiffs frame their argument in this manner, and so argue that the attachments of INTA's rights have no impact on Argentine "public acts," they concede that INTA is not engaged in core governmental activities and so cannot be equated with the Republic under *Garb*. *See* Pl. Omni. Br. at 2-5. In any event, while the Fifth Circuit in affirming the attachment of royalty obligations in *Af-Cap Inc.* noted that the attachment would not interrupt the public acts of a foreign state, its holding that the obligations were "used" for a commercial activity (and therefore attachable) was based on the fact that the Congo had assigned 50% of the royalties to a third party. *See Af-Cap Inc.*, 383 F.3d at 370.

*Second*, plaintiffs' entirely unprecedented and strained argument that INTA is using its "intangible contract rights," including its right to royalty obligations, to secure BASF B.V.'s contractual performance fails as a matter of law and common sense. *See* Pl. Omni. Br. at 17, 20. A contract reflects the exchange of promises that the contracting parties are legally obligated to fulfill. It is therefore simply not logical to say that INTA's right to receive royalties— the consideration INTA received under the contract—is "used for" the underlying contract itself, or, as plaintiffs claim here, Pl. Omni. Br. at 20, to secure the services of the other party to the contract. *See CBC*, 309 F.3d at 259 (analogizing the royalty obligations at issue to

5

the revenue from a transaction, and noting that "we would not say that the revenue from a transaction is 'used for' that transaction," just as "[i]t would be strange to say that 'The employee uses his salary for his job.'"). Whether plaintiffs describe the property they seek to attach as the royalties or the right to receive royalties, both represent the consideration received *from* the contract; they are not "used" *for* the contract.

Nor can plaintiffs' unworkable argument be saved by analogizing this proceeding to the letter of credit at issue in *Atwood Turnkey Dilling, Inc. v. Petroleo Basileiro, S.A.*, 875 F.2d 1174 (5th Cir. 1989), or the share of stock mentioned by the dissent in *CBC*. In *Atwood,* the Fifth Circuit held that Petrobras had "used" a letter of credit for commercial activity because it posted the letter to secure its obligation under the contract. Here, INTA plainly has not posted, or in the words of the Fifth Circuit "spent," its right to receive royalties, or any other contractual rights, in its transaction with BASF B.V. or any other party (such as using the royalty obligations to pay a loan, or for collateral to secure a debt). And plaintiffs' claim that the royalty obligations at issue here are similar to a share of stock that, according to the *dissenting* opinion in *CBC*, is "used for" the commercial activity that generates dividends, does not help them either. *See e.g.* Pl. Omni. Br. 15-17. There is no functional difference under FSIA Section 1610 between the contractual right to receive payments and the actual payments themselves: both must be used for a commercial activity in order to be subject to restraint under the FSIA. *See Af-Cap Inc.*, 475 F.3d at 1094; *Walker Int'l Holdings v. Republic of Congo*, 395 F.3d 229, 236 (5th Cir. 2004).

At base, plaintiffs' argument that INTA is "using" its right to receive royalty payments merely because it possesses that right is no more than an attempt by plaintiffs to eliminate the "used for" requirement intentionally included by Congress in FSIA Section 1610's narrower execution exception. *See* 28 U.S.C. 1610(a) (allowing for restraint of property that is

6

"used for a commercial activity in the United States"); 28 U.S.C. § 1605(a)(2) (permitting

jurisdiction over sovereigns where they have performed acts "in connection with a commercial

activity"); *Af-Cap,* 475 F.3d at 1089 (the section 1610 provision is "more specific and narrower"

than the exception to jurisdictional immunity found in Section 1605(a)(2) … and "reflect[s] a

pivotal purpose of the FSIA: 'to limit[] execution against property directly belonging to a foreign

state'") (citations omitted).  Although INTA's contractual right to BASF B.V.'s royalty

obligations is connected to the commercial activity that produced it, that right is not "used" for

any potential payments and plaintiffs' arguments to the contrary effectively eliminate the word

"use" from Section 1610. *See Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d

120, 130 (2d Cir. 2009) ("The Act is clear: 'The property in the United States of a foreign state'

must be 'used for a commercial activity in the United States' before it is susceptible to

attachment and execution.").  Just as the Fifth Circuit observed in *CBC*, accepting plaintiffs'

argument here "would interpret away the difference in phrasing between these two sections:

[plaintiffs are] asking [the Court] to ignore an obvious difference in the way these two different

immunities have been crafted." *See* 309 F.3d at 255.

