UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

| | | |
|---|---|---|
| EM LTD., | : | |
| Plaintiff, | : | |
| - against - | : | 03 Civ. 2507 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------ x

| | | |
|---|---|---|
| AURELIUS CAPITAL PARTNERS, LP | : | |
| and AURELIUS CAPITAL MASTER, LTD., | : | |
| Plaintiffs, | : | No. 07 Civ. 2715 (TPG) |
| - against - | : | No. 07 Civ. 11327 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------ x

| | | |
|---|---|---|
| BLUE ANGEL CAPITAL I LLC, | : | |
| Plaintiffs, | : | No. 07 Civ. 2693 (TPG) |
| - against - | : | No. 10 Civ. 4101 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | No. 10 Civ. 4782 (TPG) |
| Defendant. | : | |

------------------------------------ x

| | | |
|---|---|---|
| AURELIUS CAPITAL MASTER, LTD. and | : | |
| ACP MASTER, LTD., | : | |
| Plaintiffs, | : | No. 09 Civ. 8757 (TPG) |
| - against - | : | No. 09 Civ. 10620 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------ x

| | | |
|---|---|---|
| AURELIUS OPPORTUNITIES FUND II, LLC | : | |
| and AURELIUS CAPITAL MASTER, LTD., | : | |
| Plaintiffs, | : | No. 10 Civ. 1602 (TPG) |
| - against - | : | No. 10 Civ. 3507 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------ x

| | | |
|---|---|---|
| AURELIUS CAPITAL MASTER, LTD. and | : | |
| AURELIUS OPPORTUNITIES FUND II, LLC, | : | |
| Plaintiffs, | : | No. 10 Civ. 3970 (TPG) |
| - against - | : | No. 10 Civ. 8339 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------ x

**CITIBANK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO VACATE THE ORDER OF ATTACHMENT**

# TABLE OF CONTENTS

**PAGE**

THE MATTERS IGNORED BY THE AURELIUS OPPOSITION ............................................... 2

    1.    The Custody Agreements with Citibank Argentina's Customers ............................ 2

    2.    The SWIFT Messages Sent to Citibank Argentina's Customers ............................ 2

    3.    The Opinion as to Matters of Argentine Law ........................................................... 4

    4.    The FRBNY Garnishee Statements and Confirming Statements by
Citibank and the BCRA ................................................................................................ 5

CONCLUSION ............................................................................................................................ 6

# CITIBANK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO VACATE THE ORDER OF ATTACHMENT

Citibank respectfully submits this reply memorandum of law in further support of its motion to vacate the Aurelius Attachment Order, and in response to the papers submitted by the Aurelius Plaintiffs[1] (the "Aurelius Opposition").

The Aurelius Opposition ignores both the dispositive evidence submitted by Citibank and the only opinion addressing matters of Argentine law before the Court, the Declaration of Hugo Bruzone. That evidence and expert opinion conclusively establish that, in connection with the August Payment:

(1) Pursuant to custody agreements with its customers, Citibank Argentina was acting solely as custodian or agent for bondholders of the BODEN 12 Bonds, and not as a paying agent or any other kind of agent for the Republic. (Elewaut Decl. Exs. A1-A13.) Citibank provided copies of each of these custody agreements with its motion. The Aurelius Opposition does not even mention them, much less explain why they do not conclusively establish that Citibank Argentina was acting solely on behalf of its clients in connection with the August Payment.

(2) Citibank Argentina sent messages by SWIFT to its custody account customers, acknowledging receipt of the BODEN 12 Bonds August Payment on their behalf and explaining that the funds were available to Citibank Argentina's clients for withdrawal. (*Id.* Exs. C1-D7.) Citibank provided copies of these messages with its motion. The Aurelius Opposition does not even acknowledge, much less address, the substance of any of these messages or offer any evidence to undermine the conclusion that flows from them.

(3) The only expert opinion as to matters of Argentine law before the Court establishes that (a) the BODEN 12 Bonds were payable by the Republic in Argentina; (b) the Republic ceased to have any right or interest in the funds associated with the BODEN 12 payment well before those funds were credited to

---

[1] The Aurelius Plaintiffs are Aurelius Capital Master, Ltd., Aurelius Capital Partners, LP, ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, and Blue Angel Capital I LLC (collectively, together with EM Ltd., the "Plaintiffs"). This reply memorandum is also submitted in further support of Citibank's motion to vacate the restraining and "omnibus" orders and to quash the writ of execution obtained by plaintiff EM Ltd. in *EM Ltd. v. Republic of Argentina*, 03 Civ. 2507. The defined terms used in this reply memorandum are the same as those used in Citibank's September 8, 2011 memorandum of law. The term "Attachment Order" refers as well to the orders obtained by EM Ltd.

        custody accounts of Citibank Argentina; and (c) once the funds were credited to the custody accounts held with Citibank Argentina, the bondholders were the beneficial owners of those funds. (Bruzone Decl. ¶¶ 5-7.) The Aurelius Opposition offers no opinion on Argentine law at all.

