UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
AURELIUS CAPITAL PARTNERS, LP
and AURELIUS CAPITAL MASTER, LTD.,  :
               Plaintiffs,  :
       - against -  :  No. 07 Civ. 2715 (TPG)
THE REPUBLIC OF ARGENTINA,  :  No. 07 Civ. 11327 (TPG)
               Defendant.  :
----------------------------------------x
BLUE ANGEL CAPITAL I LLC,  :
             Plaintiffs,  :  No. 07 Civ. 2693 (TPG)
       - against -  :  No. 10 Civ. 4101 (TPG)
THE REPUBLIC OF ARGENTINA,  :  No. 10 Civ. 4782 (TPG)
              Defendant.  :
----------------------------------------x
AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,  :
             Plaintiffs,  :  No. 09 Civ. 8757 (TPG)
       - against -  :  No. 09 Civ. 10620 (TPG)
THE REPUBLIC OF ARGENTINA,  :
              Defendant.  :
----------------------------------------x
AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.,  :
             Plaintiffs,  :  No. 10 Civ. 1602 (TPG)
       - against -  :  No. 10 Civ. 3507 (TPG)
THE REPUBLIC OF ARGENTINA,  :
              Defendant.  :
----------------------------------------x
AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,  :
             Plaintiffs,  :  No. 10 Civ. 3970 (TPG)
       - against -  :  No. 10 Civ. 8339 (TPG)
THE REPUBLIC OF ARGENTINA,  :
              Defendant.  :
----------------------------------   x

**DECLARATION OF REBECCA J. NELSON IN SUPPORT OF THE CITI
ENTITIES' CROSS-MOTION TO QUASH, MODIFY OR FOR A PROTECTIVE
ORDER AND IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Pursuant to 28 U.S.C. § 1746, I, Rebecca J. Nelson, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a Director and Associate General Counsel of Citigroup Global Markets Inc. ("CGMI") and am assigned to the Office of the General Counsel. In that capacity, I am responsible, among other things, for overseeing Citibank, N.A.'s ("Citibank's") responses to information subpoenas issued in connection with the enforcement of judgments. The various subpoenas served on the Non-Party Citi Entities, all of which are identical, were referred to me for coordination and work with our outside counsel, the firm of Davis Polk & Wardwell LLP.

2. I make this declaration in support of the Cross-Motion to Quash, Modify or for a Protective Order made on behalf of Non-Parties Citibank, CGMI, Citicorp North America Inc. ("CNAI"), Citicorp USA Inc. ("CUSAI"), and Citigroup Inc. (collectively, the "Citi Entities"), and in opposition to the Motion To Compel made by Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., ACP Master Fund, Ltd., Aurelius Opportunities Fund II, LLC, and Blue Angel Capital I LLC (collectively, the "Aurelius Plaintiffs").

**The Overbreadth of the Subpoenas and the Burden They Would Impose**

3. The subpoenas served on the Citi Entities are completely unprecedented in my experience and go well beyond any enforcement subpoena that I or my colleagues in the Office of the General Counsel have encountered in terms of (1) the numbers of entities named as targeted subjects of the subpoena, (2) the number of substantive banking activities indentified that would require investigation for the existence of

2

documents arguably called for, (3) the worldwide scope of the subpoenas, and (4) the length of the timeframe designated for production, which exceeds three years.

4. Citibank itself serves more than 200 million customers in over 100 countries around the world. Even when Citibank receives an enforcement subpoena limited to one judgment debtor, it cannot undertake a worldwide search for and production of documents relating to the offshore account relationships and activities of that particular judgment debtor. When the scope of that search is multiplied more than a hundredfold, as it is by the Aurelius subpoenas, the burden is magnified commensurately.

5. In addition to identifying 461 specifically-named entities as search targets, the subpoenas at issue here define Argentina in a way that is completely open-ended, and would require each of the Citi respondents to identify any other entity controlled directly or indirectly by Argentina, or more than 25%-owned by "Argentina," as defined, whether or not specifically named in the subpoena.

6. Each subpoena furthermore goes on to request – in respect of each named and unnamed entity – the production of forty-five categories of documents defined by reference to a number of separate kinds of banking or financial activity. The activities designated include, without limitation, investment banking, capital markets, commercial banking and merger and acquisition activities, including services in which the Citi respondent in question allegedly acted as an agent, broker, dealer, underwriter, trading agent, asset manager, representative or nominee, or provided custody or trustee services. Other banking activities targeted include loans, letters of credit, the issuance of bonds, notes, warrants, or other securities, as well as foreign exchange transactions, swaps, options, derivatives transactions, forward transactions and repos or reverse repos.

Documents relating to structured deposits and transactions in precious metals, real estate, commodities, minerals, natural resources, or patents, and investment activities of any kind are also sought by the subpoenas, and many of the forty-five requests have multiple subparts. Indeed, it would be difficult to conceive of a more indiscriminately broad sort of fishing expedition even if not extended to 461 named entities.

