Barry J. Glickman
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

Attorneys for Non-Parties
*Bank of America, N.A., Bank of America Corporation,*
*Banc of America Securities LLC, Merrill Lynch & Co., Inc.*
*and Merrill, Lynch, Pierce, Fenner & Smith, Incorporated*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AURELIUS CAPITAL PARTNERS LP, and AURELIUS CAPITAL MASTER, LTD., Plaintiffs, v. THE REPUBLIC OF ARGENTINA, Defendant. | 07 Civ. 2715 (TPG) |
| AURELIUS CAPITAL PARTNERS, LP and AURELIUS CAPITAL MASTER, LTD., Plaintiffs, v. THE REPUBLIC OF ARGENTINA, Defendant. | 07 Civ. 11327 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., Plaintiffs, v. THE REPUBLIC OF ARGENTINA, Defendant. | 09 Civ. 8757 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., Plaintiffs, v. THE REPUBLIC OF ARGENTINA, Defendant. | 09 Civ. 10620 (TPG) *(caption continued on following pages)* |

**MEMORANDUM OF LAW OF THE BOFA ENTITIES IN SUPPORT OF THEIR
MOTION TO QUASH THE SUBPOENAS SERVED BY PLAINTIFFS AND IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

| | |
|---|---|
| AURELIUS OPPORTUNITIES FUND II, LLC and AURELIUS CAPITAL MASTER, LTD.,<br>                    Plaintiffs,<br>          v.<br>THE REPUBLIC OF ARGENTINA,<br>                    Defendant. | 10 Civ. 1602  (TPG) |
| AURELIUS OPPORTUNITIES FUND II, LLC and AURELIUS CAPITAL MASTER, LTD.<br>                    Plaintiffs,<br>          v.<br>THE REPUBLIC OF ARGENTINA,<br>                    Defendant. | 10 Civ. 3507 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. and AURELIUS OPPORTUNITIES FUND II, LLC,<br>                    Plaintiffs,<br>          v.<br>THE REPUBLIC OF ARGENTINA,<br>                    Defendant. | 10 Civ. 3970 (TPG) |
| BLUE ANGEL CAPITAL I LLC,<br>                    Plaintiffs,<br>          v.<br>THE REPUBLIC OF ARGENTINA,<br>                    Defendant. | 10 Civ. 4101 (TPG) |
| BLUE ANGEL CAPITAL I LLC,<br>                    Plaintiffs,<br>          v.<br>THE REPUBLIC OF ARGENTINA,<br>                    Defendant. | 10 Civ. 4782 (TPG) |
| AURELIUS CAPITAL MASTER, LTD., and AURELIUS OPPORTUNITIES FUND II, LLC,<br>                    Plaintiffs,<br>          v.<br>THE REPUBLIC OF ARGENTINA,<br>                    Defendant. | 10 Civ. 8339 (TPG) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

THE PROCEDURAL POSTURE, THE RELEVANT FACTS AND
PLAINTIFF'S REFUSAL TO MAKE A GOOD FAITH EFFORT TO
NARROW THE SCOPE OF THE SUBPOENAS BEFORE MAKING A
MOTION TO COMPEL ........................................................................................ 3

ARGUMENT ......................................................................................................... 10

POINT I        THE SUBPOENA IS EXTRAORDINARILY
               OVERBROAD AND BURDENSOME .................................. 10

POINT II       COMPLIANCE WITH THE SUBPOENAS EXPOSE THE
               BOFA ENTITIES TO POTENTIAL CRIMINAL AND
               CIVIL LIABILITY UNDER FOREIGN LAW ....................... 12

POINT III      WHETHER THE FSIA PROHIBITS DISCLOSURE
               REMAINS SUBJECT TO FINAL ADJUDICATION BY
               THE UNITED STATES SUPREME COURT ......................... 13

CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

CASES

Collins and Aikman Corp. v. J.P. Stevens & Co.,
    51 F.R.D. 219 (D.S.C. 1971) ....................................................................... 12

