UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x :

AURELIUS CAPITAL PARTNERS, LP
and AURELIUS CAPITAL MASTER, LTD.,

                                  Plaintiffs,

                - against -

THE REPUBLIC OF ARGENTINA,

                                 Defendant.

No. 07 Civ. 2715 (TPG)

------------------------------------------------------------------x :

AURELIUS CAPITAL PARTNERS, LP
and AURELIUS CAPITAL MASTER, LTD.,

                                  Plaintiffs,

                - against -

THE REPUBLIC OF ARGENTINA,

                                 Defendant.

No. 07 Civ. 11327 (TPG)

------------------------------------------------------------------x :

BLUE ANGEL CAPITAL I LLC,

                                  Plaintiff,

                - against -

THE REPUBLIC OF ARGENTINA,

                                 Defendant.

No. 07 Civ. 2693 (TPG)

------------------------------------------------------------------x : (*Captions continue on following pages*)

# REPLY MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION
FROM DEFENDANT AND NON-PARTY BANKS AND
IN OPPOSITION TO CERTAIN NON-PARTY BANKS'
CROSS-MOTIONS TO QUASH, MODIFY OR
FOR A PROTECTIVE ORDER

2830682.1

```
------------------------------------------------------------x :
AURELIUS CAPITAL MASTER, LTD. and          :
ACP MASTER, LTD.,                          :
                                           :  No. 09 Civ. 8757 (TPG)
                            Plaintiffs,    :
                                           :
              - against -                  :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                            Defendant.     :
                                           :
------------------------------------------------------------x :
AURELIUS CAPITAL MASTER, LTD. and          :
ACP MASTER, LTD.,                          :
                                           :  No. 09 Civ. 10620 (TPG)
                            Plaintiffs,    :
                                           :
              - against -                  :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                            Defendant.     :
                                           :
------------------------------------------------------------x :
AURELIUS OPPORTUNITIES FUND II, LLC        :
and AURELIUS CAPITAL MASTER, LTD.,         :
                                           :  No. 10 Civ. 1602 (TPG)
                            Plaintiffs,    :
                                           :
              - against -                  :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                            Defendant.     :
------------------------------------------------------------x :
```

```
--------------------------------------------------------------x :
AURELIUS OPPORTUNITIES FUND II, LLC            :
and AURELIUS CAPITAL MASTER, LTD.,             :
                                               :   No. 10 Civ. 3507 (TPG)
                              Plaintiffs,       :
                                               :
                 - against -                   :
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                              Defendant.        :
                                               :
--------------------------------------------------------------x :
AURELIUS CAPITAL MASTER, LTD. and              :
AURELIUS OPPORTUNITIES FUND II, LLC,           :
                                               :   No. 10 Civ. 3970 (TPG)
                              Plaintiffs,       :
                                               :
                 - against -                   :
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                              Defendant.        :
                                               :
--------------------------------------------------------------x :
BLUE ANGEL CAPITAL I LLC,                      :
                                               :
                              Plaintiff,        :   No. 10 Civ. 4101 (TPG)
                                               :
                 - against -                   :
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                              Defendant.        :
--------------------------------------------------------------x :
```

```
----------------------------------------------------------------x  :
BLUE ANGEL CAPITAL I LLC,                                          :
                                                                  :
                                Plaintiff,                        :   No.  10 Civ. 4782 (TPG)
                                                                  :
                         - against -                              :
                                                                  :
THE REPUBLIC OF ARGENTINA,                                        :
                                                                  :
                                Defendant.                        :
                                                                  :
----------------------------------------------------------------x  :
AURELIUS CAPITAL MASTER, LTD. and                                 :
AURELIUS OPPORTUNITIES FUND II, LLC,                              :
                                                                  :   No.  10 Civ. 8339 (TPG)
                                Plaintiffs,                       :
                                                                  :
                         - against -                              :
                                                                  :
THE REPUBLIC OF ARGENTINA,                                        :
                                                                  :
                                Defendant.                        :
----------------------------------------------------------------x  :
```

2830682.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ..........................................................................................................3

I. PLAINTIFFS' REQUESTS ARE NOT
   UNDULY BURDENSOME ...........................................................................3

   A. In Accordance with the Prior Rulings of this Court and the Second
      Circuit, Plaintiffs Seek Discovery About the Republic's Assets and
      Commercial Activities ............................................................................3

   B. The Banks Refuse to Explain Their Claims of Undue Burden ...................6

   C. Plaintiffs' Revised Requests ...................................................................11

      1. Revised Requests to the Banks .......................................................13

      2. Revised Requests to the Republic..................................................15

      3. Revised List of Argentine Entities ................................................18

II. NONE OF THE BANKS' OTHER OBJECTIONS HAVE MERIT....................21

   A. The Banks Have Possession, Custody, and Control Over
      Documents Held by Other Members of Their Corporate Families...........21

   B. The Separate Entity Rule Is Irrelevant for Discovery Purposes ...............23

   C. Plaintiffs Are Not Required To Proceed Pursuant to the Hague
      Convention ...........................................................................................27

   D. Foreign Law Does Not Bar Compliance with the Bank Subpoenas..........28

   E. N.Y. C.P.L.R. § 5224 Does Not Apply to Plaintiffs' Subpoenas
      *Duces Tecum* ........................................................................................34

   F. Plaintiffs Do Not Need to Wait for the Republic to Respond to the
      Requests Before Enforcing the Subpoenas Against the Banks.................35

CONCLUSION.....................................................................................................37

2830682.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adidas (Canada) Ltd. v. SS Seatrain Bennington*,
  1984 WL 423 (S.D.N.Y. May 30, 1984) ...................................................................33

*All Am. Trading Corp. v. Cuartel General Fuerza Aerea Guardia Nacional De Nicaragua*,
  818 F. Supp. 1552 (S.D. Fla. 1993) ........................................................................20

*Allied Mar., Inc. v. Descatrade SA*,
  620 F.3d 70 (2d Cir. 2010)......................................................................................23

*Aurelius Capital Partners, LP v. Rep of Arg.*,
  2009 WL 755231 (S.D.N.Y. Mar. 12, 2009), *vacated on other grounds*, 584
  F.3d 120 (2d Cir. 2009)............................................................................................6

*Aurelius Capital Partners, LP v. Rep. of Arg.*,
  2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) ...............................................................35

*Aurelius Capital Partners v. Rep. of Arg.*,
  2013 WL 857730 (S.D.N.Y. Mar. 7, 2013) (March 7 Opinion)......................... passim

*Ayyash v. Koleilat*,
  957 N.Y.S.2d 574 (N.Y. Sup. Ct. 2012) ...................................................................25

*Behring Int'l, Inc. v. Imperial Iranian Air Force*,
  475 F. Supp. 396 (D.N.J. 1973) ..............................................................................20

*British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*,
  2000 WL 713057 (S.D.N.Y. June 2, 2000) ..............................................................30

*In re Chase Manhattan Bank*,
  297 F.2d 611 (2d Cir. 1962).....................................................................................32

*Eitzen Bulk A/S v. Bank of India*,
  827 F. Supp. 2d 234 (S.D.N.Y. 2011)......................................................................24

*EM Ltd. v. Rep. of Arg.*,
  695 F.3d 201 (2d Cir. 2012), *reh'g denied*, No. 11-4065 (2d Cir. Oct. 10,
  2012) ................................................................................................................ passim

*EM Ltd. v. Rep. of Arg.*,
  720 F. Supp. 2d 273 (S.D.N.Y. 2010), *vacated on other grounds sub nom.*
  *NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172
  (2d Cir. 2011).........................................................................................................4, 5

2830682.1

Page(s)

*First Am. Corp. v. Price Waterhouse LLP*,
    154 F.3d 16 (2d Cir. 1998).........................................................................27

*First Nat'l City Bank of New York v. IRS*,
    271 F.2d 616 (2d Cir. 1959).........................................................................33

*Fundacion Museo de Arte Contemporaneo de Caracas – Sofia Imber v. CBI-TDB*
    *Union Bancaire Privee*,
    1996 WL 243431 (S.D.N.Y. Feb. 9. 1996)..................................................33

*Global Tech., Inc. v. Royal Bank of Canada*,
    2012 WL 89823 (N.Y. Sup. Ct. Jan. 11, 2012) ....................................23, 24

*Gucci Am., Inc. v. Curveal Fashion*,
    2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ..........................................30, 33

*Gucci Am. Inc. v. Li*,
    2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011).......................................23, 33

*Honda Lease Trust v. Middlesex Mut. Assur. Co.*,
    2008 WL 3285242 (D. Conn. Aug. 7, 2008) ...............................................23

*Ings v. Ferguson*,
    282 F.2d 149 (2d Cir. 1960).........................................................................33

*Intercontinental Credit Corp. Div. of Pan Am. Trade Dev. Corp. v. Roth*,
    578 N.Y.S.2d 955 (N.Y. Sup. Ct. 1990), *vacated on other grounds*, 595
    N.Y.S.2d 602 (N.Y. Sup. Ct. 1991) ............................................................25

*Koehler v. Bank of Bermuda. Ltd.*,
    12 N.Y.3d 533 (2009) ..................................................................................24

*Koehler v. Bank of Bermuda, Ltd.*,
    2003 WL 289640 (S.D.N.Y. Feb. 11, 2003)................................................26

