UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

AURELIUS CAPITAL PARTNERS, LP and
AURELIUS CAPITAL MASTER, LTD.,

                Plaintiffs,

      v.

THE REPUBLIC OF ARGENTINA,

                Defendant.

No. 07 Civ. 2715 (TPG)

------------------------------------------------------

AURELIUS CAPITAL PARTNERS, LP and
AURELIUS CAPITAL MASTER, LTD.,

                Plaintiffs,

      v.

THE REPUBLIC OF ARGENTINA,

                Defendant.

No. 07 Civ. 11327 (TPG)

------------------------------------------------------

BLUE ANGEL CAPITAL I LLC,

                Plaintiff,

      v.

THE REPUBLIC OF ARGENTINA,

                Defendant.

No. 07 Civ. 2693 (TPG)

------------------------------------------------------x

(*captions continue on the following pages*)

REPLY MEMORANDUM OF LAW OF BARCLAYS BANK PLC
AND BARCLAYS CAPITAL INC. IN SUPPORT OF THEIR
CROSS-MOTION TO QUASH THE SUBPOENAS SERVED ON
BARCLAYS BANK PLC AND BARCLAYS CAPITAL INC.

| | |
|---|---|
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | No. 09 Civ. 8757 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | No. 09 Civ. 10620 (TPG) |
| AURELIUS OPPORTUNITIES FUND II, LLC and AURELIUS CAPITAL MASTER, LTD.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | No. 10 Civ. 1602 (TPG) |

```
─────────────────────────────────────────x
AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.,

                    Plaintiffs,
                                              No. 10 Civ. 3507 (TPG)
         v.

THE REPUBLIC OF ARGENTINA,

                    Defendant.

AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,

                    Plaintiffs,
                                              No. 10 Civ. 3970 (TPG)
         v.

THE REPUBLIC OF ARGENTINA,

                    Defendant.

BLUE ANGEL CAPITAL I LLC,

                    Plaintiff,
                                              No. 10 Civ. 4101 (TPG)
         v.

THE REPUBLIC OF ARGENTINA,

                    Defendant.
─────────────────────────────────────────x
```

| | |
|---|---|
| BLUE ANGEL CAPITAL I LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | No. 10 Civ. 4782 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. and<br>AURELIUS OPPORTUNITIES FUND II, LLC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | No. 10 Civ. 8339 (TPG) |

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I. PLAINTIFFS SHOULD NOT YET BE PERMITTED TO BURDEN THE NON-PARTY BANKS WITH THE SUBPOENAS ............................................................... 2

    A. Plaintiffs State Prematurely That The Republic Will Not Produce Documents .......... 2

    B. The Appellate Proceedings in Related Cases Are Relevant ........................................ 3

II. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO LIMIT THE SCOPE OF THE OVERBROAD AND UNDULY BURDENSOME SUBPOENAS ......... 4

III. PLAINTIFFS HAVE NOT DEMONSTRATED THAT DOCUMENTS HELD BY ENTITIES PURPORTEDLY RELATED TO BARCLAYS ARE IN BARCLAYS' POSSESSION, CUSTODY OR CONTROL ................................................................... 8

IV. PLAINTIFFS DEMAND PREMATURELY THAT THIS COURT REJECT ARGUMENTS BASED ON FOREIGN LAW ................................................................. 9

CONCLUSION ........................................................................................................................ 11

TABLE OF AUTHORITIES

Page

CASES

*Aurelius Capital Partners v. Republic of Argentina*,
No. 07 Civ. 2715, 2013 WL 857730 (S.D.N.Y. Mar. 7, 2013) ...............................................1, 3, 6

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ...................................................................................................5

*DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*,
151 F.3d 75 (2d Cir. 1998)..........................................................................................................10

*DigiProtect USA Corp. v. John/Jane Does 1-240*,
No. 10 Civ. 8760 (PAC), 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) .......................................4

*EM Ltd. v. Republic of Argentina*,
695 F.3d 201 (2d Cir. 2012), *petition for cert. filed*, 81 U.S.L.W. 3394 (U.S. Jan. 7,
2013) (No. 12-842) .......................................................................................................................3

*Evans v. Calise*,
No. 92 Civ 8430 (PKL), 1994 WL 185696 (S.D.N.Y. May 12, 1994)...........................................6

*Linde v. Arab Bank, plc*,
262 F.R.D. (E.D.N.Y. 2009)..........................................................................................................8

