Barry J. Glickman
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

Attorneys for Non-Parties
*Bank of America, N.A., Bank of America Corporation,*
*Banc of America Securities LLC, k/n/a Merrill Lynch, Pierce, Fenner & Smith,*
*Incorporated, as successor by merger, Merrill Lynch & Co., Inc.*
*and Merrill, Lynch, Pierce, Fenner & Smith, Incorporated*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AURELIUS CAPITAL PARTNERS LP, and AURELIUS CAPITAL MASTER, LTD., <br> Plaintiffs, <br> v. <br> THE REPUBLIC OF ARGENTINA, <br> Defendant. | 07 Civ. 2715 (TPG) |
| AURELIUS CAPITAL PARTNERS, LP and AURELIUS CAPITAL MASTER, LTD., <br> Plaintiffs, <br> v. <br> THE REPUBLIC OF ARGENTINA, <br> Defendant. | 07 Civ. 11327 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., <br> Plaintiffs, <br> v. <br> THE REPUBLIC OF ARGENTINA, <br> Defendant. | 09 Civ. 8757 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., <br> Plaintiffs, <br> v. <br> THE REPUBLIC OF ARGENTINA, <br> Defendant. | 09 Civ. 10620 (TPG) <br><br> *(caption continued on following pages)* |

AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.,

        Plaintiffs,

v.

THE REPUBLIC OF ARGENTINA,

        Defendant.

10 Civ. 1602  (TPG)

---

AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.

        Plaintiffs,

v.

THE REPUBLIC OF ARGENTINA,

        Defendant.

10 Civ. 3507 (TPG)

---

AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,

        Plaintiffs,

v.

THE REPUBLIC OF ARGENTINA,

        Defendant.

10 Civ. 3970 (TPG)

---

BLUE ANGEL CAPITAL I LLC,

        Plaintiffs,

v.

THE REPUBLIC OF ARGENTINA,

        Defendant.

10 Civ. 4101 (TPG)

---

BLUE ANGEL CAPITAL I LLC,

        Plaintiffs,

v.

THE REPUBLIC OF ARGENTINA,

        Defendant.

10 Civ. 4782 (TPG)

---

AURELIUS CAPITAL MASTER, LTD., and
AURELIUS OPPORTUNITIES FUND II, LLC,

        Plaintiffs,

v.

THE REPUBLIC OF ARGENTINA,

        Defendant.

10 Civ. 8339 (TPG)

**MEMORANDUM OF LAW OF THE BOFA ENTITIES**
**IN FURTHER SUPPORT OF THEIR MOTION TO QUASH**
**OR MODIFY THE SUBPOENAS SERVED BY PLAINTIFFS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................... 3

POINT I     PLAINTIFFS' ATTEMPT TO IMPOSE
EXTRAORDINARY BURDENS ON THE BOFA
ENTITIES IS UNCHANGED ...................................................... 3

     A.    Plaintiffs Still Refuse to Negotiate in Good Faith ....................... 3

     B.    Plaintiffs' New Requests Are Still Extraordinarily Broad
and Burdensome ......................................................................... 4

     C.    Plaintiffs May Not Utilize the Subpoenas as a Means By
Which to Secure Blunderbuss Worldwide Disclosure ............... 10

CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

<u>In re Vivendi Universal, S.A. Securities Lit.</u>,
    2009 U.S. Dist. Lexis 131833 (S.D.N.Y. July 10, 2009) ........................................10

**REGULATIONS AND STATUTES**

12 C.F.R. §21.11(k) ..............................................................................................................6

31 C.F.R. §1020.320(e) .......................................................................................................6

31 U.S.C. §5318(g) ..............................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1....................................................................................................................9

Fed. R. Civ. P. 45................................................................................................................10

Fed. R. Civ. P. 45(c)(1)....................................................................................................7, 9

Fed. R. Civ. P. 45(c)(3)(iv)..................................................................................................8

The non-party BofA Entities[1] submit this memorandum in further support of their cross-motion to quash or modify Plaintiffs' Subpoenas.