**B.      Any Contractual Right INTA Has To Receive Royalties Is Not In The United States**

Even if this Court were to ignore the explicit used for requirement of Section

1610—and the unanimous precedent of the circuit courts to address its requirements—and

conclude that INTA has somehow "used" its contractual right to receive royalties, plaintiffs still

fail to plausibly explain how INTA is using its right to receive royalties for a commercial activity

*in the United States*. *See* 28 U.S.C. § 1610(a).

BASF B.V.'s obligations under the license agreements consist in large part of the

obligation to pay royalties to INTA only upon sale of products incorporating INTA's rice gene

7

and rice variety. Rice Gene License Agreement § 3.00 (Ex. I);[2] Rice Variety License Agreement § 4.1 (Ex. J). Contrary to plaintiffs' assertion, Pl. Omni. Br. at 9-13, the fact that BASF Corp. (the North American subsidiary of BASF SE and affiliate of the Netherlands-based signatory BASF B.V.) may perform some services – such as research and marketing services – in connection with the BASF B.V.-INTA licensing agreements does not turn BASF Corp. into the party "upon whom rests the obligation of performance" under the agreements that BASF Corp. did not even sign. Because the licensing agreements do not affirmatively oblige BASF B.V. to conduct research and development, market any products, or indeed even to commercialize the products, plaintiffs' assertion that BASF Corp "actually performs BASF's *contractual obligations to the Republic to develop, market and sell* the Republic's rice gene technology," Pl. Omni. Br. at 9 (emphasis added), is incorrect. Rather, as to these activities, neither BASF B.V.'s nor any other entity's "performance is required under the terms of the contract." *ABKCO*, 39 N.Y.2d at 675 (the situs of intangible contract rights under New York attachment law is "the location of the party of whom performance is *required by the terms of the contract*.") (emphasis added).

To the extent BASF Corp. has in the past performed services in connection with the agreement itself, including issuing annual reports required under the licensing agreements of all royalties payable to INTA from BASF's sales of rice gene technology, Pl. Omni. Br. at 10, this is a service BASF Corp. is performing *for* BASF B.V., not for INTA. *See* Rice Variety License Agreement § 2.5 (Ex. J) ("BASF Agrochemical Products B.V. [has the] right to license and/or sublicense its Affiliates, and … BASF Agrochemical Products B.V. may designate and

---

[2]   Unless otherwise specified, all exhibits are attached to the Declaration of Carmine D. Boccuzzi in Opposition to Plaintiffs' Motion to Confirm the Ex Parte Attachment Order Concerning the Instituto Nacional de Tecnologia Agropecuaria's Rice Gene Technology and in Support of Motion to Vacate, dated June 30, 2011.

8

appoint one or more of its Affiliates to accept or provide information and technology which is to be accepted or provided according to the provisions of this Agreement."). Likewise, any research and development work conducted by BASF Corp. in connection with the rice gene technology, Pl. Omni. Br. at 11-12, is done *for* BASF B.V., not for INTA, and BASF Corp. is in fact reimbursed for such services *by* BASF B.V., as indicated in an inter-affiliate contract between the two entities. *See, e.g.* Declaration of S. Alyssa Young in Opp'n to Pls.' Mot. to Confirm the Ex Parte Attachment Orders and in Supp. of Mot. to Vacate, dated Aug. 17, 2011 ("Young Decl."), Ex. E.