(4)     The garnishee statements submitted by the FRBNY, as confirmed by sworn statements submitted by Citibank and the BCRA, unambiguously declare that the BODEN 12 Bonds August Payment did not pass through Citibank's or the BCRA's accounts at the FRBNY, the only accounts targeted by the Attachment Order. The Aurelius Opposition offers no evidence whatsoever to support Plaintiffs' baseless implication that Citibank, the BCRA, and the FRBNY are all seeking to mislead both Plaintiffs and the Court.

No amount of discovery from any party could change these fundamental facts or alter the legal conclusions set forth above. And as the Court held in the hearing on August 4, 2011, "obviously, there could be no attachment of funds belonging to the bondholders." (Tr. at 5:2-3.)

## THE MATTERS IGNORED BY THE AURELIUS OPPOSITION

**1.    The Custody Agreements with Citibank Argentina's Customers**

Plaintiffs allege in their moving papers that Citibank was the paying agent for the Republic. While Plaintiffs now argue strenuously and irrelevantly that the BCRA was the Republic's paying agent (Aurelius Memorandum at 7-9), they completely ignore the custody agreements submitted by Citibank. These agreements make plain that the role of Citibank Argentina here was to act solely for the account of its custody account customers, and to hold securities and to receive and forward payments of principal and interest on such securities for the account of such customers. Indeed, Plaintiffs have all but abandoned their argument that Citibank Argentina was acting as the paying agent for the Republic, an argument that is logically inconsistent with the custody agreement terms.

**2.    The SWIFT Messages Sent to Citibank Argentina's Customers**

Plaintiffs also fail even to acknowledge the substance of the SWIFT messages that

Citibank Argentina sent to its custody account customers, which confirmed (a) its receipt of payment on their behalf, (b) the crediting of the payment to their local accounts, and (c) the holding of such funds for transfer to an account outside Argentina or for local withdrawal. (Elewaut Decl. Exs. C1-D7.)  For example, the SWIFT messages Citibank Argentina sent to several of its custody account customers on August 3, 2011 stated, among other things, that:

> "[Citibank Argentina] has . . . received, on your behalf, the regularly scheduled USD payment in respect of the BODEN 12s issued by the Republic of Argentina.  We have credited this USD payment to your local account statement (which you may review).  We have been in communication with the [BCRA] in order to attempt to transfer your USD payment held in custody by us in Argentina on your behalf to your designated account outside of Argentina.  These funds are available to you for local withdrawal as well."

(*Id.* Exs. D1-D7.)  While Plaintiffs complain that they were not provided with detailed information concerning how the funds arrived in the accounts, or where the funds were transferred following that arrival, the Elewaut Declaration describes the routing of funds in more than sufficient detail, and the ultimate disposition of funds held for the account of the bondholders is totally irrelevant to any legitimate inquiry by Plaintiffs.

Instead of addressing the content of the SWIFT messages – which is so clearly dispositive here – Plaintiffs attempt to question the source of the messages, suggesting they did not originate in Argentina and even implying baselessly that the identifier code on the messages had been altered by Citibank Argentina or its counsel.  Plaintiffs are, of course, wrong: The code in the messages has long been used by Citibank Argentina.  But no matter what their source, the substance of the messages sent to Citibank Argentina's clients was clear: Payment had been received and credited to the clients' accounts in Argentina, and funds were available for local withdrawal or subsequent transfer from Argentina.

### 3. The Opinion as to Matters of Argentine Law

The BODEN 12 Bonds are subject to Argentine law. (Bruzone Decl. ¶ 4.) While Plaintiffs make various arguments concerning the ownership of the funds as they moved from the Republic to the BODEN 12 Bonds bondholders, they have failed to submit any opinion of Argentine counsel that supports their contentions.

Citibank, on the other hand, submitted the opinion of Argentine counsel, Mr. Hugo N.L. Bruzone, in support of its position. Mr. Bruzone unequivocally opined as follows:

> "Pursuant to the terms and conditions of the BODEN 2012 Bonds, as described in Section 6 of the Resolution, the BODEN 2012 Bonds are payable in Buenos Aires, Argentina. From the perspective of the Republic, this occurs once the payment of principal and interest is credited to the account of the [CRYL] with the [BCRA].
>
> "Under Argentine law, the Republic has no rights to or interest in the payment made in the Argentine common depositary system of the [Caja], and the bondholders are the funds' beneficial owners of the payments made therein.
>
> "Further, pursuant to Section 6 of the Resolution, when the funds are credited to the custody accounts of Citibank Argentina, the funds are available for withdrawal in Argentina or for transfer to accounts outside of Argentina pursuant to the instructions of the custody account customers."