7. Even if the search for documents mandated by the subpoenas were to be limited to the Citi Entities' offices in New York, the number of offices, departments and banking activities to be investigated in order to ensure compliance would be staggering. There is simply no centralized database that would permit an electronic search for all of the documents sought, and the search would of necessity be labor-intensive. When that search is extended offshore to the multiple jurisdictions where Citibank maintains branch and other offices subject to the laws and regulatory regimes imposed by those jurisdictions, the search required would necessarily involve the commissioning and oversight of searches of a myriad of different locations and systems. This is because the New York office of Citibank cannot undertake a search for customer information held by its branch or affiliate offices offshore without engaging the active assistance of personnel located in the jurisdictions where the search is to take place, and those personnel are the only individuals with direct access to the information. Moreover, because many of the countries where the offices in question are located have bank secrecy or other privacy or data protection laws, such laws would have to be investigated and complied with. Indeed, there has been a significant amount of litigation concerning the impact of foreign bank confidentiality rules on attempts to take discovery from entities located in jurisdictions subject to such rules, including Switzerland, France, Greece, Germany,

4

Israel, the Channel Islands, the Bahamas, the Cayman Islands and Panama, and there are a number of published opinions concerning the extent to which such laws are to be given effect.  Citibank maintains branch or affiliate offices in all of the named as well as in other jurisdictions with such laws, including, without limitation, a number of Latin American countries such as Argentina, Bolivia, Brazil, Paraguay and Uruguay that are known to have bank secrecy laws.  Citibank also has offices in the Middle East and the Far East in jurisdictions likewise known to have strict confidentiality laws.  Regardless of whether such laws would ultimately justify or require, on penalty of criminal or civil liability, the withholding of the production of documents called for by the subpoenas, if any were to be located, it would be necessary to consult with local counsel in those jurisdictions, and inevitably require significant time, effort, and expense.

**The Sort of Compromise Sought**

8.      The virtual impossibility of complying with the Aurelius subpoenas absent a massive, time-consuming, expensive, and most likely fruitless search for stale documents led us to seek some sort of compromise with the Aurelius Plaintiffs.  In the first place, we sought a meaningful narrowing of the completely unworkable definition of Argentina.  Secondly, we believed that, if the Republic's appeal to the Second Circuit were to be disposed of in a way favorable to the Aurelius Plaintiffs, a search of the funds transfer database utilized by the Citi Entities would permit a staged approach to the offshore discovery apparently sought by the Aurelius Plaintiffs that would limit the number of jurisdictions likely to be at issue.

9.      Throughout our discussions, the Aurelius Plaintiffs remained intransigent in refusing to narrow their definition of Argentina.  In late August, counsel for Argentina

5

provided our outside counsel with a breakdown of the 461 entities listed in the Aurelius subpoenas that appeared to suggest a reasonable way to compromise on a narrowed definition of "Argentina." This breakdown, which had previously been provided by the Republic to the Aurelius Plaintiffs (*see* Citi Ex. B[1]), appeared to suggest that 94 of the 461 entities listed in the Aurelius subpoenas constituted an integral part of the Republic. This narrowed definition was then used to formulate a proposal for a wire transfer search that we believed would be feasible.

**The Compromise Proposed**

10. The document provided by the Republic to the Aurelius Plaintiffs allocated the 461 entities listed in the Aurelius subpoenas into several discreet categories. One of these categories listed ninety-four entities that appeared to constitute entities, ministries or offices that were an integral part of the Republic, or that were at least not separately incorporated or established under Argentine law. Accordingly, we agreed to search for and produce wire transfer information from the US$ funds transfer database utilized by the Citi Entities that mentioned, either as an originator or a beneficiary, the Republic or any one of the ninety-four entities listed on pages 22-26 of the document provided to the Aurelius Plaintiffs by the Republic (Citi Ex. B). The message communicating our offer also set forth the various reasons why it was not deemed appropriate to conduct searches for wire transfers involving entities in the other categories listed. (*See* Citi Ex. A.) We also proposed that this search cover the most recent three months and suggested that a US$ floor of $250,000 be established for the

---

[1] "Citi Ex." refers to exhibits to the Declaration of James L. Kerr, dated November 7, 2012 and submitted in support of the Citi Entities' cross-motion to quash, modify or for a protective order.

search to the extent technically possible.  (*Id.*)  While a search for ninety-four entities is far broader than searches previously undertaken by Citibank in response to an enforcement subpoena, we concluded that the search proposed was possible and were prepared to undertake it.