EIFS, Inc. v. Morie Co., Inc.,
    298 A.D.2d 548, 749 N.Y.S.2d 43 (2d Dep't 2002)................................... 11

EM Ltd. v. Argentina,
    695 F.3d 201 (2nd Cir. 2012) ............................................................... 2, 13

Fears v. Wilhelmina Model Agency, Inc.,
    No. 02 Civ. 4911, 2004 WL 719185 (S.D.N.Y. Apr 1, 2004)................................ 12

Minpeco, S.A. v. ContiCommodity Servs., Inc.,
    118 F.R.D. 331 (S.D.N.Y. 1988) .................................................................. 12

Riverside Capital Advisors, Inc. v. First Secured Capital Corp.,
    28 A.D.3d 457, 814 N.Y.S.2d 646 (2d Dep't 2006)........................................... 10, 11

United States v. International Business Mach. Corp.,
    83 F.R.D. 97 (S.D.N.Y. 1979) ...................................................................... 11

STATUTES

New York Civil Practice Law and Rules Section 5223................................................... 10

OTHER AUTHORITIES

Fed. R. Civ. P. 45(c)(1).......................................................................................... 10

Fed. R. Civ. P. 45(c)(3(A)(iv)................................................................................. 10

Fed. R. Civ. P. Rule 69 .......................................................................................... 10

Non-parties Bank of America, N.A., Bank of America Corporation, Merrill Lynch & Co., Inc., and Merrill, Lynch, Pierce, Fenner & Smith, Incorporated (collectively, (the "BofA Entities")[1] submit this memorandum in opposition to plaintiffs' motion to compel production of documents and in support of their of their cross-motion to quash plaintiffs' subpoenas served on them.

## PRELIMINARY STATEMENT

On or about January 12, 2012, plaintiffs, vulture funds holding defaulted sovereign Argentine debt, served identical subpoenas (the "Subpoenas") on each of the BofA Entities. (See Finkelstein Decl. Exs. 2-6). The Subpoenas are breathtaking in scope and purport to impose extraordinarily burdensome and expensive obligations on the BofA Entities to search paper and computer records stored anywhere in the world without regard to the law of countries were documents may be stored. The scope of the Subpoenas includes at least 45 separate and distinct categories of documents (plus sub-parts) involving *at least* 461different specified entities (and countless unspecified ones) that plaintiffs would have this Court believe should be defined as the Republic of Argentina (the "Republic").[2] Strict compliance with the Subpoenas would require the

---

[1]  Banc of America Securities LLC ("BAS") is now known as Merrill, Lynch, Pierce, Fenner & Smith, Inc., which is BAS's successor by merger. Also, both Bank of America Corporation and Merrill Lynch & Co. are holding companies, and as such would not have any responsive documents.

[2]  In addition to the 461 identified entities that plaintiffs assert constitute "Argentina," the Subpoenas also impermissibly expand the definition of "Argentina" to include all agencies, instrumentalities, ministries, political subdivisions, representatives, secretariats, undersecretariats, commissions, councils, offices, institutes, funds, State Controlled Entities, alter egos, all other Persons acting for or on behalf of each of such persons, whether or not authorized to do so, thereby expanding the list exponentially, and making it essentially impossible to identify every person within the definition, as it potentially extends to low level employees.

BofA Entities to identify and perform exhaustive searches across a variety of computer platforms and manual paper files potentially spanning the globe.

The objections interposed by the BofA Entities all are legitimate. Plaintiffs have declined to engage in substantive efforts to limit the scope of the Subpoenas and the attendant burden that on their face they impose. Instead, plaintiffs remain steadfast in their insistence that the BofA Entities produce all of the information they have offered to produce in full satisfaction of the Subpoenas as a precondition to any discussion about limiting the scope of the Subpoenas. (See Glickman Decl. Ex. B). Plaintiffs' own words in their brief are most telling: notwithstanding the BofA Entities offer to "meet and confer," "engage in good faith discussions" and to produce certain categories of information in full compliance with the Subpoenas, plaintiffs complain that the BofA Entities have not withdrawn their objections to the woefully non-specific and blunderbuss Subpoenas. (Pl. Memo at 13). This view that a subpoenaed party should withdraw its objections in their entirety as a condition precedent to the issuing party entering into good faith negotiations perverts the very idea of good faith negotiations, the purpose of which is to *resolve* the objections in a mutually agreeable way. Clearly, plaintiffs do not see it that way.