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*,
    2010 WL 3780275 (E.D.N.Y. Sept. 22, 2010) ...........................................36

*Laker Airways, Ltd. v. Pan Am. World Airways*,
    607 F. Supp. 324 (S.D.N.Y. 1985)..............................................................32

*Linde v. Arab Bank, PLC*,
    262 F.R.D. 136 (E.D.N.Y. 2009) ..........................................................22, 32

*Linde v. Arab Bank, PLC*,
    463 F. Supp. 2d 310 (E.D.N.Y. 2006), *aff'd*, 2007 WL 812918 (E.D.N.Y.
    2007) ......................................................................................................32, 33

2830682.1

Page(s)

*Milliken & Co. v. Bank of China*,
    758 F. Supp. 2d 238 (S.D.N.Y. 2010)..........................................................................33

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
    116 F.R.D. 517 (S.D.N.Y. 1987) ................................................................28, 32, 33

*Motorola Credit Corp. v. Uzan*,
    288 F. Supp. 2d 558 (S.D.N.Y. 2003)..........................................................................25

*NML Capital, Ltd. v. Rep. of Arg.*,
    2013 WL 491522 (S.D.N.Y. Feb. 8, 2013) (February 8 Opinion).......................passim

*NML Capital, Ltd. v. Rep. of Arg.*, No. 03 Civ. 8845 (TPG) (S.D.N.Y. Sept. 2,
    2011), *aff'd sub nom. EM Ltd.*, 695 F.3d 201 (2d Cir. 2012), *reh'g denied*, No.
    11-4065 (2d Cir. Oct. 10, 2012)..............................................................................4, 5

*Richbell Info. Servs., Inc. v. Jupiter Partners L.P.*,
    816 N.Y.S.2d 470 (1st Dep't 2006) ............................................................................32

*Rubin v. Islamic Republic of Iran*,
    637 F.3d 783 (7th Cir. 2011) ......................................................................................34

*S.E.C. v. Credit Bancorp, Ltd.*,
    194 F.R.D. 469 (S.D.N.Y. 2000) ..........................................................................22, 23

*Samsun Logix Corp. v. Bank of China*,
    2011 WL 1844061 (N.Y. Sup. Ct. May 12, 2011).......................................................24

*Schoolcraft v. City of New York*,
    2012 WL 2161596 (S.D.N.Y. June 14, 2012) ..............................................................7

*Shaheen Sports, Inc. v. Asia Ins. Co.*, Ltd.,
    2012 WL 919664 (S.D.N.Y. Mar. 14, 2012) ..............................................................24

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of
    Iowa*,
    482 U.S. 522 (1987)....................................................................................................27

*Sokol v. Wyeth, Inc.*,
    2008 WL 3166662 (S.D.N.Y. Aug. 4, 2008)................................................................7

*Strauss v. Credit Lyonnais, S.A.*,
    249 F.R.D. 429 (E.D.N.Y. 2008)..........................................................................30, 33

*Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic
    Republic*,
    2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011).............................................................20

iv

Page(s)

*Tiffany (NJ) LLC v. Forbse*,
    2012 WL 1918866 (S.D.N.Y. May 23, 2012) ........................................................32, 33

*Trade Dev. Bank v. Cont'l Ins. Co.*,
    469 F.2d 35 (2d Cir. 1972)........................................................................................32

*United States v. First Nat'l City Bank*,
    396 F.2d 897 (2d Cir. 1968)......................................................................................33

*In re Vivendi Universal, S.A. Secs. Litig.*,
    2009 WL 8588405 (S.D.N.Y. Jul. 10, 2009) .............................................................22

RULES AND STATUTES

28 U.S.C. § 1611(b)(2) ....................................................................................................20

N.Y. C.P.L.R. § 2304.........................................................................................................1

N.Y. C.P.L.R. § 5223......................................................................................................24

N.Y. C.P.L.R § 5224 .........................................................................................1, 24, 34, 35

FED. R. CIV. P. 26 ..............................................................................................................1

FED. R. CIV. P. 31 ...........................................................................................................35

FED. R. CIV. P. 34 ...........................................................................................................26

FED. R. CIV. P. 37 ..............................................................................................................1

FED. R. CIV. P. 45 ..............................................................................................................1

FED. R. CIV. P. 69 ..............................................................................................................1

OTHER AUTHORITIES

23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 23, reproduced in 28 U.S.C.
    following § 1781...........................................................................................................27

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES
    § 442(1)(c) ..................................................................................................................28

Plaintiffs Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC and Blue Angel Capital I LLC (collectively "Plaintiffs") respectfully submit this Reply Memorandum of Law in further support of their motion pursuant to Federal Rules of Civil Procedure 26, 37 and 45 to compel production of documents responsive to the requests served on defendant The Republic of Argentina ("Argentina" or the "Republic") and subpoenas served on non-parties Bank of America Corp. ("BofA"), Barclays Bank PLC ("Barclays"), Banco de la Nación Argentina ("BNA"), Citibank, N.A. ("Citibank") and Deutsche Bank AG ("Deutsche Bank") and certain of their affiliates (collectively, the "Banks"), and in opposition to the cross-motions to quash, modify or for a protective order filed by BofA, Barclays, Citibank, Deutsche Bank and their affiliates pursuant to Federal Rules of Civil Procedure 26, 45 and 69 and pursuant to Sections 2304 and 5224 of the New York Civil Practice Law and Rules.

## PRELIMINARY STATEMENT

In the last few months, the Court has issued two decisions that have gone a long way towards resolving many of the points of dispute regarding the asset discovery requests Plaintiffs served on the Republic and the Banks.  In its March 7 opinion in these matters denying the Republic's motion for a protective order and to quash, the Court overruled many of the objections raised by the Republic and the Banks.  *Aurelius Capital Partners v. Rep. of Arg.*, 2013 WL 857730, at *2 (S.D.N.Y. Mar. 7, 2013) (the "March 7 Opinion").  The Court rejected the arguments attacking the territorial scope and time period of the requests, and once again rejected arguments that the Foreign Sovereign Immunities Act ("FSIA") somehow bars the discovery Plaintiffs seek.  The Court also

held that the Republic had no standing to assert objections based upon foreign law, which could only be raised by the Banks.

In its February 8, 2013 opinion in the *NML* matters, *NML Capital, Ltd. v. Rep. of Arg.*, 2013 WL 491522 (S.D.N.Y. Feb. 8, 2013) (the "February 8 Opinion"), the Court soundly rejected the foreign law objections raised by BNA (the same objections BNA raises here).  Not only did the Court find that all but one of the laws in question did not preclude production, but it also concluded that even if foreign law did purport to bar discovery, the balancing of factors set forth in the RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES meant that discovery should still proceed.  In particular, the "United States' interest in fully and fairly adjudicating the matters before its courts, including enforcing its judgments, outweighs the foreign countries' interest in protecting its banking customers' records" – especially when the records at issue concern the judgment debtor itself, Argentina.  *Id.* at *11.  The rationale of the February 8 Opinion applies with equal force here, not only to BNA's foreign law objections, but to the foreign law objections of the other Banks as well.

The only issue remaining with respect to discovery from the Republic and the principal issue remaining with respect to the Banks is the appropriate scope of Plaintiffs' requests.  In its March 7 Opinion, the Court noted that Plaintiffs' subpoenas requested more categories of documents (30 versus 12) and more entities in the definition of "Argentina" (461 versus 225) than the subpoenas NML had served on BNA and BofA. Heeding the Court's guidance to "tailor" its requests, Plaintiffs propose herein revised document categories for the Republic and the Banks, and a revised list of Argentine entities that eliminates all state-owned companies.  The revised requests – now five (5)

2

for the Banks and nine (9) for the Republic – are appropriately focused on Argentina's "financial circulatory system," while respecting the Court's guidance not to target assets in Argentina.  They are requests that the Banks and the Republic should be able to respond to with reasonable effort – the types of information sought are of the kind that the Banks would be expected to keep in the normal course in computerized databases and that the Republic is required to maintain under its own laws.

Also unresolved are miscellaneous objections from the Banks – specious arguments that they lack the ability to produce documents from their corporate affiliates or overseas branches, that Plaintiffs should go through the Hague Convention or wait for the Republic to produce before seeking discovery from the Banks here, and that Plaintiffs have failed to provide a certification under a CPLR provision which does not even apply to Plaintiffs' requests.  All of those objections lack merit, and accordingly, the Court should now grant Plaintiffs' motion to compel and deny the motions by the moving Banks to quash, modify, or for a protective order.

## **ARGUMENT**

### **I.**

#### **PLAINTIFFS' REQUESTS ARE NOT UNDULY BURDENSOME**

**A.    In Accordance with the Prior Rulings of this Court and the Second Circuit, Plaintiffs Seek Discovery About the Republic's Assets and Commercial Activities**

Plaintiffs served discovery requests on Argentina and five international money center institutions with known connections to Argentina in order to obtain information about Argentine assets or commercial relationships that might lead to potential attachments here or abroad.  In so doing, Plaintiffs were following the orders of

3

this Court, now affirmed by the Second Circuit, permitting such discovery.  *See* Finkelstein Decl. Ex. 77, *NML Capital, Ltd. v. Rep. of Arg.*, No. 03 Civ. 8845 (TPG) (S.D.N.Y. Sept. 2, 2011), *aff'd sub nom. EM Ltd. v. Rep. of Arg.*, 695 F.3d 201 (2d Cir. 2012), *reh'g denied*, No. 11-4065 (2d Cir. Oct. 10, 2012).  As this Court has repeatedly acknowledged, it intends to serve as a "clearinghouse for information" on a "very comprehensive basis" about the Republic's "activities of a potentially commercial nature, potentially activities which could lead to attachments wherever."  Rapport Decl. Ex. D at 7; Finkelstein Decl. Ex. 84 at 45-46.