*NML Capital, Ltd. v. Republic of Argentina*,
No. C 12–80185 (JSW) (MEJ), 2013 WL 655211 (N.D. Cal. Feb. 21, 2013) ...............................6

*In re Penn Cent. Commercial Paper Litig.*,
61 F.R.D. 453 (S.D.N.Y. 1973) ....................................................................................................2

*Philip Morris Inc. v. Otamedia*,
No. 02 Civ. 7575 (GEL) (KNF), 2004 WL 1348987 (S.D.N.Y. June 15, 2004)............................8

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
9 F. Supp. 2d 300 (S.D.N.Y. 1998) ..............................................................................................6

*Strauss v. Credit Lyonnais, S.A.*,
249 F.R.D. 429 (E.D.N.Y. 2008)..................................................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
No. 02 Civ. 5571 (RJH), 2009 WL 8588405 (S.D.N.Y. July 10, 2009).....................................8, 9

## STATUTES & RULES

Fed. R. Civ. P. 26................................................................................................................3

Fed. R. Civ. P. 45.............................................................................................................2, 4

N.Y. C.P.L.R. 5223..............................................................................................................4

Non-parties Barclays Bank PLC and Barclays Capital Inc. (together, "Barclays") submit this reply memorandum of law in support of their cross-motion to quash (the "Motion to Quash") the subpoenas served on them (the "Subpoenas") by Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, and Blue Angel Capital I LLC's (collectively, "Plaintiffs").[1]

## PRELIMINARY STATEMENT

The Reply Memorandum of Law in Support of Plaintiffs' Motion to Compel Production from Defendant and Non-Party Banks and in Opposition to Certain Non-Party Banks' Cross-Motions to Quash, Modify or For a Protective Order ("Plaintiffs' Reply") proves Barclays' fundamental assertion about the Subpoenas: Plaintiffs have served overbroad and unduly burdensome subpoenas *duces tecum* on non-parties like Barclays because the Republic of Argentina (the "Republic"), thus far, has not provided the same discovery to Plaintiffs in response to Plaintiffs' document requests. This Court's March 7, 2013 opinion concludes that Plaintiffs' subpoenas are not "appropriately tailored," even as directed to the Republic, a party in the litigation. No. 07-2715, 2013 WL 857730, at *3 (S.D.N.Y.). Moreover, various plaintiffs and the Republic are litigating related issues in the appellate courts. The United States Court of Appeals for the Second Circuit or the United States Supreme Court, in the near future, may limit or moot Plaintiffs' discovery efforts. As such, there is no justification for burdening non-party

---

[1] In addition to the Motion to Quash, Plaintiffs' Motion to Compel Production from Defendant and Non-Party Banks (the "Motion to Compel") also is pending before this Court. The Motion to Compel has been opposed by Barclays and by Banco de la Nación Argentina, Bank of America, N.A., Bank of America Corp., Banc of America Securities LLC, Citibank, N.A., Citicorp North America Inc., Citicorp USA Inc., Citigroup Global Markets Inc., Citigroup Inc., Deutsche Bank AG, Deutsche Bank Americas Holding Corp., Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas, Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., and Taunus Corp. (together, with Barclays, the "Non-Party Banks").

Barclays joins the arguments made in the reply memoranda of the Non-Party Banks.

Barclays, at this time, with searches for and potential production of documents relating to 393 entities.

Plaintiffs' eleventh-hour offer in their reply to tailor the Subpoenas does not change the fact that Plaintiffs previously had not offered to narrow the scope of the Subpoenas. From the time that Plaintiffs served the Subpoenas in December 2011 to the time they filed their Motion to Compel, Plaintiffs demanded that Barclays explain the details of its internal operations before considering any modification to the Subpoenas. Now, Plaintiffs propose only minor alterations to the Subpoenas: reducing 45 document requests to five vast document requests, and reducing the 461 entities within the definition of Argentina by only 68, to 393. The Subpoenas, as altered, would still impose a burden on non-parties, like Barclays, that is inconsistent with the Federal Rules of Civil Procedure, the New York Civil Practice Law and Rules, and practice in this Circuit.

The Subpoenas should be quashed in their entirety.