## PRELIMINARY STATEMENT

Since serving the Subpoenas in January 2012 plaintiffs have maintained an uncompromising posture with respect to modifying the scope and breadth of the Subpoenas. Indeed, even after service by the BofA Entities of the Objections in February 2012 plaintiffs have categorically refused to engage in a good faith meet and confer process unless the BofA Entities first capitulated on significant matters of disagreement. During that time, plaintiffs remained steadfast in their refusal to discuss narrowing the scope of their breathtakingly expansive Subpoenas. Indeed, they showed no willingness to compromise their intransigent position that "[i]t is not reasonable for the Banks to suggest that plaintiffs should agree to a compromise proposal at this time." (Ex. B to December 3, 2012 Glickman Decl.). Now, eight months after their motion to compel and six months after the BofA Entities made cross-motions to quash or modify, which motions were adjourned at plaintiffs' request several times, for the first time plaintiffs purport to reconsider this hard line strategy.

Without making any effort to discuss a resolution of the BofA Entities' Objections in advance of doing so, plaintiffs pretend to take a reasonable stance by

---

[1]   Capitalized terms not defined herein are defined in the BofA Entities' Memorandum of Law in Support of their Motion to Quash the Subpoenas Served by Plaintiffs and in Opposition to Plaintiffs' Motion to Compel Discovery dated December 3, 2012. [Dkt. No. 567].

burying on page 13 of their reply brief what they characterize as "revised requests." Without more, plaintiffs recite, as if a mantra, that these requests are "tailored and specific to identifying assets of the Republic" in furtherance of their new-found willingness to "[h]eed[] the Court's guidance to 'tailor' its requests" as required in an opinion of this Court dated March 7, 2013 that was not addressed to the Subpoenas. However, this effort to satisfy this Court by committing to narrow the scope and breadth of the Subpoenas fails miserably.

To highlight the frivolity of plaintiffs' disingenuous position, this Court need not look any further than plaintiffs' own words. For example, in their continuing quest to portray the banks as uncooperative plaintiffs state as follows:

> While it is the case (as noted by the Court) that Plaintiffs' list of Argentine entities is longer than the list used by NML, *Aurelius*, 2013 WL 857730, at *3 (March 7 Opinion), neither the Republic nor the Banks have agreed to use even NML's list in responding to Plaintiffs' requests.

(Reply Memo of Law at P. 6). This is a particularly and remarkably bold and unsupportable proclamation as it concerns the good faith efforts of the BofA Entities. As stated in their motion to quash and opposition to plaintiffs' motion to compel, 21 days before plaintiffs served the Subpoenas BANA complied with the dramatically less onerous NML Subpoena and plaintiffs' Earlier Subpoena and delivered to Aurelius' counsel a CD containing documents responsive to those subpoena. So, for plaintiffs to

complain that the BofA Entities have "not agreed to use even NML's list" strains credulity.

The simple truth is that the profoundly overbroad and unduly burdensome Subpoenas, even as modified, remain extraordinarily improper. The supposedly redrafted requests, now numbering five, largely incorporate the prior 45 requests, but simply use far broader language. In fact, plaintiffs have barely changed their position, while asserting that they made a vast compromise. Actions speak louder than words, and plaintiffs' actions here speak volumes about their actual intent. Plaintiffs have been and remain unwilling to reduce the patent burden on non party targets of their unbridled fishing expedition.

## ARGUMENT

### POINT I

### PLAINTIFFS' ATTEMPT TO IMPOSE EXTRAORDINARY BURDENS ON THE BOFA ENTITIES IS UNCHANGED

**A.    Plaintiffs Still Refuse to Negotiate in Good Faith**

As stated above, faced with the realization that the Court will correctly conclude that they have shown a patent unwillingness to abide by their meet and confer obligations (see December 3, 2012 and June 21, 2013 Glickman Declarations), plaintiffs now purport to have changed course. They have not.