Finally, as made clear to plaintiffs by BASF Corp., any payments of royalties due under licensing agreements that have in the past been made by BASF Corp. to INTA, Pl. Omni. Br. at 10-11, have been made by BASF Corp. *on behalf* of BASF B.V., and BASF Corp. has been immediately reimbursed for such payment by BASF B.V. *See* Non-Party BASF Corp.'s Mem. of Law, dated Aug. 17, 2011 at 6, 9; Declaration of Kimberly Hamm in Supp. of Pl. Omni Br., dated Aug. 31, 2011, Ex. A. Simply because BASF Corp. has in the past made actual payments, does not turn BASF Corp. into the party *obligated* to make these payments under the agreements and therefore situs the contractual rights in New York. *ABKCO* does not say that intangible contract rights are located anywhere a party that performs services in connection with a contract is to be found (*e.g.* BASF Corp.); rather, it says for purposes of New York attachment law that "the location of such rights is the location of the party of whom performance *is required by the terms of the contract.*" *ABKCO*, 39 N.Y.2d at 675 (emphasis added). It is clear from the agreements that BASF B.V. is the party from whom payment is required by the terms of the licensing agreements.[3]

---

[3]   Plaintiffs' suggestion that the reference to BASF Corp. as a "trustee" of BASF with respect to certain intellectual property interests in the Research Service and Reimbursement Agreement somehow alters

Contrary to plaintiffs' assertion, Pl. Omni. Br. at 10, the fact that the agreements include the "Affiliates" of BASF B.V. in the definition of "BASF" does not make BASF Corp. a direct party to the agreement. The agreements state that they are "by and between BASF B.V. Agrochemical Products B.V. ... (together with its Affiliates, hereinafter 'BASF')" and INTA, *see e.g.* Rice Gene License Agreement at Preamble (Ex. I), rather than "by and between" BASF B.V., its Affiliates and INTA, which the drafters could have inserted had it been the case that all affiliates were parties to the agreement. In addition, there are several references within the agreements to BASF *and* its Affiliates – which standalone references to Affiliates would be redundant if in fact "BASF" was in fact supposed to include any affiliates. *See e.g.* Rice Gene License Agreement § 6.00 (Ex. I); Rice Variety License Agreement § 5.2 (Ex. J). Finally, the First Amendment to the License Agreement, which modifies certain provisions of the original Rice Gene License Agreement, states that the amendment agreement is "by and between BASF Agrochemical Products B.V. ("BASF") and ... INTA," which further indicates the lack of intent that all affiliates of BASF be made parties to the contract. *See* Young Decl. Ex. C.[4]

To find that the inclusion of the term "Affiliates" of BASF B.V. in the definition of "BASF" in the agreements, Pl. Omni. Br. at 10, makes BASF Corp. the obligor on the contract, would create the nonsensical result that *any* of the hundreds of affiliated entities within the BASF SE global chemical corporation worldwide would be obligated to make payments and perform under the contract as well. At the end of the day, INTA contracted with a Netherlands

---

this conclusion, Pl. Omni. Br. at 12, is meritless. Even if BASF Corp. were a trustee of BASF under New York law, which it is clearly not, BASF Corp. would owe duties only to BASF B.V. and not INTA, and thus the "obligation of performance" under the contract would still lie with BASF in the Netherlands. *ABKCO*, 39 N.Y.2d at 675.

[4] This definitional language appears to have been included in the original agreements to make it more convenient for BASF B.V. to sublicense its rights to its affiliates (who would then be responsible to BASF B.V.) – and not as plaintiffs claim – to make every single BASF B.V. affiliate an obligor under the agreements with INTA.

Corporation and any sales pursuant to those agreements have occurred exclusively in Brazil and Costa Rica. *See* Opening Br. at 5-6. To the extent they are not deemed located in Argentina, INTA's contractual rights to receive royalties under the BASF B.V. agreement are accordingly located in the Netherlands with BASF B.V., the only obligor on the contract, and are not in the United States.

Plaintiffs have thus failed as a matter of law to demonstrate that INTA has used its royalties, or its right to receive royalties, for a commercial activity in the United States, and the attachment order must be vacated.

## CONCLUSION

For the foregoing reasons, the Republic and INTA's motion to vacate the Attachment Order should be granted.

Dated: New York, New York
      September 16, 2011

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:_____
    Jonathan L. Blackman (jblackman@cgsh.com)
    Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
    Christopher P. Moore (cmoore@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina and Instituto Nacional de Tecnología Agropecuaria

11