(*Id.* ¶¶ 5-7.) The Bruzone opinion thus confirms, based on the bond documentation offered by Plaintiffs themselves, the statements made by Citibank Argentina in the SWIFT messages it sent to its custody account customers: As a matter of Argentine law, (i) the Republic relinquished possession and control over the transferred funds once the payment was credited to the CRYL, and (ii) Citibank Argentina received the August Payment in Argentina for the benefit of its custody account customers.[2]

---

[2] As Citibank explained in its moving papers, the leading case in New York recognizes—as a matter of New York law—the same principle, namely that funds held by a trustee or custodian for bondholders cannot be reached by creditors of the issuer. *See Brown v. J.P. Morgan & Co.*, 265 A.D. 631, 635, 40 N.Y.S.2d 229, 233 (1st (…continued)

4

### 4. The FRBNY Garnishee Statements and Confirming Statements by Citibank and the BCRA

In its garnishee statements dated August 10 and August 19, 2011, the FRBNY stated that it "does not have in its possession or custody any property specified in the [Aurelius or EM Ltd.] Orders." (Garnishee's Statement, dated Aug. 10, 2011, at 5; Garnishee's Statement, dated Aug. 19, 2011, at 2.)

The BCRA, in support of its motion to vacate, submitted information relating to activity in its FRBNY account during the timeframe set forth in the Attachment Order. (BCRA's Mem. of Law Supp. Cross-Mot. Vacate 3 ("no funds to pay Boden 12 bondholders were transferred through the FRBNY on or about August 1, 2 or 3").) Citibank itself confirmed, through the Elewaut Declaration, that:

> "In effecting the transfer of the funds held in the accounts of its Custody Account Customers in respect of the BODEN 12 Bonds August 3, 2011 Payment . . . Citibank Argentina did not transfer funds into any account of Citibank, N.A. with the [FRBNY] or otherwise utilize any Citibank, N.A. account with the FRBNY . . . ."

(Elewaut Decl. ¶ 16.) While Plaintiffs seek to minimize these statements as self-serving, Plaintiffs offer nothing but baseless speculation to support their implication that the FRBNY, Citibank, and the BCRA would all attempt to mislead either them or the Court on this point.[3]

---

(continued…)
Dept. 1943), *aff'd* 295 N.Y. 867, 67 N.E.2d 263 (1946). Plaintiffs do not even cite, much less distinguish, this case, failing entirely to address this fundamental point under either New York or Argentine law.

[3] Plaintiffs contend that because the FRBNY accounts were not used by Citibank or the BCRA to effect the BODEN 12 Bonds August Payment, they had no need for immediate relief at the hearing in early August. This is clearly wrong. Based on its then-current understanding of the Attachment Order, the FRBNY had expressed its position that the Plaintiffs' Notice and Attachment Order required the FRBNY to "shut down" the BCRA's account with the FRBNY. (*See, e.g.*, Tr. at 3:15-18.) Under those circumstances, the parties had no choice but to seek immediate clarification of the Attachment Order, including by demonstrating to the Court that any funds that were to pass through Citibank's FRBNY account in connection with the August Payment would be held solely for the account of the BODEN 12 Bonds bondholders, not the Republic. Although the Court agreed with Citibank that the
(…continued)

## CONCLUSION

Under New York law, a plaintiff moving to confirm "ha[s] the burden of establishing . . . the need for continuing the levy." N.Y. C.P.L.R. §§ 6211(b), 6223(b). Plaintiffs can make no showing that such a need exists, and have failed to demonstrate any need for the irrelevant discovery they seek. Citibank therefore respectfully requests that the Court grant its Motions to Vacate the Aurelius Attachment Orders, Vacate and the EM Ltd. Restraining and Omnibus Orders, and Quash the EM Ltd. Writ of Execution.

Dated:   New York, New York
         October 5, 2011

DAVIS POLK & WARDWELL LLP

By:  s/
    Karen E. Wagner
    (karen.wagner@davispolk.com)
    Edmund Polubinski III
    (edmund.polubinski@davispolk.com)
    James L. Kerr
    (james.kerr@davispolk.com)

    450 Lexington Avenue
    New York, New York 10017
    Telephone: (212) 450-4000
    Facsimile: (212) 701-5800

    *Counsel to Citibank, N.A.*

---

(continued…)
scope of the Orders "could only be to attach funds still belonging to the Republic" and therefore would have permitted transfer of bondholder funds through Citibank's account with the FRBNY (*id.* at 4:21-22), nothing about either the Court's order or Citibank's application suggested that any funds – including funds of the bondholders – would be transferred through Citibank's account at the FRBNY.