**The Search of the Funds Transfer Database**

11. The funds transfer database can be searched using multiple search terms, which is what we have proposed.  The use of wildcards (or search terms derived from the names of the ninety-four entities) is possible, though the more wildcards that are used the greater the likelihood of false positives.  In addition, the broader the search protocol, the longer and more expensive (in terms of both programmer and computer time) the search is to run.  Searches that take too long to run may eventually "time-out" and fail, requiring them to be re-run in smaller batches, which will increase the length of time for the search.  This is one reason an effort was made to limit the term of the search since even the three-month term proposed may require that the search be run in multiple batches.  We continue to believe that the Citi Entities should be reimbursed for their reasonable expenses in performing the database searches described.

**The Advantages of the Search Proposed**

12. Among other things, we believe that the results of the search described above would permit the Aurelius Plaintiffs to narrow, in a very practical way, the number of foreign jurisdictions and entities with which or in which targeted account relationships may be maintained by the Republic or any of the ninety-four entities searched for.  For example, to the extent a search produced wire transfer information relating to one of the ninety-four entities, the information provided would include the location and details of

7

the originating and beneficiary accounts, whether at Citibank or elsewhere. If such originating or beneficiary accounts happen to be maintained with branch or affiliate offices of Citibank, those entities would thus have been identified without requiring an extremely burdensome worldwide search the results of which, were the account to be located in a secrecy jurisdiction, could not be disclosed in any event without contravening the applicable foreign confidentiality rules.[2] This is because the proposed search is for wire transfers that originated, ended, and/or passed through the United States, and the information that would result from the proposed search, including the originator and beneficiary account information, is therefore located in the United States. In addition, a search that is limited to the recent past, such as the most recent three months, will reveal information about current wire transfers and active accounts, rather than stale information regarding wire transfers long since past. Accordingly, we believe that conducting the wire transfer search proposed would be both less burdensome and be more likely to yield useful results to Plaintiffs.

**The Citi Entities Other Than Citibank That Have Received Aurelius Subpoenas**

    **A.    Citigroup Inc.**

13. Citigroup Inc., through its operating subsidiaries, conducts banking and financial business in approximately 160 countries worldwide.

14. Citigroup Inc., which is a Delaware corporation, is solely a financial services holding company and does not itself engage in any banking or other financial

---

[2] Because foreign confidentiality rules might preclude the production of any such account documents except in accordance with local rules, Citibank is obliged to reserve its objection to such production except pursuant to the Hague Convention and such local rules.

transactions for the benefit of third parties.  On information and belief, because of its nature as a holding company, Citigroup Inc. is very unlikely to have documents responsive to the Aurelius subpoena served on it.

        **B.**      **Citigroup Global Markets Inc. ("CGMI")**

        15.      CGMI is a full services investment banking firm engaging in, among other services, securities underwriting, debt and equity financing, sales and trading, investment banking, financial advisory and investment research services for both institutional and retail clients.  CGMI, which is headquartered in New York, has separately-incorporated affiliates in major cities located around the world.

        16.      On information and belief, any disbursements or payments made in respect of any banking transactions or relationships between CGMI and the Republic of Argentina, or any of the ninety-four entities described above, would be reflected in the funds transfer database search described above.  CGMI is prepared to explore approaches to searching for documents located in the United States reflecting any transaction or relationship the possible existence of which may be disclosed by the proposed search.  With respect to the existence of any transactions or relationships located offshore, CGMI must necessarily reserve objections to proceeding except pursuant to the Hague Convention.

        **C.**      **Citicorp USA Inc. ("CUSAI")**

        17.      CUSAI, which is chartered in Delaware and headquartered in New York City, is an operating subsidiary of Citibank, N.A.  CUSAI, among other services, makes, acquires, and services commercial loans and other extensions of credit, for both businesses and individuals.

18. On information and belief, the banking services that CUSAI would have provided to the Republic of Argentina, or to any of the ninety-four entities referred to above, if any, would have been limited to services provided in the United States. In addition, on information and belief, any disbursements or payments made in respect of any such transactions or relationships would almost certainly be reflected in results derived from the proposed search described above. Finally, CUSAI is prepared to explore approaches to locating transaction or relationship documents the possible existence of which may be disclosed by the proposed search.

### D. Citicorp North America Inc. ("CNAI")

19. CNAI, which is chartered in Delaware and headquartered in New York City, is an operating subsidiary of Citicorp Banking Corporation which is, in turn, a subsidiary of Citigroup Inc. CNAI, among other services, engages in commercial lending and leasing and provides various cash management services.

20. On information and belief, the banking services that CNAI would have provided to the Republic of Argentina, or to any of the ninety-four entities referred to above, if any, would have been limited to services provided in the United States. In addition, any disbursements or payments made in respect of any such transactions or relationships would almost certainly be reflected in results derived from the proposed search described above. CNAI is prepared to explore approaches to locating documents

reflecting any transaction or relationship the possible existence of which may be disclosed by the proposed search.

Dated: November 7, 2012
      New York, New York

                                                 Rebecca J. Nelson