Indeed, plaintiffs have rejected the requirement that there be "some reasonable definition" of the information in the Subpoena and that they "negotiate," EM Ltd. v. Argentina, 695 F.3d 201 (2nd Cir. 2012) instead serving and relying on the very definition of an onerous and burdensome subpoena.

2

Plaintiffs conflate two issues: whether discovery is reasonable as against the Republic and whether it is reasonable as to the non-party BofA Entities. Plaintiffs seek to impose upon the non-party the BofA Entities a huge burden and expense, without showing the slightest recognition of the difficulty, expense and burden of even trying to comply with the Subpoenas that are, on their face, impossible with which to fully comply.

For all the foregoing reasons as well as those discussed at greater length below it is beyond cavil that the Subpoenas ought not be enforced in their entirety.

**THE PROCEDURAL POSTURE,
THE RELEVANT FACTS AND PLAINTIFF'S REFUSAL
TO MAKE A GOOD FAITH EFFORT TO NARROW THE SCOPE
OF THE SUBPOENAS BEFORE MAKING A MOTION TO COMPEL**

The relevant facts are set forth in the accompanying Declaration of Barry J. Glickman, and in documents attached to the Declaration of plaintiffs' counsel, Eric J. Finkelstein dated October 10, 2012. By a subpoena dated November 10, 2010 plaintiffs sought from Bank of America, N.A. ("BANA") all documents produced to another plaintiff in compliance with a subpoena served in *NML Capital Ltd. v. The Republic of Argentina* (03 Civ. 8845) (the "NML Subpoena"). (Glickman Decl. ¶ 7). At the time plaintiffs served that "me-too subpoena" they knew that BANA had not yet served any documents in connection with the NML Subpoena and that motions to quash and compel were before this Court. Id. On December 22, 2011, BANA complied with the NML Subpoena (which was dramatically less onerous and which plaintiffs in that case

3

negotiated the scope of their requests to be even more limited). (Glickman Decl. ¶ 9). That same day we produced a CD to Aurelius' counsel containing the materials in compliance with that subpoena. (Glickman Decl. ¶ 10). Remarkably, Aurelius waited only 21 days until January 12, 2012 before taking yet another "bite at the apple" by serving these Subpoenas. (Finkelstein Decl. Exs. 2-6). On February 16, 2012, the BofA Entities served their responses and objections to each Subpoena (the "Objections"). (Finkelstein Decl. Exs. 21-24). The Objections included both general objections and specifically tailored objections that were focused on the particular defect in each discrete item of disclosure sought by the Subpoenas.

The Subpoenas demonstrate both plaintiffs' disregard for the proportionality requirements of the Federal Rules and their profound misunderstanding of the way a global financial institution operates. The identical Subpoenas served on the BofA Entities are breathtakingly expansive in their scope and the remarkable breadth of each of the 45 separate demands. By all reasonable standards, strict compliance with the Subpoenas would require an individual with expertise in the knowledge of the inner workings of the Argentine government to manually inspect each and every business record maintained by all of the BofA Entities everywhere in the world qualitatively determine if the unearthed information is responsive. By way of example only:

- Plaintiffs define "Argentina" to include 461 named entities and an unlimited number of unidentified persons and entities that may have

acted for or on behalf of the Republic, and purport to require the BofA entities to search for documents concerning all such persons.

- Plaintiffs define the relevant time period to be an ever-expanding one, beginning on January 1, 2009 and potentially never ending until all responsive documents have been produced – which, in a large bank with diversified business and decentralized records is a virtual impossibility.

- Plaintiffs define each entity served with each Subpoena to include all affiliates and employees, purportedly requiring searches of tens of thousands of individuals, not to mention an unidentified number of affiliates world wide of huge global institutions.