Even though the Republic and the Banks complain about the number of Plaintiffs' requests, there is no dispute that each request targets a type of asset or commercial activity that the Republic is engaged in or reasonably could be assumed to be engaged in – such as bank accounts, real estate, and various types of financial transactions.  As this Court has stated, "there should be a program of discovery," which produces information about the Republic's assets, "contracts it is entering, it or some branch of the Republic is entering into anywhere, United States or Germany or France or anywhere," as well as "any financing it is doing, any financing of any kind."  Finkelstein Decl. Ex. 84 at 44-45.  Indeed, Argentina nowhere denies that it has the types of assets or engages in the sorts of activities about which Plaintiffs seek discovery.  And as the Court has acknowledged, Plaintiffs' requests are "appropriately tailored geographically" because they are not targeted to assets in Argentina.  *Aurelius*, 2013 WL 857730, at *2 (March 7 Opinion).

The Republic and the Banks also take issue with the definition of "Argentina" set forth in Plaintiffs' request:

2830682.1

> [Argentina] means the Republic of Argentina, and includes its agencies, instrumentalities, ministries, political subdivisions, representatives, secretariats, undersecretariats, commissions, councils, offices, institutes, funds, State Controlled Entities (as defined below), alter egos, all other Persons acting for on behalf of Argentina (whether or not authorized to do so), and all Persons listed in Exhibit 1 attached hereto.
>
> "State Controlled Entity" means any agency, corporation, department, ministry, subdivision or other entity controlled directly or indirectly by Argentina, or of which more than 25% of the equity or other ownership interest is directly or indirectly owned, held or controlled by Argentina.

Finkelstein Decl. Ex. 1 at 2, 4; Exs. 2-19 at 1-2.  This definition is similar to that used in the NML asset discovery requests.  *See* Finkelstein Decl. Ex. 77, *NML*, No. 03 Civ. 8845 (TPG) (S.D.N.Y. Sept. 2, 2011), *aff'd sub nom. EM Ltd.*, 695 F.3d 201, 204 ("'Argentina' is broadly defined to include 'its agencies, instrumentalities, ministries, political subdivisions, representatives, State Controlled Entities . . . , and all other Persons acting or purporting to act for on behalf of Argentina.'  A 'State Controlled Entity' is defined to include any entity controlled or more than 25% owned by Argentina.").

Although the Republic and the Banks criticize Plaintiffs for the number of entities on Exhibit 1 that are included within the definition of Argentina, that list reflects the reality that Argentina has many political subdivisions and other entities through which it conducts its affairs.  Every entity on that list is there because Argentina has itself identified that entity as being part of the Republic or owned in whole or in part by the Republic.  Because Argentina has a history of shielding its assets from creditors by holding them through ostensibly separate entities – *see EM Ltd. v. Rep. of Arg.*, 720 F. Supp. 2d 273, 280 (S.D.N.Y. 2010), *vacated on other grounds sub nom. NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172 (2d Cir. 2011) (Banco

5

Central de la República Argentina ("BCRA")  is alter ego of the Republic); *see also*

*Aurelius Capital Partners, LP v. Rep of Arg.*, 2009 WL 755231, at \*11 (S.D.N.Y. Mar.

12, 2009) (Administración Nacional de la Seguridad Social ("ANSES") is political

subdivision of the Republic), *vacated on other grounds*, 584 F.3d 120, 131 (2d Cir. 2009)

– it is eminently reasonable for Plaintiffs to seek information about subdivisions of the

Republic and agencies and entities that are part of the Republic (including deconcentrated

agencies and decentralized entities, such as the BCRA and ANSES).

NML did likewise when it served subpoenas on BofA and BNA, and these

banks responded to NML's requests using lists that had more than 200 entries.  While it

is the case (as noted by the Court) that Plaintiffs' list of Argentine entities is longer than

the list used by NML, *Aurelius*, 2013 WL 857730, at \*3 (March 7 Opinion), neither the

Republic nor the Banks have agreed to use even NML's list in responding to Plaintiffs'

requests.  To the contrary, the Banks – in seeming lockstep with the Republic – insist that

they will only use a Republic-approved list of entities (94) that has less than half the

entities on the NML list.  Rapport Decl. Ex. B; Finkelstein Decl. Ex. 69.  The issue is

really not the number of entities on Plaintiffs' list.  The list reflects the way that

Argentina has chosen to organize itself; the only issue is whether it is unduly burdensome

to use that list to search for documents responsive to Plaintiffs' requests.  As explained

below, Plaintiffs' list (especially as refined) does not present an undue impediment to

production.

### B.    The Banks Refuse to Explain Their Claims of Undue Burden

Although the Banks contend that Plaintiffs failed to engage in good faith

efforts to meet and confer, the voluminous record of meet and confer communications

6

submitted with Plaintiffs' motion makes plain that is not the case.[1]  As explained in Plaintiffs' opening brief, Plaintiffs repeatedly attempted to engage with the Banks regarding the requests, but to no avail.  Rather, the Banks took the position that the Requests were "premature" because the Second Circuit had not ruled on the appeal in the *NML* matter, and refused to answer any of Plaintiffs' questions regarding the Banks' summary assertions that the requests were unduly burdensome.

When objecting to a discovery request on the grounds that it is unduly burdensome, the Banks "must do more than simply intone the familiar litany that requests are burdensome, oppressive or overly broad."  *Sokol v. Wyeth, Inc.*, 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008) (citation and internal quotation marks and brackets omitted).  They must show "specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  *Id.* (citation and internal quotation marks and brackets omitted).  The party "seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome."  *Schoolcraft v. City of New York*, 2012 WL 2161596, at *2 (S.D.N.Y. June 14, 2012).

Thus, normally when the recipient of a discovery request contends the request is unduly burdensome, the recipient will engage in a dialogue with the requesting party – explaining why it cannot do what is requested, offering to explain what it can do,

---

[1] Although BofA accused Plaintiffs of "inadvertently or otherwise" omitting certain emails between counsel for BofA and Plaintiffs, Glickman Decl. ¶ 5, all three allegedly missing e-mail were in fact contained within Exhibit 45 to the Finkelstein Declaration submitted with Plaintiffs' moving papers.

and answering the requesting party's questions about its capacity to produce responsive documents.  In light of that discussion, and information provided by the producing party about its systems, resources and the like, the requesting party can then make informed decisions about appropriate refinements and compromises.  Here, there was no such dialogue.  The Banks repeatedly and summarily asserted that the requests were unduly burdensome – and basically took the position that there was no discussion to be had until Plaintiffs unilaterally limited the scope of their requests.

The Banks criticize Plaintiffs for failing to make unilateral concessions, but as Plaintiffs repeatedly explained to the Banks, they would be willing to make appropriate refinements and concessions if the Banks were willing to help Plaintiffs understand the limitations the Banks supposedly faced in obtaining responsive documents and information.  When the Banks summarily insisted that searches would produce false positives, be expensive, or time consuming, Plaintiffs sought information to understand the basis for the Banks' objections.  For example, Plaintiffs asked on numerous occasions for the Banks to explain how information was stored in the Banks' computer system and the protocols (including data fields) for conducting searches of those systems.  *See, e.g.*, Finkelstein Decl. Exs. 50, 51, 54, 65, 70; Rapport Decl. Ex. B.  No response.  Plaintiffs offered Citibank a list of search terms.  *See, e.g.*, Finkelstein Decl. Ex. 59.  No counter-proposal.  Plaintiffs asked for information about why the Banks did not have possession, custody or control over documents held by affiliates or overseas branches.  *See, e.g.*, Finkelstein Decl. Exs. 44, 50, 54, 56, 59, 72.  No response.

Only when it became clear that Plaintiffs were not going to be satisfied with the Banks' lack of cooperation and intended to move forward with a motion to

8

compel, did the Banks finally come to the table with a proposal – and then only at the very last minute.  For more than ten months Plaintiffs and the Banks had been engaged in meet and confer discussions that led nowhere.  Even after the Second Circuit affirmed this Court's ruling in the *NML* cases on August 20, 2012, the Banks did not budge. Finkelstein Decl. Exs. 45, 51, 59, 67, 73.  On September 18, 2012, the parties and the Banks set a briefing schedule, which provided that Plaintiffs' brief would be due on October 10, 2012.  Finkelstein Decl. Ex. 75.  On October 5 – the Friday before Plaintiffs' brief was due – Citibank finally came forward with a proposal for what it was willing to do.  Finkelstein Decl. Exs. 68-69.  In an apparently coordinated effort, the other Banks contacted Plaintiffs' counsel a day or two before Plaintiffs' brief was due – or during the week after Plaintiffs' brief was due – proposing further meet and confer discussions which eventually turned into further similar proposals.  Finkelstein Decl. Exs. 52, 74, 94; Rapport Decl. Exs. A, B.