ARGUMENT

I. PLAINTIFFS SHOULD NOT YET BE PERMITTED TO BURDEN THE NON-PARTY BANKS WITH THE SUBPOENAS

    A. Plaintiffs State Prematurely That
   <u>The Republic Will Not Produce Documents</u>

It is indisputable that courts scrutinize more closely subpoenas *duces tecum* to non-parties when the requesting party could obtain those documents from a party in the case. *See In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 467 (S.D.N.Y. 1973); *see also* Fed. R. Civ. P. 45(c)(1). Plaintiffs may yet obtain the documents they seek from the Republic. Indeed, Plaintiffs allege only that the Republic has resisted their discovery efforts, but not that discovery

from the Republic has been foreclosed.² (Plaintiffs' Reply at 35.) The Republic may still be ordered to produce the documents Plaintiffs seek from Barclays. And in the unlikely event that Plaintiffs are entitled to documents retained by Barclays and not by the Republic, Plaintiffs may seek those documents in the future. *See generally* Fed. R. Civ. P. 26(b)(1)(C)(i).

It would be improper, and inefficient, to allow Plaintiffs to simultaneously seek the same discovery from the Republic and the Non-Party Banks. The fact that the Republic is exercising its rights to challenge the document requests it received, and that the appellate process regarding the proper scope of discovery under the Foreign Sovereign Immunities Act is ongoing, does not permit Plaintiffs to burden non-parties now with overbroad and burdensome discovery requests. The Subpoenas to Barclays are premature.

B.   The Appellate Proceedings in Related Cases Are Relevant

Plaintiffs ignore the appellate proceedings in related cases, the resolutions of which are likely to have a direct impact on (i) the ability of Plaintiffs to enforce the Subpoenas or (ii) at a minimum, the Subpoenas' scope. Currently pending before the Supreme Court is the Republic's petition for a writ of *certiorari* in *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012), *petition for cert. filed*, 81 U.S.L.W. 3394 (U.S. Jan. 7, 2013) (No. 12-842).³ In that case, the Republic has asked the Court to consider whether the type of discovery sought by those plaintiffs is permitted by the Foreign Sovereign Immunities Act. On April 15, 2013, the Court invited the Solicitor General to file a brief expressing the views of the United States.

---

² Plaintiffs' discovery efforts as against the Republic are ongoing. As a result of this Court's March 7, 2013 opinion requiring a hearing regarding the scope of the document requests and the definition of "Argentina", *see* 2013 WL 857730, at *4, Plaintiffs' Reply proposes modifications to the document requests to each of the Republic and the Non-Party Banks. (Plaintiffs' Reply at 15-17, 13-14, respectively.)

³ While the subpoenas at issue in the Republic's petition for a writ of *certiorari* are not identical to those at issue here, they are similar in terms of content and scope.

3

In addition, the Second Circuit is considering a payment proposal advanced by the Republic that could affect Plaintiffs' collection efforts. *See NML Capital, Inc. v. Republic of Argentina*, No. 12-105-27(L). Depending on the Second Circuit's decision as to how and when payments shall be made and the Republic's actions in response, Plaintiffs' discovery requests could be mooted. *Cf.* C.P.L.R. 5223 (limiting post-judgment discovery to "all matter[s] relevant to the satisfaction of the judgment").

These pending appellate proceedings further demonstrate that Plaintiffs prematurely are burdening non-parties like Barclays with the Subpoenas.

## II.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO LIMIT THE SCOPE OF THE OVERBROAD AND UNDULY BURDENSOME SUBPOENAS

As Barclays explained in its Motion to Quash, Plaintiffs' subpoenas impose an unreasonable burden on Barclays and the other Non-Party Banks. (Motion to Quash at 12-17.) Plaintiffs' belated offer, *in their reply* on their Motion to Compel, to tailor their subpoenas to the Non-Party Banks does not meaningfully diminish that burden, nor does it demonstrate that Plaintiffs have engaged in good faith discussions with Barclays regarding the Subpoenas.

In their reply, Plaintiffs contend that the overbroad subpoenas are "appropriate" in light of the Republic's "extensive history of resistance" with respect to its discovery obligations, as well as, apparently, the Republic's continued litigation of this case. (Plaintiffs' Reply at 35-36.) But the obligation to serve reasonable discovery – especially on non-parties – lies entirely with Plaintiffs. *See* Fed. R. Civ. P. 45(c)(1) (plaintiffs must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *see DigiProtect USA Corp. v. John/Jane Does 1-240*, No. 10 Civ. 8760 (PAC), 2011 WL 4444666, at *4 (S.D.N.Y. Sept. 26, 2011) ("Courts are especially sensitive to the burdens placed on nonparties.").

Plaintiffs may not burden Barclays simply because the Republic is successfully challenging their discovery requests or efforts to enforce their judgments.