Plaintiffs sought several adjournments of the schedule of these motions. Had they been serious about negotiating the scope of the Subpoenas, they would have contacted the BofA Entities before filing and serving their reply or, if other matters were too pressing, they would at least have contacted the BofA Entities' counsel and set up a time to meet and confer, while jointly seeking a further extension. They did not. (Glickman Decl. ¶ 2). That they announce a willingness to talk, but do not actually contact the relevant parties for that purpose, shows the emptiness of their latest gesture.

More substantively, as discussed in greater detail below, plaintiffs' overture is simply misleading. Their "revised requests" do not substantially reduce the burden on the BofA Entities; they reduce only the number of requests. In addition, plaintiffs continue to refuse to recognize that the BofA Entities are global institutions that ultimately resulted from mergers of many other institutions. It is wishful thinking for plaintiffs to believe that the BofA Entities can type hundreds of search terms into one centralized database and enterprise wide responsive answers to their questions will magically be generated. That proposition is simply false.

**B.      Plaintiffs' New Requests Are Still
         <u>Extraordinarily Broad and Burdensome</u>**

Plaintiffs' unilateral reduction of 45 individual requests (plus sub-parts) in their Subpoenas (each a "Subpoena Request") to five newly proposed requests (each a "New Request") is misleading and disingenuous. It is manifest that these broadly worded New Requests encompass and subsume the lengthier in verbiage Subpoena

Requests.  The Court should see this sharp practice for what it is: an imposition on the Court and on non-parties, and the Court should not condone it.[2]

For instance, in its totality New Request No. 1 seeks production of documents sufficient to identify all property, including accounts, in the name of, or in any part beneficially owned by, Argentina.  Thus, this request subsumes (in whole or in part)[3] Subpoena Requests Nos. 1 (property), 2 (debt owed the Republic), 12 (letters of credit), 13 (loans and collateral), 14, 15, 16, 19, 20, 21, 22, 23, 24, 25, 26, 27 ,28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45.[4]  The myriad of Subpoena Requests that sought documents sufficient to identify property of the Republic did so by identifying an assortment of types of property.  Now, with the façade of reasonableness, plaintiffs discard the detail and seek in one fell swoop documents concerning "all property."  Indeed, perhaps the only reduction in burden in collapsing these Subpoena Requests into New Request No. 1, is the limitation in Request No. 1 that the BofA Entities need only produce documents that identify Argentine property actually

---

[2]  Plaintiffs attempt to belittle the argument that their Subpoenas were burdensome by mischaracterizing the Bank's objections as "complain[ing] about the number" of requests and not to their scope and breadth. (Reply Memo at p. 4).

[3]  The parentheticals comprise only a very brief summary and a representative sampling of Subpoena Requests and is intended to assist the Court in each discussion of the New Requests.  Because of the sheer magnitude of the 45 Subpoena Requests (plus sub-parts), demonstrating one-by-one how each was collapsed into a New Request would be a waste of judicial economy.  We submit that the overlap is patent.

[4]  As plaintiffs' approach to their document requests has changed from the Subpoena Requests to the New Requests, we have made good faith attempt to show how the latter requests are largely still made by the newer requests.  As plaintiffs have made no attempt to negotiate with counsel to the BofA Entities and as the new proposals are not contained in any subpoena, we reserve the right to alter these explanations as necessary.  That said, it is clear that the New Requests are almost as sweeping – and in some respects even more so – than the Subpoena Requests.

maintained by the BofA Entities rather than requiring them to produce documents identifying property maintained by others anywhere in the world, as the Subpoena Requests purported to require. This is hardly a meaningful limitation on the burden to search for documents.

New Request No. 2, and its six sub-parts, request, *inter alia*, detailed documentation about each of the accounts identified in response to New Request No. 1. This request subsumes (in whole or in part) Subpoena Requests Nos. 3 (property transfers), 4 (account opening documentation), 5 (account and customer information), 6, 8, 9, 10, 11, 13, 15, 16, 17, 18, 19, 22, 26, 27, 28, 36, 37, 38, 39, 40, and 41.