- Plaintiffs purport to require functionally impossible world-wide searches, including searches for:

  o accounts, assets and debt owed to "Argentina", a practical impossibility for global institutions like the BofA Entities;

  o every single document, concerning every single transaction, for all identified accounts (*i.e.* not merely account statements, but evidence of each individual debit and/or credit or other item), along with reports under

various regulatory schemes that the BofA Entities may otherwise be prohibited from disclosing;

o   information about credit extended to Argentina (i.e. not assets of Argentina, but its liabilities);

o   records for any debts owed by anyone to "Argentina" and for any property of "Argentina;"

o   documents concerning real estate "Argentina" owns, leases or maintains, regardless of whether the BofA Entities have anything to do with such property;

o   documents concerning any contract to which "Argentina" is a party, regardless of whether a BofA-Related Entity is a party;

o   documents concerning any metals, gemstones or commodities owned by "Argentina;"

o   documents identifying any financial transaction to which "Argentina" is a participant, regardless of whether a BofA Entity is a party; and

o   documents identifying interests Argentina may have in intellectual property or royalty payments.

6

To further flesh out the ridiculously broad definition of "Argentina," the Subpoena attaches a *non-exclusive* list of purported alter egos of Argentina. The list contains 461 entries in Spanish, 419 entries in English and 165 entries of abbreviations. In addition to the fact that the scope of the list in and of itself imposes an impossible burden on the BofA Entities, some of the terms, if used as search terms as plaintiffs require, would obviously return an impossible number of false positive hits. Those include:

- "MD" [a potential "hit" for every customer who is a physician];

- "SSI" [Supplemental Security Income, a common term];

- "President's Office" ;

- "Vice President";

- MS [a hit for many accounts in the name of women and as well as any references to the State of Mississippi];

- MI [a likely hit for most references to the State of Michigan]; and

- Lists of various government ministries and secretariats that may well also be hits for the same ministries of other governments!

Following service of the Objections, and to date, the BofA Entities have attempted to engage in substantive meet and confer discussions with plaintiffs, who

have effectively rebuffed those attempts.  Plaintiffs waited more than six weeks to respond to the Objections, and when they finally did, by letter dated April 2, 2012, they demanded a "prompt response." (Finkelstein Decl. Ex. 2).  In it, as their only justification for seeking to compel the BofA Entities to engage in an incredibly laborious worldwide effort, they cited a statement attributed to the Chief Executive Officer of Bank of America that Bank of America has the "best global corporate, investment banking and research capabilities" Id.  This not only fails to appreciate what exactly is meant by "research," but fails to form a viable basis for imposing on the BofA Entities the prejudicial and unduly burdensome task of compliance with the impermissibly overbroad Subpoenas.

Counsel for the BofA Entities responded simply and straightforwardly: "if plaintiffs are prepared to narrow the scope and breadth of the subpoena we would be pleased to engage in good faith discussions to sharpen the focus of the disputed areas of inquiry." (Email dated April 30, 2012 attached to Glickman Decl. at Ex. A).  Plaintiffs responded that they "see no reason to narrow the subpoenas;" although they began to engage in a discussion about scope, they nevertheless demanded a written response to their letter rather than simply agreeing to meet and confer.  Id.

Plaintiffs are operating under the mistaken belief that the BofA Entities, and perhaps all large banks, are equipped with a single computer application that enables an individual to type in the thousands of search terms necessary to identify all of the information sought by the Subpoenas, click "search," and thereby search every

platform for every related business, for every relationship everywhere in the world. Nothing could be further from the truth.

Indeed, rather than taking meet and confer obligations seriously, plaintiffs have stated in no uncertain terms that they insist that the BofA Entities search for every single term on their lists and refused a perfectly reasonable offer to limit the scope of the Subpoenas and to redefine the definition of "Argentina" to include only 94 entities that we understand the Republic does not contest may be included, for purposes of a Subpoena, within such definition. (Glickman Decl. Ex. B). Plaintiffs honestly expect the BofA Entities to search its systems for the term "MD," and manually review each hit, and then produce the responses. They continue to insist the BofA Entities search for loans extended to "Argentina" in addition to assets in which "Argentina" may have an interest.