The Banks' proposals were an obvious last-ditch attempt to try to make themselves appear more cooperative than they had actually been.  Giving the timing of the proposals, the Banks clearly understood that there would not be time for serious discussions of the proposals before Plaintiffs' brief was due.  But even when Plaintiffs later sought to engage with the Banks regarding their proposals, the Banks simply shut down.

The Banks proposed the following as full compliance with their respective obligations under the subpoenas:

- For the 94 entities on Exhibit 1 to the subpoenas that the Republic has apparently conceded fall within the definition of Argentina (those which the Republic has labeled "For Discussion"), each Bank has proposed to search for (but not necessarily produce) U.S.

9

dollar-denominated SWIFT transfers involving these entities. Citibank proposed a $250,000 threshold for the SWIFT transfers.

- Barclays, BNA and BofA proposed searching for U.S.-based accounts for the Republic-approved entities.

- BofA proposed searching for U.S.-based lending relationships for the Republic-approved entities.

- BNA proposed to limit its searches to the 33 entities on the Republic-approved list that had not been the subject of searches it performed in connection with a subpoena served by NML Capital, Ltd.

- The Banks took varying positions on the appropriate time frame for such searches – ranging from 3 months to the time period set forth in the subpoenas.

Rapport Decl. Ex. B. None of the Banks agreed to produce the information that resulted from the searches they would perform; instead, they reserved the right to withhold the information if they believed that there was a foreign law that would bar production. *Id.* None of the Banks agreed to search for accounts or information located outside the United States. *Id.* None of the Banks agreed to search for transfers other than U.S.-dollar transfers that went through the United States. *Id.* By contrast, in response to the NML subpoenas, BNA and BofA searched for – and produced – information concerning any accounts and all transfers (regardless of currency or dollar amount) for the approximately 225 entities requested by NML. *See Aurelius*, 2013 WL 857730, at *3 (March 7 Opinion).

Plaintiffs wrote to the Banks with reasonable follow up questions:

- Plaintiffs asked the Banks to explain how they intended to conduct the searches they were proposing to perform (including computer search protocols, if applicable), and whether they would include all members of their respective bank families.

- Plaintiffs asked the Banks why they would limit their searches to only the 94 entities approved by the Republic.

10

2830682.1

- Plaintiffs asked the Banks why they were not willing to search for assets or information located outside the United States.

- Plaintiffs asked the Banks why they were not willing to search for all relationships the Banks have with Argentina (not just, as BofA offered, to search for U.S.-based lending relationships).

- Plaintiffs asked the Banks why they could not comply with the time period set forth in the subpoena.

- Plaintiffs asked the Banks why compliance with the subpoenas would be unduly burdensome.

*Id.*  Plaintiffs also noted that there was no reason for the Banks to defer performing the searches they had proposed, nor was it reasonable for the Banks to insist that the Plaintiffs should forfeit their right to seek further compliance with the subpoenas, including production of information that becomes apparent based on any initial production.  *Id.*

In response, the Banks wrote back two weeks later that they were going to assume that Plaintiffs had "rejected" the proposals – even though that was clearly not the case – and refused to respond to any of the concerns or questions raised by Plaintiffs. Rapport Decl. Ex. C.

## C.    Plaintiffs' Revised Requests

Plaintiffs' subpoenas to the Banks and requests to the Republic, as written, are reasonable.  Plaintiffs have always been willing to engage in good faith discussions with the Banks and Republic regarding the scope of the requests.  They have, however, been stymied in those efforts by the insistence by the Banks and the Republic that Plaintiffs' unilaterally make concessions, and the unwillingness by the Banks and the Republic to answer the most basic questions raised by Plaintiffs.

2830682.1

Plaintiffs believe that the Court's recent decisions have narrowed the remaining disputes regarding the requests.  For example, in its March 7 Opinion, the Court overruled the objections based on the lack of territorial restriction:

> Plaintiffs are allowed to seek discovery to understand Argentina's financial circulatory system – to locate Argentina's assets and accounts, and learn how Argentina moves these assets through New York and throughout the world.  The recognized territorial limitation is that discovery should be targeted to assets located in Argentina, as the FSIA would clearly not allow plaintiffs to seize these assets.  The subpoenas appear to comply with this understanding and thus are appropriately tailored geographically.

*Aurelius*, 2013 WL 857730, at *2 (March 7 Opinion).  The Court rejected claims that Plaintiffs' discovery demands are unreasonably duplicative or cover too broad a time period, specifically noting that a three- or four-year time period is not unreasonably burdensome (and had been approved by the Court previously in the *NML* actions).  *Id.* at *3.  And the Court rebuffed (once again) objections based upon the FSIA.  *Id.*

With respect to objections based upon foreign law, the March 7 Opinion held that the Republic did not have standing to assert such objections, and deferred ruling on the Banks' foreign law objections.  The Court's February 8 Opinion in the *NML* actions, however, did address BNA's foreign law objections and, as discussed *infra*, that decision effectively forecloses any foreign law arguments BNA and the other Banks might make here.  *NML*, 2013 WL 491522, at *3-12 (February 8 Opinion).

With respect to the scope of Plaintiffs' requests, the Court noted that the NML subpoenas defined "Argentina" as consisting of 225 entities and sought 12 categories of documents, while Plaintiffs' subpoenas define "Argentina" as consisting of 461 categories and seek at least 30 categories of documents with subparts.  *Aurelius*,

12

2013 WL 857730, at *3 (March 7 Opinion).  Pursuant to the Court's suggestion that

Plaintiffs "tailor" their requests, *id.* at *3-4, Plaintiffs are prepared to refine their requests

as discussed below.

      **1.**      **Revised Requests to the Banks**

            As written, Plaintiffs subpoenas to the Banks included 45 categories of

requested documents.  In a good faith effort to facilitate resolution of the outstanding

issues, Plaintiffs propose that the Banks produce documents responsive to the following

five (5) requests:

(1)      Documents sufficient to identify any property, including assets or accounts, maintained at [Bank] anywhere in the world at any time since January 1, 2013 in the name of Argentina, for which Argentina is a signatory, or which have been beneficially held in whole or in part by Argentina.

(2)      For all accounts identified in Response to Request 1, produce for each account: (a) all account opening documentation, and if applicable, documents concerning the closure of the account; (b) all account or customer information as maintained, for example, in a customer relationship management or customer information file; (c) documents sufficient to identify the currency, current balance and all property held in each account; (d) documents sufficient to identify any transfers in or out of each account since January 1, 2011, including documents sufficient to identify any counterparties, intermediaries or intermediary accounts involved in such transfers, the nature and value of the property transferred, and the purpose of such transfer; (e) all reports since January 1, 2011 used to monitor compliance with Bank Secrecy Act, Anti-Money Laundering or Office of Foreign Assets Control reporting requirements; and (f) all account statements for each such account since January 1, 2011.

(3)      All documents concerning any transfer, in which you had any involvement and which occurred since January 1, 2011, of any monies or financial instruments to, from, or through accounts owned or controlled by Argentina.  For the avoidance of any doubt and without limiting the foregoing, this includes, but is not limited to, the entire text of communications transmitted through systems such as SWIFT, CHIPS, FEDWire, DTC, and any similar system.  For the further avoidance of any doubt and without limiting the foregoing, data concerning transactions with a counterparty should include fields corresponding to the counterparty, including but not limited to account number, ABA routing number, and SWIFT code.

(4)      Documents sufficient to identify any financial arrangements that existed at any point since January 1, 2013 to which [Bank] and Argentina are both either a party,

participant, counterparty or beneficiary (including but not limited to loans, commercial or standby letters of credit, other extensions of credit, repos, reverse repos, swaps, derivative transactions, forward transactions, options, structured deposits or arrangements with respect to foreign exchange, currency, commodities, or precious metals), including where applicable any document setting forth the terms of such arrangements.

(5)     Documents sufficient to identify any communications between [Bank] and Argentina since June 1, 2012 with respect to any prospective loan, issuance of securities or other form of financing by or for the benefit of Argentina or pursuant to which any assets or proceeds would flow to Argentina or payments would be made to, by or for the benefit of Argentina, including but not limited to any proposals concerning such loans, issuances or financings.

These revised requests – focused on the Argentina's financial circulatory system, assets and accounts – are targeted to categories of documents that the Banks should be expected to maintain in the normal course, and which they should be able to produce with a reasonable expenditure of effort.  Each of the Banks likely keeps records of the property under its custody, and the transactions it processes and enters into.  The Banks presumably have computerized databases that would permit them to search for property they hold (such as accounts), transfers that flow through the Bank (such as SWIFT or other wire transfers), and financial arrangements among the Bank and Argentina (such as loans, letters of credit, swaps or derivative contracts).  Indeed, BNA and BofA have already conducted searches for similar information in response to the NML subpoenas.  Plaintiffs have offered on numerous occasions during the meet and confer process to consult with the Banks regarding appropriate search protocols customized to the computer system capacities at each of the Banks.  To the extent the Banks may need to consult with personnel about particular areas – for example, loans, securities offerings or financings – the Banks should be able to identify the relevant departments and personnel who might have responsive documents and Plaintiffs are willing to discuss identification of a reasonable list of potential custodians.  The Banks'

14

burden in responding to the revised requests has also been significantly reduced by

Plaintiffs' willingness to shorten the time period for certain requests – in some instances

by four years – even though the Court had already approved the time period set forth in

the original requests as written.