Plaintiffs' supposed "willing[ness] to engage in good faith discussions with the Banks and Republic regarding the scope of the requests" (Plaintiffs' Reply at 11) is not evident in the history of the discussions between Plaintiffs and Barclays.  As Barclays explained in its Motion to Quash, Plaintiffs have steadfastly sought to shift to Barclays the burden of narrowing the overbroad Subpoenas. (Motion to Quash at 8-11.)  Rather than engaging in good faith discussions and proposing reasonable alternatives, Plaintiffs instead have demanded that Barclays respond to intrusive enquiries regarding internal operations.  (*Id.* at 9.)[4]

The strategy adopted by Plaintiffs is contrary to the Federal Rules of Civil Procedure.  If Plaintiffs "wish to obtain information from [a non-party] regarding [the Republic's assets], it is for plaintiffs . . . to redraft the subpoena so that *all* of its provisions state precisely and specifically the documents plaintiffs seek." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 54 (S.D.N.Y. 1996) (emphasis in original) (quashing, rather than attempting to modify, "vague, inexplicit, and overbroad" subpoena).  It is neither the burden of non-parties like Barclays, who have no stake in the outcome of this litigation, nor the burden of this Court to craft an appropriately narrow set of document requests.

Plaintiffs' latest attempt to tailor the Subpoenas does not restrict their sweeping scope.  After refusing to engage in meaningful discussions with Barclays to tailor the Subpoenas, and after filing the Motion to Compel, Plaintiffs finally offer to reduce their 45 document

---

[4] Plaintiffs also have ignored Barclays' efforts to provide certain responses to the Subpoenas.  For example, Barclays ran searches for U.S. dollar account information using the term "Republic of Argentina." Plaintiffs were informed that there was no responsive information.  *See* Decl. of Solomon Kibriye in Support of Barclays Bank PLC and Barclays Capital Inc.'s Mem. of Law in Opp'n to Pl.'s Mot. To Compel Produc. from Def. and Non-Party Banks, and in Supp. of Their Cross-Mot. To Quash the Subpoenas Served on Barclays Bank PLC and Barclays Capital Inc. ("Kibriye Decl.") ¶¶ 8, 10.  Barclays also explained to Plaintiffs the challenges in responding to Plaintiffs' discovery demands as currently drafted.  *See* Kibriye Decl. ¶ 9.

requests, plus subparts, to five vast requests (Plaintiffs' Reply at 13-14), and to reduce the list of entities covered by the definition of "Argentina" by only 68, from "approximately 460" to 393 (Plaintiffs' Reply at 18-19).[5] These are hollow and temporary concessions,[6] offered by Plaintiffs only because this Court noted in its March 7, 2013 opinion that a hearing would be needed to tailor appropriately the subpoenas, *see* 2013 WL 857730, at \*4.

Even with the reduced list, the entity names that Barclays would be required to investigate, after taking into account English, Spanish, and abbreviation alternatives, numbers almost one thousand.[7] Plaintiffs also continue to seek documents concerning all property and a vast array of financial transactions relating in any way to the Republic for periods of time ranging from approximately six months to two years and six months.

One request seeks potentially non-public information regarding *prospective* transactions that have no relevance to Plaintiffs' efforts to identify the Republic's attachable assets, and, therefore, is inappropriate.[8] *See Evans v. Calise*, No. 92 Civ. 8430 (PKL), 1994 WL

---

[5] Plaintiffs also seek documents concerning the assets of the Republic's President Cristina Fernández de Kirchner and her late husband, President Néstor Carlos Kirchner. (Plaintiffs' Reply at 19 n.2.)

[6] Plaintiffs conditionally offer to reduce the list of entities covered by the definition of "Argentina" "without prejudice to their renewing their request for information about [all state-owned corporations] at a later date." (Plaintiffs' Reply at 19.)

[7] The definition of Argentina, even as modified in Plaintiffs' Reply, is alone grounds to quash the Subpoenas. A United States Magistrate Judge sitting in the Northern District of California recently rejected an attempt to define the Republic as including numerous separate entities alleged to be the Republic's *alter egos* in a subpoena to a non-party, because the "presumption [of] corporate independence of government instrumentalities should not be easily defeated." *NML Capital, Ltd. v. Republic of Argentina*, No. C 12-80185 (JSW) (MEJ), 2013 WL 655211, at \*2 (N.D. Cal. Feb. 21, 2013) (quoting *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 9 F. Supp. 2d 300, 305 (S.D.N.Y. 1998)).