New Request No. 2(e) calls for Bank Secrecy Act and Anti-Money Laundering Reports. By this, plaintiffs continue to press for production of documentation that the BofA Entities are absolutely prohibited from disclosing, or even acknowledging the existence of, pursuant to the Bank Secrecy Act, 31 U.S.C. §5318(g), 31 C.F.R. §1020.320(e), and 12 C.F.R. §21.11(k).

New Request No. 3, seeks, *inter alia, all* documents concerning a transfer of monies or "financial instruments" (an undefined term) to, from or through accounts owned or controlled by the Republic, and it specifically calls for the text of communications transmitted through systems such as SWIFT, CHIPS, FEDWire and DTC. This request is no more than a transparent regurgitation of Subpoena Request No. 11, which calls for all SWIFT messages "identifying Argentina." Worse yet, it is far broader. It touches on numerous of the other Subpoena Requests and the searches

purportedly required to comply, such as 1 (accounts), 3 (transfers), 10 (all transactions), 11, 12 (all letter of credit documents), 16, 17, 19, 20, 21, 22, 23, 26, 27, 28, 30, 38, 39, and 41. Surely, plaintiffs and their counsel have this very information on the CD that BANA produced to plaintiffs counsel in compliance with plaintiffs' "me too" subpoena 21 days before plaintiffs served the Subpoenas.

New Request No. 4 seeks, in sum, documents sufficient to identify all financial arrangements to which a BofA Entity and Argentina are a party, participant, counterparty or beneficiary. This request is largely a re-working of, and subsumes in whole or in part, Subpoena Requests Nos. 2, 3, 6, 11, 12, 13 (loans), 14 (debts), 15 (custodian services), 16, 17, 18, 20, 21, 22, 23, 34, 35, 36, 37 ,38, 39, 40, 44, and 45.

In the aggregate New Request No. 5 seeks documents sufficient to identify any communications between a BofA Entity and "Argentina" concerning any prospective loan, issuance of securities or other financing for the benefit of Argentina or pursuant to which any assets or proceeds would flow to Argentina. Aside from being ambiguous as to which terms the word, "prospective" modifies, this request (assuming "prospective" modifies all the substantive terms in the request), would subsume in whole or in part, Subpoena Requests Nos. 12, 17 (all investment banking documents), 22 (loan applications), and 34 (investments).

Rule 45(c)(1) of the Federal Rules of Civil Procedure mandates that a party serving a subpoena must "avoid imposing undue burden or expense." The Rule also requires this Court to enforce that duty. Further, the Rule requires this Court to

quash or modify a subpoena if the subpoena subjects the BofA Entities to undue burden. Fed. R. Civ. P. 45(c)(3)(iv).  The Rules do not allow plaintiffs to avoid their obligations by merely paraphrasing or compressing the verbiage of the Subpoena Requests, therby accomplishing no more than reducing their number from 45 to five to give the false impression of a reduced burden.

Plaintiffs have done little to reduce the central burden on the BofA Entities.  As explained in the BofA Entities' Memorandum of Law in chief, a strict construction of the Subpoenas would require persons with expert knowledge of the inner workings of the Argentine government to manually inspect *each and every business record maintained by each and every BofA Entity everywhere in the world*, and qualitatively determine if unearthed information is responsive.  Nothing about the New Requests changes that burden, with the possible exception of a somewhat narrowed date range.  Tacit in their glaring avoidance of any mention of this in their reply is a concession that the burden imposed by the New Requests does not lessen the onerous task of complying with the Subpoenas.  Instead, plaintiffs reach to the unsupported and unsupportable conclusion that the BofA Entities need only enter search terms in a computerized database.  Again, that is demonstrably not the case for the vast bulk of their requests.

For instance, and by way of example only, the BofA Entities cannot identify all "property" in which the Republic may have an interest without qualitatively reviewing every single business record for some mention of any type potential legal or

equitable interest of the Republic and some mention of any of the vastly broad list of persons comprising "Argentina."   (See New Request No. 1).   Likewise, the BofA Entities cannot be expected to identify all accounts in which a person "may have an interest" when that term is so vague and ambiguous.  In short, even with respect to just accounts, strict compliance with the Subpoena or New Requests would require the manual review of all account opening information to even be in a position to speculate about whether any of the hundreds of persons within the definition of "Argentina" have some beneficial interest in every single account at each BofA Entity that maintains accounts.  It would be unduly oppressive to meet that burden not only for accounts but for every other conceivable type of property that falls within plaintiffs' requests.