Plaintiffs' have categorically and in writing made clear their refusal to enter into good faith negotiations. Indeed, in response to overtures by the banks plaintiffs' counsel has stated "[i]t is not reasonable for the Banks to suggest that plaintiffs should agree to a compromise proposal at this time." Rather, plaintiffs condition negotiations on the abject and complete withdrawal of objections, which would render the objections themselves moot. Id. They repeatedly insist upon the reasonableness of the scope, breadth, and burden of their Subpoenas, without even the slightest hint of a willingness to compromise. Id.

# ARGUMENT[3]

## POINT I

## THE SUBPOENA IS EXTRAORDINARILY OVERBROAD AND BURDENSOME

By the Subpoenas plaintiffs disregard the obligations imposed on a judgment creditor by both the Federal Rules of Civil Procedure and the New York Civil Practice Law and Rules. Fed. R. Civ. P. 45(c)(1) imposes on plaintiffs the duty to "avoid imposing undue burden or expense." A court must quash or modify a subpoena that imposes an undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). Similarly, Fed. R. Civ. P. Rule 69 states, without ambiguity, that '[t]he procedure in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located." A fortiori, this Court should give deference to New York decisional authority to the extent that it addresses plaintiffs' judgment enforcement efforts. New York Civil Practice Law and Rules Section 5223 permits a judgment creditor to serve a subpoena seeking "disclosure of all matter relevant to the satisfaction of the judgment." New York courts have, however, recognized that this language is subject to very real limitations. In Riverside Capital Advisors, Inc. v. First Secured Capital Corp., 28 A.D.3d 457, 814 N.Y.S.2d 646 (2d Dep't 2006) the Appellate

---

[3] In addition to the discussions contained below, the BofA Entities adopt the legal arguments advanced by each of the other respondent banks in their submissions in opposition to the motion to compel and/or in support of motions to quash. Those respondent banks are Banco de la Nación Argentina, Barclays Bank PLC and Barclays Capital Inc., Citibank, N.A., Citicorp North America, Inc., Citicorp North America, Inc., Citigroup Global Markets, Inc., Citigroup, Inc., Deutsche Bank AG New York Branch, Deutsche Bank Americas Holding Corp., Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas, and Taunus Corporation.

Division stated firmly that the trial court "abused its discretion in failing to quash" subpoenas served on non-parties because "[t]he lengthy requests contained within the subpoenas will cause unreasonable annoyance, disadvantage, and prejudice to these nonparties." 28 A.D.3d at 460.

EIFS, Inc. v. Morie Co., Inc., 298 A.D.2d 548, 749 N.Y.S.2d 43 (2d Dep't 2002) is in accord. There, the Appellate division held that interrogatories consisting of in excess of 110 questions were "patently burdensome, oppressive, and improper." 298 A.D.2d at 549. Indeed, in Riverside Capital the court relied on EIFS in support of the proposition that an order quashing the subpoena in its entirety was indicated instead of simply "pruning" it. 28 A.D.3d at 460.

The Subpoenas exceed all rational bounds and the BofA Entities request that this Court quash the subpoena in its entirety because the demands are unreasonable. As a matter of law, this Court's review of the reasonableness of a subpoena is fact specific. United States v. International Business Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979). In conducting its analysis, the Court should consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burdens imposed. Id. Courts have also indicated that who receives the subpoena impacts on the subpoena's reasonableness. Courts have limited discovery on non-parties in order to protect those individuals or companies from "harassment, inconvenience, or disclosure of

confidential documents." <u>Collins and Aikman Corp. v. J.P. Stevens & Co.</u>, 51 F.R.D. 219, 221 (D.S.C. 1971).