      2.     **Revised Requests to the Republic**

      Plaintiffs' original document request to the Republic included thirty (30)

categories of documents.  The nine (9) requests set forth below substantially reduce the

overall scope of the requests:

(1)    Documents sufficient to identify any accounts, whether custodial, securities, trustee, brokerage, operating or otherwise, regardless of the purpose of the account, maintained anywhere in the world at a bank, investment manager, broker, custodian, agent or any financial institution in the name of Argentina, for which Argentina is a signatory, or which are beneficially held in whole or in part by Argentina, at any time during the Relevant Time Period.

(2)    For all accounts identified in response to Document Request 1, produce for each account:  (a) documents sufficient to identify when the account was opened, the institution and branch where the account is maintained, and (if applicable) when the account was closed; (b) documents sufficient to identify the name on the account and tax identification number, persons authorized to conduct business with respect to the account, type of account, currency, nature and source of funds for the account, reasons why account was opened, and (if applicable) a copy of the loan agreement, financing agreement, donation, or other documentation provided to the Registry of Official Accounts to substantiate the request to open the account; (c) current balance and all property held in each account, and any transfers of property in to or out of each account during the Relevant Time Period; and (d) all account statements for each such account during the Relevant Time Period.

(3)    Documents sufficient to identify any investments that Argentina owns or owned directly or indirectly, in whole or in part, as sole owner or jointly with others, either of record or beneficially (including without limitation as a partner, general or limited, limited liability member, fiduciary, and as an equity or debt holder, or demand deposit holder) during the Relevant Time Period, including but not limited to: (i) securities or security entitlements, (ii) investments in companies, limited liability companies, partnerships, limited partnerships, real estate investment trusts ("REITs"), private equity investments; (iii) interests in investment or other trusts; and (iv) any interest in commodities, minerals, and precious or semi-precious metals or gemstones.

(4)     Documents sufficient to identify any tangible property of any kind located outside of Argentina with a value in excess of $50,000 that Argentina owns or owned directly or indirectly, in whole or in part, as sole owner or jointly with others, either of record or beneficially (including without limitation as a partner, general or limited, limited liability member, fiduciary, and as an equity or debt holder, or demand deposit holder) during the Relevant Time Period, including documents sufficient to identify:  (a) the present location of such property; (b) the date, means and cost of acquisition of such property; and (c) if applicable, the date, means and proceeds of disposition of such property.

(5)     Documents sufficient to identify any real estate located outside of Argentina owned, leased or maintained – whether directly or indirectly, in whole or in part, solely or jointly with others – by or for the benefit of Argentina during the Relevant Time Period, including: (a) documents evidencing the nature of Argentina's interest in such real estate; (b) all leasehold agreements relating to such real estate; (c) documents sufficient to identify any payments or transfers in respect of such real estate; and (d) documents sufficient to identify any loans or financing (including mortgage loans) relating to such real estate.

(6)     Documents sufficient to identify all loans, commercial or standby letters of credit, debt or extension of credit outstanding during the Relevant Time Period: (i) for which Argentina is the applicant, beneficiary, borrower or guarantor or (ii) that was made by Argentina, including as applicable information regarding the purpose of the credit, any collateral, invoices and bills of lading.

(7)     Documents sufficient to identify any contracts (including documents sufficient to identify the terms of the contracts and any payments made pursuant to the contracts) in effect during the Relevant Time Period to which Argentina is a party or of which Argentina is a beneficiary or pursuant to which Argentina has any contractual rights where the total payments pursuant to such contract exceed $100,000 and where (i) any other contractual party is a non-Argentine citizen or entity (or an affiliate thereof), (ii) the contract is, in whole or in part, for goods imported into or exported from Argentina, or (iii) the contract is for services provided in whole or in part outside Argentina.

(8)     All documents concerning any prospective loan, issuance of securities or other form of financing, by or for the benefit of Argentina or pursuant to which any assets or proceeds flow to Argentina or payments are made to, by or for the benefit of Argentina, in which any part of the loan, issuance of securities or other form of financing involves assets or parties located in whole or in part outside of Argentina.

(9)     Documents sufficient to identify any financial transactions during the Relevant Time Period in which Argentina is a participant, counterparty or beneficiary involving foreign exchange, commodities, swaps, options, derivative transactions, forward transactions, repos, reverse repos, structured deposits or precious metals,

16

in which any part of the transaction involves assets or parties located in whole or in party outside of Argentina.

These revised requests all target: (i) the basic categories of assets that one would expect the Republic to have and which might be available for attachment or execution – accounts, investments, tangible property, and real estate, and (ii) transactions that could help Plaintiffs understand Argentina's circulatory system and which might lead to attachment assets – such as contracts, loans, and financings.  Consistent with the Court's guidance, Plaintiffs have structured each request to avoid targeting assets that are located in Argentina.  In certain circumstances, Plaintiffs have also included value thresholds to eliminate assets or transactions that are unlikely to lead to substantial assets for attachment.

These revised requests are also consistent with the information gathering requirements that the Republic faces under its own laws.  For example, the Argentine government keeps track of flows of money on behalf of the Republic – under Argentine law, government expenditures are managed through a Unified Account.  *See* Rapport Decl Ex. E at Art. 80.  The Republic has a database of real estate that it owns – the Agency for the Management of Government Property is in charge of maintaining the National Registry of Estate Property, including information about real estate owned by government.  *See* Rapport Decl. Ex. F.  The Republic has a database of accounts opened on its behalf – the General Treasury maintains a Registry of Official Accounts, which contains information about every account opened by the government (including the bank and branch, account type, currency, officials authorized to make transfers, the nature and origin of the funds, and the reasons for opening the account).  *See* Rapport Decl. Ex. G at Art. 78 § 5.1, 7.2.  The Republic keeps records of all its contracts –the government

maintains a database of all of its suppliers and contracts (including prices), organized by commercial activity and geographic location.  *See* Oficina Nacional de Contrataciones (National Contracting Office), http://www.argentinacompra.gov.ar (last visited May 25, 2013).  And the government is required to prepare on an annual basis an Investment Account, a financial report for the Republic that includes information about public assets and the current status of public debt.  *See* Rapport Decl. Exs. H  § 75(8), E at Art. 91.  If the Argentine government is able to comply with its information gathering obligations under its own laws – and presumably this information is maintained in computer databases – then it should be able to produce the information requested by Plaintiffs' revised requests.

       **3.**      **Revised List of Argentine Entities**

       Plaintiffs have also revised the list of entities included within the definition of "Argentina."  Rapport Decl. Ex. K.  Although the Court has noted that NML's list for the BofA and BNA subpoenas included 225 entities, while Plaintiffs' original list numbered approximately 460, the number of entities should not make a material difference when the search for responsive documents is based in large part on searches of computerized databases, as is the case for most of the requests to the Banks and likely most of the requests to the Republic (which has never offered Plaintiffs any information about its database resources).  Additional entities may mean additional time inputting names into a computer or reviewing search outputs, but in the context of the Republic's more than $1 billion obligation to Plaintiffs, this additional effort is relatively modest and not unreasonable.

       Even if the Court were to consider the differences between Plaintiffs' list and NML's list, the differences are justified.  First, Plaintiffs included roughly 75

18

additional sub-secretaries that are not on the NML list; there is no dispute that sub-secretaries are part of the Republic.  Second, Plaintiffs' list included approximately 100 deconcentrated and decentralized agencies – all of which help carry out government functions or are under government supervision and control.  The Republic and the Banks argue that it would be unduly burdensome to produce information regarding these entities until Plaintiffs have shown that they are the alter ego of the Republic.  There is no requirement that Plaintiffs prove alter ego status – deconcentrated agencies are undisputedly part of the Republic and decentralized agencies may still be responsible for the Republic's obligations even if they are not its alter ego.  Thus, it would be unnecessary and unduly burdensome to require Plaintiffs to prove alter ego status, especially given the relatively minimal cost of adding a few more names to a computer search.  Lastly, Plaintiffs' list included over 100 state-owned corporations, while NML's list has only 40.  Plaintiffs have agreed to remove all state-owned corporations, without prejudice to their renewing requests for information about these entities at a later date.  After making further refinements (for example, to account for entities that have been dissolved or created), Plaintiffs' revised list now totals 393 entities.[2]  *Id.*

Plaintiffs have rejected the suggestion by the Republic and the Banks to remove military and diplomatic entities because assets owned by and transactions entered into by these agencies could never be attached.  *See, e.g.*, Barclays Br. at 16; Citibank Br. at 5 n.8, 14.  That is clearly not correct.  Military and diplomatic departments and

---

[2] The Republic and the Banks should also include searches for assets of Argentina's current president, Cristina Fernández de Kirchner, and her late husband, former president Néstor Carlos Kirchner.  The Court has already directed BofA and BNA to include the Kirchners in responding to the NML subpoenas.  *See NML*, 2013 WL 491522, at *2 (February 8 Opinion); *EM Ltd.*, 695 F.3d at 204.

agencies may engage in commercial transactions and own commercial assets that would otherwise be subject to attachment and execution.  To the extent that the law may protect certain military or diplomatic property, such exceptions are not categorical based solely upon which agency owns property.  Rather, the analysis turns on a showing of the particular use and circumstances surrounding the property.