[8] Plaintiffs seek from the Non-Party Banks:

> (5) Documents sufficient to identify any communications between [Bank] and Argentina since June 1, 2012 with respect to any prospective loan, issuance of securities or other form of financing by or for the benefit of Argentina or pursuant to which any assets or proceeds would flow to Argentina or payments would be made to, by or for the benefit of Argentina, including but not limited to any proposals concerning such loans, issuances or financings.

(Plaintiffs' Reply at 14.)

6

185696, at *1 (S.D.N.Y. May 12, 1994) ("[discovery] does not allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so" (quotation marks and citations omitted)).

Even assuming information regarding prospective transactions exists, Plaintiffs should be limited to seeking documents regarding completed transactions. This Court has previously rejected the efforts of plaintiffs to obtain discovery concerning prospective transactions. *See Allan Applestein TTEE FBO D.C.A. Grantor Trust v. Province of Buenos Aires*, No. 03 Civ. 6268 (TPG) (S.D.N.Y.), Aug. 18, 2010 Hr'g Tr. at 6:14-22 ("The fact is that the assets you are talking about may come into being, but this isn't a matter of getting discovery about where some assets may be that are hidden or obscured in some way. *There are no such assets now*. How can there be any process? Let's suppose you had discovery, a lot of discovery about what is going to go on in the future and you came back with the results of that discovery. There would be nothing still to attach." (emphasis added)) (attached to the Croffoot-Suede Decl. as Exhibit ("Ex.") A);[9] *see also* Order at 1, *Seijas v. Republic of Argentina*, Nos. 04 Civ. 400 (TPG) & 04 Civ. 401 (TPG) (S.D.N.Y. Oct. 4, 2010) (denying request for an order requiring the Republic to respond to detailed discovery requests concerning any "intention" of the Republic "to issue new bonds in the next twelve months") (attached to the Croffoot-Suede Decl. as Ex. B).[10]

---

[9] The Declaration of Lance Croffoot-Suede in Support of the Reply Memorandum of Law of Barclays Bank PLC and Barclays Capital Inc. in Support of Their Cross-Motion to Quash the Subpoenas Served on Barclays Bank PLC and Barclays Capital Inc. (the "Croffoot-Suede Decl.") is submitted herewith.

[10] In addition, Plaintiffs should not be permitted to use subpoenas to pry into confidential negotiations regarding prospective securities transactions, the disclosure of which could jeopardize the non-public nature of those transactions. *See NML Capital v. Republic of Argentina*, No. 03 Civ. 8845 (TPG), Nov. 4, 2009 Hr'g Tr. at 24:6-13 ("I really don't see that it would be proper for me to order discovery as to what is going on in the negotiations of what is contemplated now by way of terms or mechanics . . . . the Republic does have the right to negotiate, and negotiations are generally confidential and I don't think that the Court should intrude into those negotiations by ordering discovery.") (attached to the Croffoot-Suede Decl. as Ex. C).

7

Plaintiffs should not be permitted to shift the burden of narrowing the Subpoenas to Barclays. The Subpoenas should be quashed in their entirety.

III. PLAINTIFFS HAVE NOT DEMONSTRATED THAT DOCUMENTS HELD BY ENTITIES PURPORTEDLY RELATED TO BARCLAYS ARE IN BARCLAYS' POSSESSION, CUSTODY OR CONTROL

Plaintiffs have not met their burden to demonstrate that the documents located outside the United States that they have requested from entities purportedly related to Barclays Bank PLC and Barclays Capital Inc. are within those entities' possession, custody or control. *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2009 WL 8588405, at *3 (S.D.N.Y. July 10, 2009) (interpreting Rule 45 and observing that "burden of demonstrating . . . practical ability to obtain the documents in issue lies" with Plaintiffs). The Motion to Quash this aspect of the Subpoenas, therefore, should be granted. *See Linde v. Arab Bank, plc*, 262 F.R.D. 136, 142-45 (E.D.N.Y. 2009); *see, e.g.*, *Philip Morris Inc. v. Otamedia*, No. 02 Civ. 7575 (GEL) (KNF), 2004 WL 1348987, at *4 (S.D.N.Y. June 15, 2004).