Finally, in pursuing disclosure from the Republic plaintiffs represent that the Republic has in its possession databases of assets and accounts in forms that are easy to produce. (Plaintiffs' Reply Memo at pp. 17-18).  Based on this alone, pursuant to Rule 45(c)(1) plaintiffs should first exhaust their remedies as against the Republic before employing the banks as their unpaid collection agents.  This is a pragmatic and sensible way to proceed and comports with the Federal Rules' admonition that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

C.     **Plaintiffs May Not Utilize the Subpoenas as a Means
       By Which to Secure Blunderbuss Worldwide Disclosure**

A subpoena issued pursuant to Rule 45 of the Federal Rules of Civil Procedure may require the production of documents in the witness's "possession, custody, or control."  Although "a document may be within a witness's 'possession, custody, or control' if the witness has the practical ability to obtain the document," it is also true that the "burden of demonstrating that the party from whom discovery is sought has the practical ability to obtain the documents in issue lies with the party seeking discovery." In re Vivendi Universal, S.A. Securities Lit., 2009 U.S. Dist. Lexis 131833, *22-24 (S.D.N.Y. July 10, 2009).

Here, plaintiffs have made no effort to meet this weighty burden and rely on conclusory allegations only.   The Subpoenas are remarkably and intentionally expansive and purport to require production from, among others, parents, subsidiaries, affiliates, nominees, divisions or departments, or anyone purporting to act on [the party's] behalf individually or collectively (whether or not authorized to do so).  (See e.g. Ex. 2 to October 10, 2012 Finkelstein Decl.).  Clearly, they do not even purport to limit their reach to documents that the BofA Entities have a practical ability to obtain. Even worse, plaintiffs improperly try to flip the burden of establishing that the BofA Entities have the practical ability to obtain documents they seek, by asserting that no bank asserted that it did not have the practical ability to obtain documents in the ordinary course of businesses from corporate affiliates. (Plaintiffs' Reply Memo at 22). Plaintiffs have neither identified affiliates from which they seek documents, nor even

attempted to meet their burden of showing custody and control.  That ends the inquiry concerning any obligation to seek documents from any affiliate, and the Court should not tolerate plaintiffs' games.

As a result of the sheer magnitude of possible foreign affiliates from which plaintiffs would purport to seek disclosure and plaintiffs' failure to disclose the jurisdictions from which they seek such disclosure the BofA Entities cannot seek expert opinion concerning  applicable foreign laws that would bar production of documents in possession of some unidentified foreign affiliate.  Affiliates of the BofA Entities do business in more than 40 countries (December 3, 2012 Glickman Decl. ¶11).  The BofA Entities cannot be expected to prophylactically seek dozens of legal opinions concerning an issue that is not ripe for determination.

## CONCLUSION

For all the foregoing reasons as well as those contained in the earlier brief submitted by the BofA Entities, together with the legal arguments advanced by the other banks, we respectfully request that this Court should grant the BofA Entities' cross-motion to quash the Subpoenas in its entirety, deny plaintiffs' motion to compel in its entirety and grant such other relief as this Court deems just and proper.

Dated:   New York, New York
         June 21, 2013

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Barry J. Glickman, Esq.
    Attorneys for Non-parties
    *Bank of America, N.A., Bank of*
    *America Corporation,*
    *Banc of America Securities LLC,*
    *k/n/a Merrill Lynch, Pierce, Fenner*
    *& Smith, Incorporated, as successor*
    *by merger, Merrill Lynch & Co., Inc.*
    *and Merrill, Lynch, Pierce, Fenner*
    *& Smith, Incorporated*
    575 Lexington Avenue
    New York, New York 10022
    (212) 223-0400