"[A]n order compelling production should be imposed on a non-party… only in extreme circumstances." <u>Minpeco, S.A. v. ContiCommodity Servs., Inc.</u>, 118 F.R.D. 331, 332 (S.D.N.Y. 1988); <u>See</u> also, <u>Fears v. Wilhelmina Model Agency, Inc.</u>, No. 02 Civ. 4911, 2004 WL 719185 at *1 (S.D.N.Y. Apr 1, 2004) ("where, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighting the probative value of the information sought against the burden of production on the non-party").

## POINT II

### COMPLIANCE WITH THE SUBPOENAS EXPOSE THE BOFA ENTITIES TO POTENTIAL CRIMINAL AND CIVIL LIABILITY UNDER FOREIGN LAW

The BofA Entities do business in more than 40 countries around the world. Glickman Decl. ¶ 11. Many of these jurisdictions enforce comprehensive bank secrecy and data privacy laws that prevent dissemination of precisely the type of information for which plaintiffs seek disclosure by the Subpoena. Thus, it is not a reach to submit that a blanket order directing compliance with the Subpoenas by the production of documents concerning accounts, transactions, assets and/or other information maintained around the globe would put them at risk of criminal or civil sanction under the internal laws of these foreign nations.

It is beyond unreasonable to expect the BofA Entities to seek the written legal opinion of counsel in each of 40-plus countries concerning whether information may be produced in response to a foreign subpoena, and if so to what extent.  Certainly, were plaintiffs to acknowledge the inherent overbreadth of the Subpoenas and sharpen their focus to include specifically identified geographical areas the task of addressing the laws applicable to each such jurisdiction would be far more well defined.  But that is not an issue here because plaintiffs insist upon moving forward with a shotgun approach that spreads its buckshot as far and wide as possible.

We note that several respondent banks and the Republic have addressed the merits of this position and we assume this Court's familiarity with their legal arguments.  In the interests of judicial economy we refrain from restating such other parties' arguments.  Instead, for purposes of this motion the BofA Entities join in making them and expressly rely on the authority advanced in the legal memoranda submitted by the other respondents.

## POINT III

### WHETHER THE FSIA PROHIBITS DISCLOSURE REMAINS SUBJECT TO FINAL ADJUDICATION BY THE UNITED STATES SUPREME COURT

The Republic asserts that the Foreign Sovereign Immunities Act mandates that the Subpoenas be quashed. The United States Court of Appeals for the Second Circuit disagrees.  EM Ltd. v. Argentina, 695 F.3d 201 (2nd Cir. 2012).  By their reply to plaintiffs' motion to quash the Republic represents that it intends to file a

13

petition for writ of *certiorari* with the United States Supreme Court on the basis of a split of authority among Circuits on this point.  We make this point so as to preserve the BofA Entities' objection if the Supreme Court addresses this issue.

## **CONCLUSION**

The Subpoenas are unprecedented in their scope and breadth.  They are particularly odious when taken in the context of the earlier production of information by Bank of America, N.A. to plaintiffs in compliance with the "me too" subpoena they served so as not be placed at a competitive disadvantage as compared to plaintiffs in the NML cases.  For all the reasons set forth above and those included in the briefs of Banco de la Nación Argentina, Barclays Bank PLC and Barclays Capital Inc., Citibank, N.A., Citicorp North America, Inc., Citicorp North America, Inc., Citigroup Global Markets, Inc., and Citigroup, Inc., Deutsche Bank AG New York Branch, Deutsche Bank Americas Holding Corp., Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas and Taunus Corporation. we respectfully request that this Court grant the BofA Entities' cross-motion to quash the Subpoenas in their entirety, deny

plaintiffs' motion to compel in its entirety and grant such other and different relief as it

deems just and proper.

Dated:   New York, New York
         December 3, 2012

                                ZEICHNER ELLMAN & KRAUSE LLP

                         By: _Barry Glickman /KE_____

                             Barry J. Glickman
                             Attorneys for Non-parties Bank of
                               America, N.A., Banc of America
                               Securities LLC, Merrill Lynch &
                               Co., Inc., and Merrill, Lynch, Pierce,
                               Fenner & Smith, Incorporated
                             575 Lexington Avenue
                             New York, New York 10022
                             (212) 223-0400

#688854v4/KCR/1593.475