> For example, under U.S. law, the FSIA only confers immunity upon property that "is, or is intended to be, used in connection with a military activity and (A) is of a military character, or (B) is under the control of a military authority or defense agency."  28 U.S.C. § 1611(b)(2).  The sovereign bears the burden of showing at least *some* factual evidence of military usage – conclusory assertions that certain property will be used "in connection with military activities" and "not for any non-military use" are insufficient.  *See Behring Int'l, Inc. v. Imperial Iranian Air Force,* 475 F. Supp. 396, 407-08 & 408 n.16 (D.N.J. 1973); *see also All Am. Trading Corp. v. Cuartel General Fuerza Aerea Guardia Nacional De Nicaragua*, 818 F. Supp. 1552, 1555 (S.D. Fla. 1993) ("the property is immune only if its present or future use is military; however, if it is surplus equipment or is withdrawn from military use, it would not be immune").  By the same token, assets held by a diplomatic agency are not automatically immune either.  *See Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 2011 WL 4111504, at *4 (S.D.N.Y. Sept. 13, 2011) (citations omitted) ("mere fact that assets are held in an account used by a state's embassy does not *per se* render the entire account immune from attachment or discovery").

> In other words, like other immunity determinations, military and diplomatic immunity is a fact-specific determination, not a categorical exemption – and

certainly not one to be made at the discovery stage.  And even if property were ultimately immune under United States law, it may not be immune under the law of another jurisdiction where the property is found, as this Court has already recognized.  *See* Finkelstein Decl. Ex. 84 at 44 ("[L]et's suppose there is a purchase, a large purchase of equipment in Germany for something to be used by the Argentine army or Navy, it could very well be any assets connected with that contract could be attached under German law. . . . [A]t least we could get the information here, and certainly any borrowing, any bond issue, anything that would produce assets flowing to Argentina would be subject to attachment potentially.").  Thus, there is no basis for excluding information about military and diplomatic agencies from Plaintiffs' discovery requests.

## II.

## NONE OF THE BANKS' OTHER OBJECTIONS HAVE MERIT

### A.     The Banks Have Possession, Custody, and Control Over <u>Documents Held by Other Members of Their Corporate Families</u>

Plaintiffs served a subpoena on the parent entity at the top of each of the corporate banking families from which it sought discovery.  Each of these parent corporations is subject to personal jurisdiction before this Court.  Each entity oversees large, sophisticated corporate structures, and their own public statements tout the world-wide integration of their various subsidiaries and affiliates and their ability to communicate and operate seamlessly across their corporate families.  Finkelstein Decl. Exs. 87-92.  Barclays and Deutsche Bank nonetheless argue that they should not be required to produce documents held by other members of their corporate families. Barclays Br. at 17-20; Deutsche Bank Br. at 10-11.

21

Courts often require corporations to produce documents and information held by affiliates.  The issue is whether the corporation has a "the legal right, authority, or practical ability to obtain the materials sought upon demand."  *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000) (citations omitted).  The key factor is whether the corporate entity that is the subject of the subpoena "has the ability in the ordinary course of business to obtain documents held by another corporate entity."  *Id.* at 472 (citations omitted).

None of the Banks – including Barclays and Deutsche Bank – deny that they have the ability in the ordinary course of business to obtain the requested information from their corporate affiliates.  And it would be surprising to hear that they lacked such ability.  If the CEO of Deutsche Bank or Barclays wants information from any of his company's subsidiaries about customer accounts, relationships or the like, it is hard to believe that his request would be denied.

The silence of Barclays and Deutsche Bank in the face of this common sense reality is what makes them fundamentally different from the corporations at issue in the cases they rely upon.  In each of cases cited by Barclays and Deutsche Bank, the subpoenaed corporations submitted information explaining why they could not obtain the requested information from their affiliates.  *See In re Vivendi Universal, S.A. Secs. Litig.*, 2009 WL 8588405, at *1-2 (S.D.N.Y. Jul. 10, 2009) (declaration demonstrating why subpoenaed entity did not have ability to obtain requested documents in ordinary course of business); *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 141-42 (E.D.N.Y. 2009) (sworn statements explaining why subpoenaed entity did not have access in regular course of business to requested documents held by its corporate parent, entities did not share

22

confidential information concerning customers or transactions, and subsidiary would not expect parent to provide documents about customer if needed for subsidiary to defend itself); *see also Honda Lease Trust v. Middlesex Mut. Assur. Co.*, 2008 WL 3285242, at *2 n.3 (D. Conn. Aug. 7, 2008) (affidavit stating that requested documents were in possession of company not directly related to party); *Credit Bancorp*, 194 F.R.D. at 472-73 (subpoenaed entity represented that it was not able to acquire certain relevant customer information from its sister corporation).

Neither Barclays nor Deutsche Bank have provided any declaration disclaiming their ability to obtain responsive documents from their affiliates.  Indeed, Plaintiffs repeatedly asked the Banks for such information during the meet and confer process.  *See, e.g.*, Finkelstein Decl. Exs. 44, 50, 56, 59, 72.  None of the Banks responded.  Accordingly, there is no basis for Barclays and Deutsche Bank to now claim that the affiliates they trumpet as part of their operations offering services throughout the world cannot work together to produce the information sought by Plaintiffs.

**B.**     **The Separate Entity Rule Is Irrelevant for Discovery Purposes**

The arguments by Citibank and Deutsche Bank that the "Separate Entity Rule" bars discovery from their overseas branches suffer from a simple, yet critical, misunderstanding of the rule itself.  The rule applies, if at all, to attachment, not to discovery.  *See Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010) ("Separate Entity Rule" provides that each bank branch must be treated as separate entity "for attachment purposes"); *Gucci Am. Inc. v. Li*, 2011 WL 6156936, at *4 n.6 (S.D.N.Y. Aug. 23, 2011) ("The separate entity rule . . . applies only for attachment purposes.") (citation omitted); *Global Tech., Inc. v. Royal Bank of Canada*, 2012 WL 89823, at *13 n.12 (N.Y. Sup. Ct. Jan. 11, 2012) ("Separate Entity Rule" does not apply to judgment

2830682.1

enforcement discovery).  Thus, the cases cited by Citibank and Deutsche Bank that discuss the "Separate Entity Rule" in the context of attachments, not discovery, are inapposite.  *See*, *e.g.*, *Shaheen Sports, Inc. v. Asia Ins. Co.*, Ltd., 2012 WL 919664 (S.D.N.Y. Mar. 14, 2012) (attachment) and *Samsun Logix Corp. v. Bank of China*, 2011 WL 1844061 (N.Y. Sup. Ct. May 12, 2011) (attachment).

   Under New York law, a subpoena *duces tecum* served on a corporation doing business or licensed to do business in New York reaches all responsive materials within the corporation's control, even if those materials are located outside New York.  In 2006, the Legislature amended CPLR 5224, which governs subpoenas, to add a new subdivision – CPLR 5224(a)(1) – providing that a person served with a subpoena *duces tecum* in New York, or a business entity doing business, licensed, or otherwise qualified to do business in New York, is subject to full disclosure permitted under CPLR 5223. *Global Tech*, 2012 WL 89823, at *13 n.12.  "The person served is also required to produce materials in that person's custody, possession or control for review by the judgment creditor, irrespective of whether the materials are inside or outside the State of New York."  *Id.*  As the New York Court of Appeals has made clear, New York law "expressly allows the securing of out-of-state materials by in-state service of a subpoena on the party in control of the materials."  *Koehler v. Bank of Bermuda. Ltd.*, 12 N.Y.3d 533, 539 (2009).

   Accordingly, the "Separate Entity Rule" does not bar discovery of documents from overseas branches of banks subject to personal jurisdiction in New York. In *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234 (S.D.N.Y. 2011), the Bank of India attempted to invoke the "Separate Entity Rule" to avoid production of documents

2830682.1

maintained at bank branches outside New York.  Judge Hellerstein rejected the argument,

holding that "Bank of India's subpoena responses must account for information and

materials available from branches outside New York."  *Id.* at 239.  *See also*

*Intercontinental Credit Corp. Div. of Pan Am. Trade Dev. Corp. v. Roth*, 578 N.Y.S.2d

955, 956-59 (N.Y. Sup. Ct. 1990), *vacated on other grounds*, 595 N.Y.S.2d 602 (N.Y.

Sup. Ct. 1991) (ordering production from overseas branches); *Motorola Credit Corp. v.*

*Uzan*, 288 F. Supp. 2d 558, 560-62 (S.D.N.Y. 2003) (permitting discovery from overseas

branches).  Indeed, this Court has already ordered Citibank to produce documents and

information located at any Citibank branch or affiliate located anywhere in the world,

including Citibank's Argentina branch.  Finkelstein Decl. Ex. 76 at 4.

   Citibank and Deutsche Bank both rely on *Ayyash v. Koleilat*, 957

N.Y.S.2d 574 (N.Y. Sup. Ct. 2012).  There, a New York State court exercised its

discretion to deny a motion seeking to compel compliance with subpoenas served on

three foreign-based banks, relying in part on the "Separate Entity Rule."  The court held

that, because "attachments" of assets held at the bank would be "unavailable in this

jurisdiction," permitting the requested discovery "would be an unproductive waste of

judicial resources."  *Id.* at 582.  The *Ayyash* court also based its decision on "the absence

of any connection of the parties, the underlying controversy, or any res in New York,"

and noted that the plaintiff was "attempting to use the New York courts as a springboard

for a massive, multi-jurisdictional international exercise in supplementary proceedings."