Plaintiffs must demonstrate that Barclays Bank PLC and Barclays Capital Inc., two distinct legal entities, have custody and control over documents belonging to all of their "branches, representative offices, parents, subsidiaries, affiliates, nominees, divisions or departments, or anyone purporting to act on its behalf individually or collectively (whether or not authorized to do so), including any of its respective officers, directors, employees, agents, attorneys, accountants, advisors, or other representatives, or any predecessor or successor of the foregoing, anywhere in the world." (Pl. Exs. 7 and 8, Subpoenas at 2-3.) Plaintiffs' Reply confirms that their basis for contending that Barclays Bank PLC or Barclays Capital Inc. control the documents of such a broad group of entities and individuals is marketing material contained on a website that is not specific to Barclays Bank PLC or Barclays Capital Inc. (Plaintiffs' Reply at 21, 23.) Plaintiffs' reliance on general claims about "Barclays" (without defining this entity)

8

having an "integrated universal banking model" that operates in numerous countries is insufficient to demonstrate Barclays Bank PLC or Barclays Capital Inc.'s control over documents held by others. *See In re Vivendi*, 2009 WL 8588405, at *2. The statements Plaintiffs highlight merely refer to the existence of entities and customers elsewhere in the world. They do not establish that the two specific Barclays entities served with the Subpoenas in New York by Plaintiffs, have custody or control over the documents of any other entities "anywhere in the world."

## IV. PLAINTIFFS DEMAND PREMATURELY THAT THIS COURT REJECT ARGUMENTS BASED ON FOREIGN LAW

Finally, Barclays maintains its argument that it would be premature for this Court, at this time, to resolve objections based on the application of foreign law, including foreign blocking statutes. (Motion to Quash at 20-22.) While Plaintiffs contend that foreign laws, particularly those laws discussed in briefing by Banco de la Nación Argentina, should not prevent the Non-Party Banks from providing documents located anywhere in the world (Plaintiffs' Reply at 28-34), that issue is not ripe for consideration by this Court.

It is indisputable that foreign laws, such as blocking statutes, can be a meaningful limitation on discovery, notwithstanding Plaintiffs' claim that rulings of this Court "make[ ] clear that none of the Banks' foreign law objections have merit" (Plaintiffs' Reply at 28). Moreover, Plaintiffs ignore that the myriad cases cited by the Non-Party Banks preclude discovery, in whole or in part, because of foreign law. Plaintiffs' offer of generic arguments (Plaintiffs' Reply at 33-34) runs contrary to the highly-detailed and fact-dependent analysis undertaken by courts in this Circuit. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 438-56 (E.D.N.Y. 2008) (outlining seven-part analysis). There is no bright-line rule that a subpoena to a U.S.-located bank in connection with asset collection automatically overcomes foreign law objections.

9

Plaintiffs demand unreasonably that the Non-Party Banks offer detailed foreign law analyses, before this Court has ruled on the scope of the subpoenas in respect of third parties, and before any documents have been identified. The efficient course is to defer consideration of foreign law until and unless implicated.

In sum, as Plaintiffs have been told on several occasions, Barclays has not withheld documents based on foreign law, but rather has objected to production to the extent that production would be prohibited by foreign law. The proper time to resolve that objection is after (i) any such documents are identified in response to appropriately tailored discovery requests and (ii) briefing is submitted that analyzes the relevant foreign law in light of the nature of those particular documents. *See DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 81 (2d Cir. 1998). Plaintiffs' attempt to have this Court prematurely resolve Barclays' foreign law objection should be rejected.[11]

---

[11] For the avoidance of doubt, Barclays maintains all of the objections it has asserted in response to the Subpoenas, many of which (for example, privilege) need only be addressed if and when implicated by searches for documents in response to proper discovery requests.

10

CONCLUSION

For the foregoing reasons, and those stated in the Memorandum of Law of Barclays in Opposition to Plaintiffs' Motion to Compel Production from Defendant and Non-Party Banks, and in Support of Their Cross-Motion to Quash the Subpoenas Served on Barclays Bank PLC and Barclays Capital Inc., Barclays respectfully requests this Court grant the Motion to Quash the Subpoenas in their entirety.

Dated:   New York, New York
         June 21, 2013

                                        Respectfully submitted,

                                        LINKLATERS LLP

                                        By:    /s/ Lance Croffoot-Suede
                                               Lance Croffoot-Suede
                                               (lance.croffoot-suede@linklaters.com)
                                               Titia Holtz
                                               (titia.holtz@linklaters.com)
                                               Sterling P.A. Darling, Jr.
                                               (sterling.darling@linklaters.com)
                                               1345 Avenue of the Americas
                                               New York, New York 10105
                                               (212) 903-9000
                                               (212) 903-9100 (fax)

                                        *Attorneys for Barclays Bank PLC
                                        and Barclays Capital Inc.*