*Id.* at 581-82.  The circumstances here could not be more different.  New York has a

strong connection to the parties and underlying controversy – the contract on which

Plaintiffs sue is governed by New York law and Argentina has submitted to jurisdiction

in New York.  Moreover, this Court has stated on multiple occasions that that it will

function as a "clearinghouse" for discovery related to Argentina's assets, including its

assets located in foreign countries.  Finkelstein Decl. Ex. 78 at 33-34; Ex. 79 at 13-14;

Rapport Decl. Ex. D at 7.

        The *Ayyash* case is currently on appeal to the Appellate Division, First

Department, and its analysis with respect to the "Separate Entity Rule" is not only at odds

with other decisions that have addressed the issue, but also at odds with the Second

Circuit's rulings regarding the scope of discovery available under the Federal Rules of

Civil Procedure.  In *EM Ltd.,* the Second Circuit held that district courts are "within

[their] discretion to order the discovery from third-party banks about the judgment

debtor's assets located outside the United States[,]" and that "the district court's power to

order discovery to enforce its judgment does not derive from its ultimate ability to attach

the property in question but from its power to conduct supplementary proceedings,

involving persons indisputably within its jurisdiction, to enforce valid judgments."  695

F.3d at 208; *see also Koehler v. Bank of Bermuda, Ltd.*, 2003 WL 289640, at *9

(S.D.N.Y. Feb. 11, 2003) (state court opinions regarding the "Separate Entity Rule" are

not binding on a federal court's interpretation of Federal Rule of Civil Procedure 34).

Accordingly, Citibank and Deutsche Bank's arguments based on the "Separate Entity

Rule" should be rejected.

C.      **Plaintiffs Are Not Required To Proceed Pursuant to the Hague Convention**

Citibank argues that Plaintiffs must proceed, in the first instance, under the Hague Convention on the Taking of Evidence in Civil and Commercial Matters.[3]  As a preliminary matter – and as Citibank well knows – this Court has already directed Citibank to produce documents located outside the United States, including documents located at Citibank's Argentina branch, without resort to the Hague Convention.  *See, e.g.*, Finkelstein Decl. Ex. 76 at 4 ("Citibank is ordered to . . . search[] for and produc[e] all responsive documents or information at any Citibank branch or affiliate located anywhere inside or outside the United States, including Argentina . . . .").

In all events, the United States Supreme Court has explicitly rejected the argument that parties seeking documents and information held abroad must first resort to the Hague Convention before initiating discovery procedures under the Federal Rules of Civil Procedure.  *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 539-545 (1987).  Moreover, the Second Circuit has specifically declined to "adopt a rule mandating primary resort to the Hague Convention as the means of obtaining discovery" from a non-party.  *See First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21-23 (2d Cir. 1998).  Accordingly, there is simply no basis to require that Plaintiffs proceed by the Hague Convention, when Citibank – headquartered in New York City – is subject to the personal jurisdiction of this Court.

---

[3] 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 23, reproduced in 28 U.S.C. following § 1781.

2830682.1

**D.**   **Foreign Law Does Not Bar Compliance with the Bank Subpoenas**

In a thorough opinion in the *NML* actions dated February 8, 2013, this Court methodically considered and rejected the objections by BNA based upon the laws of Argentina, Spain, Brazil, Bolivia, the Cayman Islands, Chile, Panama, Paraguay and Uruguay.  2013 WL 491522, at *3-9 (February 8 Opinion).  This Court's decision in *NML* not only disposes of the foreign law objections BNA makes here, but also makes clear that none of the Banks' foreign law objections have merit.

In the *NML* action, the Court first concluded that BNA failed to "satisfy its burden of demonstrating that foreign laws prohibit the required discovery" because in each country (with the exception of Uruguay) the relevant statutory scheme permitted the discovery when pursuant to a valid court order, including an order of this Court.  *Id.* at *3.  The Court then went through the multiple-factor test outlined in the RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442(1)(c) and *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987), in order to determine whether, even if the foreign laws prohibited the discovery, the Court could nonetheless require production.  *NML*, 2013 WL 491522, at *9-12 (February 8 Opinion).  The Court analyzed each of the Restatement factors:

- Importance to the Litigation:  The Court noted that "information regarding a party's assets for purposes of enforcing a judgment is crucial and the importance weighs in favor of compelling disclosure."  *Id.* at *10.

- Specificity of the Request:  The Court found that the NML subpoena was "tailored to identifying assets to satisfy a judgment" and thus, was "sufficiently specific."  *Id.*

- Location of Information:  The Court observed that the fact that the information at issue is located in a foreign country "is not determinative."  *Id.*

28

- <u>Availability of Alternative Means of Securing the Information</u>: Although BNA made "conclusory" assertions about the availability of discovery in foreign jurisdictions, the Court concluded it was not clear that local law would always permit the discovery and even it did, plaintiff would have to file an action, hire local counsel, and possibly incur significant costs and logistical concerns, "and with no clear likelihood of success" – all of which meant that the information was not "easily obtained" through alternative means.  *Id.* at *11.

- <u>Hardship</u>:  BNA provided no evidence that banks "in its position have been fined or prosecuted for disclosing under similar circumstances."  *Id.*

- <u>Good Faith</u>:  BNA acted in bad faith by failing to present its arguments that foreign law prohibited discovery for over a year and half.  *Id.* at *12.

- <u>Balance of National Interests</u>:  The "most important factor" in the analysis, the Court concluded that the "United States' interest in fully and fairly adjudicating the matters before its courts, including enforcing its judgments, outweighs the foreign countries' interest in protecting its banking customers' records."  *Id.* at *10-11.

After weighing the Restatement factors, the Court concluded that compliance with the subpoena was warranted even if it production might violate foreign countries' laws, and overruled BNA's foreign law objections.  *Id.* at *12.  The same analysis applies here – to BNA's foreign law objections, as well as to the foreign law objections raised by the other Banks.

With respect to BNA's foreign law objections, during the meet and confer process BNA provided Plaintiffs with substantively the same declarations that the Court ruled upon in *NML*.  *See* Finkelstein Decl. Ex. 55.  Once motion practice began, BNA submitted slightly different declarations to the Court, but those new declarations do not change the analysis or the result.  *See* Sullivan Decl. Exs. 1-8.  The only difference from BNA's prior declarations is that some of the new declarations include summary

29

statements that the foreign laws at issue are enforced and BNA would supposedly face a risk of sanctions. Such modest changes do not save BNA's objections.

Conclusory assertions are not sufficient to meet BNA's burden to show hardship. Courts require that a party in BNA's position show that it is likely that the foreign law will actually be enforced through examples in which sanctions have actually been imposed – mere speculation about the prospect of sanctions is insufficient. *See Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 808639, at *7 (S.D.N.Y. Mar. 8, 2010) (where party resisting discovery "provided no information that would assist the Court in determining the likelihood that it would be prosecuted for disclosing the requested information, let alone any indication that the maximum penalty would be imposed[,] . . . the Court [could not] conclude that the prospect of significant hardship is anything more than mere speculation"); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 455 (E.D.N.Y. 2008) (ordering production where bank "failed to demonstrate that either [account holders] or the French government would likely seek to prosecute or otherwise sanction Credit Lyonnais for complying with a United States court order compelling disclosure of documents and information regarding [the] accounts"); *British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000) (ordering production even though Mexican law imposed a "financial penalty of up to five percent" of infringing company's paid-in capital because resisting party had not established that it would actually be required to pay substantial fine for type of disclosure sought).

None of BNA's original declarations (the declarations provided to the Court in the *NML* cases, and to Plaintiffs during the meet and confer process here) cited any actual instances of enforcement. In BNA's new batch of declarations (submitted to

30

the Court here), the only example of an actual enforcement occurred in Brazil, but that concerned an employer who had inappropriately released employee information.  *See* Sullivan Decl. Ex. 2.  None of BNA's declarations cite a single instance in which a bank that complied with a lawful court order has been actually prosecuted or subjected to any sanctions.  Accordingly, the Court should reach the same conclusion here that it reached in NML, and overrule BNA's foreign law objections.

The other Banks do not identify any foreign laws that would bar their production of the requested documents.  Certainly, they cannot credibly assert objections based upon the laws which the Court has already ruled do not bar production – Argentina, Spain, Brazil, Bolivia, the Cayman Islands, Chile, Panama, Paraguay and Uruguay.[4] Rather than make specific foreign law objections, the other Banks argue that it would be onerous for them to investigate the laws in all the jurisdictions where they operate or that it is premature for them to say which jurisdictions might be implicated.  *See* BoA Br. at 12-13; Barclays Br. at 20-22; Citibank Br. at 15-22; Deutsche Bank Br. at 16-19.  Neither argument holds water.

First, Plaintiffs never said that the Banks should produce declarations for all of the jurisdictions where they operate.  Plaintiffs asked the Banks to identify the jurisdictions where realistically speaking there are laws that might limit their ability to produce documents.  Second, it is not premature for the Banks to identify the jurisdictions they believe are at issue.  The Banks presumably are familiar with the laws in the jurisdictions where they operate, and while some jurisdictions may have secrecy statutes

---

[4] Indeed, the Court has specifically held, over Citibank's objections, that Argentine law does not bar production.  Finkelstein Dec. Ex. 76 at 3-4.

on the books, as the Court's ruling in *NML* demonstrates, most jurisdictions do not enforce these laws against banks complying with a valid court order. The Banks should be prepared at least to identify the jurisdictions where the likelihood of enforcement is greatest. If they had taken the most minimal steps to identify accounts (even for the subset of entities they find acceptable), the Banks could have made a preliminary determination of the jurisdictions which they believed were at issue.

While the Banks cite to various cases which have limited discovery in light of specific foreign laws, for the most part those cases involve circumstances not present here. *See, e.g.*, *Trade Dev. Bank v. Cont'l Ins. Co.*, 469 F.2d 35, 40-41 (2d Cir. 1972) (information sought "not essential to the issues on trial"); *Tiffany (NJ) LLC v. Forbse*, 2012 WL 1918866, at *6-11 (S.D.N.Y. May 23, 2012) (Hague Convention requests already submitted and recipient country stated it would cooperate; court enforced subpoenas against other entity); *Linde*, 262 F.R.D. at 150 (connection between documents sought and litigation was "attenuated")[5]; *Minpeco*, 116 F.R.D. at 524-25 (Swiss government submitted official statements, and discovery concerned individual non-party customers); *Laker Airways, Ltd. v. Pan Am. World Airways*, 607 F. Supp. 324, 325-27 (S.D.N.Y. 1985) (limited by its terms to controversial antitrust matters); *Richbell Info. Servs., Inc. v. Jupiter Partners L.P.*, 816 N.Y.S.2d 470, 476-78 (1st Dep't 2006) (information sought was not "material or necessary"). Some of the cases cited by the Banks have been called into question by later authorities. *See In re Chase Manhattan*

---

[5] In an earlier decision, however, the court ordered discovery where documents sought by the plaintiffs which were protected by bank secrecy laws were "essential" to their claims. *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 311, 315 (E.D.N.Y. 2006), *aff'd*, 2007 WL 812918 (E.D.N.Y. 2007).

*Bank*, 297 F.2d 611 (2d Cir. 1962) (modern comity analysis not performed; explicitly

called into question by *Minpeco*, 116 F.R.D. at 521); *Ings v. Ferguson*, 282 F.2d 149 (2d

Cir. 1960) (explicitly called into question by *Minpeco*, 116 F.R.D. at 521).

    By contrast, there is a plethora of authority that foreign law will not bar a

bank from complying with a valid discovery order.  *See, e.g., United States v. First Nat'l*

*City Bank*, 396 F.2d 897 (2d Cir. 1968) (German law); *First Nat'l City Bank of New York*

*v. IRS*, 271 F.2d 616 (2d Cir. 1959) (Panamanian law); *Forbse*, 2012 WL 1918866, at \*6-

11 (Chinese law; court noted that subpoena recipient had acted in bad faith and "may

very well possess information" relevant to recovery); *Li*, 2011 WL 6156936 (Chinese

law); *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238 (S.D.N.Y. 2010) (Chinese

law); *Curveal*, 2010 WL 808639 (Malaysian law); *Strauss*, 249 F.R.D. 429 (French law);

*Linde*, 463 F. Supp. 2d 310 (Israeli law); *Fundacion Museo de Arte Contemporaneo de*

*Caracas – Sofia Imber v. CBI-TDB Union Bancaire Privee*, 1996 WL 243431 (S.D.N.Y.

Feb. 9. 1996) (Swiss law); *Adidas (Canada) Ltd. v. SS Seatrain Bennington*, 1984 WL

423 (S.D.N.Y. May 30, 1984) (French law).

    Even if Citibank, Barclays, BofA or Deutsche Bank were to actually

identify specific foreign laws that they contend bar production, the same analysis of the

Restatement factors that the Court has already undertaken with respect to BNA would

likely apply here:

-   <u>Importance to the Litigation</u>:  The Court has already found that information regarding Argentina's assets for purposes of enforcing judgments is crucial and weighs in favor of compelling disclosure. *See NML*, 2013 WL 491522, at \*10 (February 8 Opinion).

-   <u>Specificity of the Request</u>:  Plaintiffs' subpoenas, especially in light of the revisions set forth herein, are – like NML's subpoenas

– unquestionably tailored and specific to identifying assets of the Republic.  *See id.*

- Location of Information:  As the Court has already noted, the fact that the information at issue is located in a foreign country "is not determinative."  *See id.*

- Availability of Alternative Means of Securing the Information:  If Plaintiffs were to proceed through the Hague Convention, as Citibank suggests, Plaintiffs would still have to incur significant costs and logistical issues to hire local counsel and commence actions, "with no clear likelihood of success."  *See id.* at *11.

- Hardship:  Absent concrete examples that banks have actually be sanctioned for complying with the lawful orders of U.S. courts, this factor weighs in favor of production.  *See id.*

- Good Faith:  The recalcitrance of the non-BNA Banks in making any efforts to identify any potentially applicable foreign law after more than a year and half bespeaks bad faith.  *See id.* at *12.

- Balance of National Interests:  The Court has already concluded that the "United States' interest in fully and fairly adjudicating the matters before its courts, including enforcing its judgments, outweighs the foreign countries' interest in protecting its banking customers' records."  *See id.* at *10-11.[6]

Thus, the balance of the Restatement factors would likely still weigh in favor of disclosure regardless of the specific laws that the Banks might try to put forward.

**E.    N.Y. C.P.L.R. § 5224 Does Not Apply to Plaintiffs' Subpoenas *Duces Tecum***

Citibank and Deutsche Bank contend that Plaintiffs have not complied with N.Y. C.P.L.R. § 5224(a)(3)(i) because they did not include a certification required by that provision that Plaintiffs have a "reasonable belief" that the Banks have

---

[6] BNA's and Citibank's reliance on the United States' amicus curiae brief in *Rubin v. Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011), is misplaced.  BNA Br. at 23; Citibank Br. at 20-21.  The issue in *Rubin* was the applicability of the FSIA to discovery regarding a foreign sovereign, not the application of foreign bank privacy law in post-judgment proceedings.  In any event, the Second Circuit explicitly disagreed with *Rubin* in its recent decision in *EM Ltd.*, 695 F.3d at 209.

34

information that will assist Plaintiffs in collecting on their judgments.  To begin with,

§ 5224(a)(3)(i) only concerns "information subpoenas," which under New York law

contain "written questions" (akin to the procedure for depositions by written questions

under Federal Rule of Civil Procedure 31).  Subpoenas *duces tecum* – the discovery

device used by Plaintiffs here – are governed by a different provision, § 5224(a)(2),

which has no certification requirement.  Even if § 5224(a)(3)(i) applied, Plaintiffs

certainly have a "reasonable belief" that the Banks have information that will be helpful

in their collection efforts.  All of the Banks have known relationships with Argentina (a

fact they do not deny) and all are major money center banks that would likely have

information about transfers that involve the Republic.[7]

### F.      Plaintiffs Do Not Need to Wait for the Republic to Respond to the Requests Before Enforcing the Subpoenas Against the Banks

Barclays and Citibank contend that they should not be required to respond

to Plaintiffs' subpoenas until after the Republic has responded to Plaintiffs' discovery

requests.  Barclays Br. at 11; Citibank Br. at 8-9.  The Court is well aware that the

Republic has resisted all efforts to secure the claims and enforce the judgments Plaintiffs

and others have against it, including any requests for discovery that might lead to

attachments or executions.  The Republic has vociferously opposed the requests at issue

here, and has not made any offer to produce responsive documents.  Given the Republic's

extensive history of resistance, it is entirely appropriate for Plaintiffs to seek discovery

---

[7] For example, Citibank, Barclays, Deustche Bank, and BofA (Merrill Lynch & Co.)
acted on behalf of the Republic in connection with its 2005 and 2010 exchange offers,
Rapport Decl. Exs. I-J, and the Republic has had accounts at Citibank. *See Aurelius
Capital Partners, LP v. Rep. of Arg.*, 2010 WL 768874, at *1-2 (S.D.N.Y. Mar. 5, 2010);
Finkelstein Decl. Ex. 76.

from third parties such as the Banks before exhausting their efforts to extract discovery from Argentina.  *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*, 2010 WL 3780275, at *1 (E.D.N.Y. Sept. 22, 2010) (broad discovery directed to twelve third parties – including banks, securities firms, an accounting firm, and family members of the judgment debtor – permitted where defendant-judgment debtor was unwilling to satisfy judgment or provide discovery about his finances).  The Court did not require NML to waste its time pursuing discovery from the Republic before ordering BNA and BofA to respond to NML's subpoena, and there is no reason the Court should impose such a hurdle on Plaintiffs here.

2830682.1

## **CONCLUSION**

For the foregoing reasons and for the reasons set forth in Plaintiffs' opening brief, the Court should compel the Republic and the Banks to produce documents responsive to Plaintiffs' revised requests, and deny the cross-motions of the moving Banks to quash, modify or for a protective order.

Dated:  New York, New York
        May 27, 2013

                                    Respectfully submitted,

                                    FRIEDMAN KAPLAN SEILER &
                                        ADELMAN LLP

                                    /s/ Daniel B. Rapport
                                    _____
                                    Edward A. Friedman
                                    Daniel B. Rapport
                                    Emily A. Stubbs
                                    7 Times Square
                                    New York, NY 10036-6516
                                    (212) 833-1100

                                    *Attorneys for Plaintiffs*

37

2830682.1