UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
AURELIUS CAPITAL PARTNERS, LP                           :
and AURELIUS CAPITAL MASTER, LTD.,                      :
                    Plaintiffs,                         :   No. 07 Civ. 2715 (TPG)
          - against -                                   :   No. 07 Civ. 11327 (TPG)
THE REPUBLIC OF ARGENTINA,                              :
                    Defendant.                          :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
BLUE ANGEL CAPITAL I LLC,                               :
                    Plaintiffs,                         :   No. 07 Civ. 2693 (TPG)
          - against -                                   :   No. 10 Civ. 4101 (TPG)
THE REPUBLIC OF ARGENTINA,                              :   No. 10 Civ. 4782 (TPG)
                    Defendant.                          :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
AURELIUS CAPITAL MASTER, LTD. and                       :
ACP MASTER, LTD.,                                       :
                    Plaintiffs,                         :   No. 09 Civ. 8757 (TPG)
          - against -                                   :   No. 09 Civ. 10620 (TPG)
THE REPUBLIC OF ARGENTINA,                              :
                    Defendant.                          :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
AURELIUS OPPORTUNITIES FUND II, LLC                     :
and AURELIUS CAPITAL MASTER, LTD.,                      :
                    Plaintiffs,                         :   No. 10 Civ. 1602 (TPG)
          - against -                                   :   No. 10 Civ. 3507 (TPG)
THE REPUBLIC OF ARGENTINA,                              :
                    Defendant.                          :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
AURELIUS CAPITAL MASTER, LTD. and                       :
AURELIUS OPPORTUNITIES FUND II, LLC,                    :
                    Plaintiffs,                         :   No. 10 Civ. 3970 (TPG)
          - against -                                   :   No. 10 Civ. 8339 (TPG)
THE REPUBLIC OF ARGENTINA,                              :
                    Defendant.                          :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE CITI ENTITIES'
CROSS-MOTION TO QUASH, MODIFY OR FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.   PLAINTIFFS HAVE FAILED TO TAILOR THEIR DEMANDS ................................... 2

II.  DISCOVERY OFFSHORE SHOULD PROPERLY BE LIMITED BY THE
     SEPARATE ENTITY DOCTRINE AND PROCEED PURSUANT TO THE
     HAGUE CONVENTION ......................................................................................... 5

     A.   The Separate Entity Doctrine Is Available To Protect Offshore Branches
          from Discovery in Violation of Local Law............................................................ 5

     B.   Plaintiffs Should Proceed Under the Hague Convention........................................ 7

CONCLUSION.................................................................................................................. 9

## TABLE OF AUTHORITIES

### CASES

PAGE

*Aurelius Capital Partners v. Republic of Argentina,*
No. 07 Civ. 2715, 2013 WL 857730 (S.D.N.Y. Mar. 7, 2013) ............................................2, 3

*Ayyash v. Koleilat,*
957 N.Y.S.2d 574 (Sup. Ct. N.Y. Cnty. 2012) .........................................................5

*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship,*
No. 12 Civ. 08087, 2013 WL 2661037 (S.D.N.Y. June 12, 2013)............................5

*Eitzen Bulk A/S v. Bank of India,*
827 F. Supp. 2d 234 (S.D.N.Y. 2011)..................................................................6, 7

*EM Ltd. v. Republic of Argentina,*
695 F.3d 201 (2d Cir. 2012), *reh'g denied*, No. 11-4065 (2d Cir. Oct. 10, 2012) ...........2–3, 7

*First Am. Corp. v. Price Waterhouse LLP,*
154 F.3d 16 (2d Cir. 1998)...........................................................................8

*Ings v. Ferguson,*
282 F. 2nd 149 (2nd Cir. 1960).....................................................................6

*Intercontinental Credit Corp. Div. of Pan Am. Trade Dev. Corp. v. Roth,*
578 N.Y.S.2d 955 (Sup. Ct. N.Y. Cnty. 1990), *vacated on other grounds*,
595 N.Y.S.2d 602 (Sup. Ct. N.Y. Cnty. 1991) .........................................................7

*Koehler v. Bank of Bermuda Ltd.,*
12 N.Y.3d 533 (2009) .................................................................................6

*Magnaleasing, Inc. v. Staten Island Mall,*
76 F.R.D. 559 (S.D.N.Y. 1977) ...................................................................3, 4

*Motorola Credit Corp. v. Uzan,*
288 F. Supp. 2d 558 (S.D.N.Y. 2003)................................................................7

*Nat'l Union Fires Ins. Co. v. Advanced Emp't. Concepts, Inc.,*
269 A.D.2d 101 (1st Dep't 2000) .....................................................................6

*NML Capital, Ltd. v. Republic of Argentina,*
No. 03 Civ. 8845, 2013 WL 491522 (S.D.N.Y. Feb. 8, 2013) .................................8

PAGE

*NML Capital, Ltd. v. Republic of Argentina*,
　No. C 12-80185, 2013 WL 655211 (N.D. Cal. Feb. 21, 2013) ........................................... 3–4

*Orlich v. Helm Bros.*,
　160 A.D.2d 135 (1st Dep't 1990) ..............................................................................7

*Schoolcraft v. City of New York*,
　No. 10 Civ. 6005, 2012 WL 2161596 (S.D.N.Y. June 14, 2012)..............................................3

*Shaheen Sports, Inc. v. Asia Ins. Co.*,
　No. 98 Civ. 5951, 2012 WL 919664 (S.D.N.Y. Mar. 14, 2012) ..............................................6

*Tiffany (NJ) LLC v. Forbse*,
　No. 11 Civ. 4976, 2012 WL 1918866 (S.D.N.Y. May 23, 2012)..............................................8

STATUTES & RULES

N.Y. C.P.L.R. 5224(a)(3)(1) ..........................................................................................4

Fed. R. Civ. P. 69(a)(2)..................................................................................................3

iii

The non-party Citi Entities respectfully submit this reply memorandum of law in further support of their cross-motion to quash, modify or for a protective order.[1]

## PRELIMINARY STATEMENT

Despite this Court's admonition that Plaintiffs' requests were "not appropriately tailored," Plaintiffs have persisted in their effort to impose an unprecedented burden of worldwide discovery on the non-party Citi Entities.  Belying any alleged urgency, Plaintiffs adjourned the Citi Entities' motion to quash, modify or for a protective order on several occasions and over several months, and failed to address in a meaningful way the Citi Entities' offer to provide current and focused information of a highly practical nature regarding the Republic's "financial circulatory system"—wire transfer information that Plaintiffs themselves claim would permit them to "follow the money."[2]  Plaintiffs have attempted to issue—in their reply brief—new and amended Subpoenas, but still have not "appropriately tailored" their requests.  Instead, their new demands simply recast the requests made in their already discredited Subpoenas—and therefore suffer from the same defects.  The Court should grant the Citi Entities' cross-motion to quash or modify the Subpoenas, or for a protective order, and should deny Plaintiffs' motion to compel.

---

[1] Defined terms used herein have the same meaning as they do in the Memorandum of Law in Support of the Citi Entities' Cross-Motion to Quash, Modify or for a Protective Order and in Opposition to Plaintiffs' Motion to Compel Production, filed November 7, 2012 ("Citi Mem.").

[2] Citibank offered to search its wire transfer database in order to identify and produce information concerning transfers of funds made over a three-month period to and from offshore accounts by 94 of the entities listed in Plaintiffs' Subpoenas that appeared to be integral parts of the Argentine government. (Kerr Declaration, dated Nov. 7, 2012, Ex. A.)  Reasons were provided for excluding various categories of entities, such as those separately incorporated, as well as for limiting the period to be covered by the search. This was not a take-it-or-leave-it offer, but Plaintiffs did not respond to it until they filed their reply brief, and even then did not address the reasons given by the Citi Entities for limiting the search. The Citi Entities remain convinced that the search they have proposed is a reasonable one, and one that will reduce in a practical and meaningful way the number of foreign jurisdictions implicated.  In addition, the Citi Entities remain willing to meet with Plaintiffs in an attempt to achieve some sort of compromise.

**ARGUMENT**

**I.     PLAINTIFFS HAVE FAILED TO TAILOR THEIR DEMANDS**

This Court ruled earlier this year that Plaintiffs' Subpoenas are "not appropriately tailored." *Aurelius Capital Partners v. Republic of Argentina*, No. 07 Civ. 2715, 2013 WL 857730, at *3 (S.D.N.Y. Mar. 7, 2013) (the "March 7 Opinion").  Plaintiffs apparently intend to withdraw and replace their original defective Subpoenas through the mechanism of their reply brief.  (*See* Pls. Reply[3] at 13–15.)  Rather than refining or tailoring their hugely burdensome demands, however, Plaintiffs continue to seek worldwide discovery for which there is no precedent, particularly when sought from a non-party.

While Plaintiffs seek to modify their definition of "Argentina" to include 395 entities and individuals (Pls. Reply at 19 & n.2),[4] this exceedingly modest reduction from the 461 entities Plaintiffs included in their original Subpoenas exceeds by a significant margin the 225 entities listed in the *NML* subpoena previously before this Court, a subpoena found by the Court to contain requests that were overbroad and enforceable only to the extent that they were "narrow[ed] . . . to eliminate entities that, realistically, where there could be nothing productive gained," (Pls. Ex. 83 at 44:6–8), and "narrow[ed] . . . to reduce the burden on the Bank of America" (*id*. at 45:10–11).[5]  *See*

---

[3] "Pls. Reply" refers to Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion to Compel Production from Defendant and Non-Party Banks and in Opposition to Certain Non-Party Banks' Cross-Motions to Quash, Modify or for a Protective Order, filed May 27, 2013.

[4] Once the English translations and acronyms are considered, Plaintiffs' revised list actually includes 905 names.  (*See* Declaration of Daniel B. Rapport, dated May 27, 2013, Ex. K.)  Plaintiffs also purport to have reserved the right to request information regarding more than 100 additional entities at a later date.  (*See* Pls. Reply at 19.)

[5] Plaintiffs once again suggest that the Second Circuit approved the scope of the NML subpoenas.  (*See* Pls. Reply at 5.)  As Plaintiffs well know, it did not.  When the Second Circuit affirmed the Court's (….continued)

*also* March 7 Opinion at *3 (explaining that "this [C]ourt determined . . . that [the *NML*

plaintiffs] would need to agree to narrow the scope of the subpoena," and recognizing

that the Subpoenas in this case are broader than the subpoena in *NML*).

Plaintiffs make no effort to explain why each of the separately incorporated

entities included in their definition of Argentina should not be accorded a presumption of

independent status, asserting without support that it would be "unduly burdensome to

require [them] to prove alter ego status." (Pls. Reply at 19.) They take this position even

though, as "the party issuing the subpoena," they bear the burden of "demonstrat[ing] that

the information sought is relevant and material." *Schoolcraft v. City of New York*, No. 10

Civ. 6005, 2012 WL 2161596, at *2 (S.D.N.Y. June 14, 2012).[6]

But discovery into the financial records of the many separately incorporated

Argentine entities is permissible under Federal Rule of Civil Procedure 69(a)(2) only to

the extent that such non-parties possess "'concealed or fraudulently transferred assets' of

the judgment debtor." *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561

(S.D.N.Y. 1977). Plaintiffs' failure to provide any such evidence, or proof of *alter ego*

status, undermines their argument for discovery concerning those entities. *See, e.g.*, *NML*

*Capital, Ltd. v. Republic of Argentina*, No. C 12-80185, 2013 WL 655211, at *1–2 (N.D.

Cal. Feb. 21, 2013) (denying motion to compel where plaintiffs failed to provide the

court with any "factual basis to conclude that [an entity] is so extensively controlled by

---

(continued….)
holding regarding the sovereign immunity implications of the NML subpoenas, it unambiguously stated
that it was *not* addressing "the parameters of the document requests." *EM Ltd. v. Republic of Argentina*,
695 F.3d 201, 206 n.5 (2d Cir. 2012), *reh'g denied*, No. 11-4065 (2d Cir. Oct. 10, 2012); (*see also* Citi
Mem. at 12–13).

[6] Plaintiffs cite *Schoolcraft* in their reply brief (*see* Pls. Reply at 7), but they misstate its holding as
to who bears the initial burden:  it is Plaintiffs, not the Citi Entities. *Schoolcraft*, 2012 WL 2161596, at *2.

the Republic" as to justify discovery and noting that "[d]uly created instrumentalities of a foreign state are to be accorded a presumption of independent status . . . [that] should not easily be defeated") (quoting *Magnaleasing, Inc.*, 76 F.R.D. at 561)).

Plaintiffs' demands are completely inconsistent with this Court's observation that it will not "do anybody any good to go through massive exploration of entities where there is nothing that is going to turn up." (Pls. Ex. 79 at 6:2–4.)  They continue to demand discovery of the City Entities' worldwide "branches, representative offices, parents, subsidiaries, affiliates, nominees, divisions or departments," a definition that would cover numerous entities in more than 100 countries.[7]  (Pls. Exs. 10–14 at 2–3, ¶ 11.)  And they continue to seek old and cold information from documents dating back two and one-half years to January 1, 2011.  (*See* Pls. Reply at 13.)

Plainly, Plaintiffs cannot possibly have more than a speculative reason to believe that most of the entities included in their definition of Argentina have any relationship with any of the Citi Entities, that any of the Citi Entities holds information concerning the targeted entities that will assist Plaintiffs in enforcing their judgments, or that any of the Citi Entities holds property in the name of the targeted entities that could be used to satisfy Plaintiffs' judgments against Argentina.  Plaintiffs could not therefore certify that they have a "reasonable belief that the party receiving this subpoena has in their possession information about the debtor that will assist . . . in collecting the judgment." N.Y. C.P.L.R. 5224(a)(3)(1).  (*See also* Citi Mem. at 9–10.)

---

[7] Plaintiffs demand virtually unlimited searches, imposing the additional huge burden that the laws of all jurisdictions implicated would have to be examined prior to responding.  (*See* Citi Mem. at 3, 18.)

## II.     DISCOVERY OFFSHORE SHOULD PROPERLY BE LIMITED BY THE SEPARATE ENTITY DOCTRINE AND PROCEED PURSUANT TO THE HAGUE CONVENTION

### A.     The Separate Entity Doctrine Is Available To Protect Offshore Branches from Discovery in Violation of Local Law

Under the "separate entity doctrine," which is a creature of comity, the foreign branches of an international bank like Citibank are treated as if they were separate and distinct legal entities.  (*See* Citi Mem. at 15–18.)

In *Ayyash v. Koleilat*, 957 N.Y.S.2d 574 (Sup. Ct. N.Y. Cnty. 2012), the Supreme Court, New York County applied the separate entity rule in a discovery context and rejected the plaintiff's worldwide discovery demands, holding that principles of comity, as well as New York law and policy, required the plaintiff to make use of the procedures of the Hague Convention to seek the desired information from foreign jurisdictions, in particular since the enforcement laws of those jurisdictions would ultimately be needed to pursue execution.[8]  In doing so, the court recognized that a worldwide search for assets that Plaintiffs ultimately might not be able to attach was pointless.  *Id*. at 582.  The holding in *Ayyash* is straightforward: global discovery is improper where the burdens it imposes are unlikely to lead to useful results.  In this, the *Ayyash* Court has simply echoed the words of this Court that discovery should be tailored to exclude searches

---

[8] Magistrate Judge Netburn in this District has concluded that *Ayyash* was wrongly decided and that the separate entity rule does not apply in a discovery context.  *See CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 08087, 2013 WL 2661037, at *17 (S.D.N.Y. June 12, 2013).  Notwithstanding this interpretation of *Ayyash*, Magistrate Judge Netburn ultimately denied a motion to compel production from a bank's Singapore branch and instead ordered plaintiffs to proceed via the Hague Convention.  *See id*. at *18 ("Under the principles of international comity, a New York court should not encroach upon another nation's sovereignty by requiring citizens to take actions within their home country that would contravene that country's laws.").  In the context of Plaintiffs' unfocused demand for worldwide discovery, considerations of comity likewise require recourse here to the Hague Convention, a conclusion aided by application of the separate entity rule.

where "nothing productive [could be] gained."  (Pls. Ex. 83 at 44:6–8.)[9]  *Cf. Ings v. Ferguson,* 282 F. 2nd 149, 152 (2nd Cir. 1960) ("Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures.") (holding that service of a subpoena on a bank office in New York did not reach documents located in Canadian branches).

Contrary to Plaintiffs' suggestion, *Ayyash* is not at odds with other decisions that have addressed the separate entity rule.  Plaintiffs cite *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 539 (2009), for the proposition that "New York law expressly allows the securing of out-of-state materials by in-state service of a subpoena" (Pls. Reply at 24), but *Koehler* did not involve a discovery dispute, and neither the separate entity doctrine nor sovereign property outside the United States were implicated in that case.[10]  Nor does *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234 (S.D.N.Y. 2011), support Plaintiffs' argument.  The discovery in *Eitzen Bulk* was focused on a single judgment debtor (as opposed to Plaintiffs' list of hundreds of entities), and was directed to a single office of the garnishee bank believed to hold assets of the debtor.  *Id*. at 236.  Moreover, it was significant in *Eitzen Bulk* that information already produced by the bank had

---

[9] Plaintiffs' attempt to distinguish *Ayyash* on the ground that a strong New York connection was lacking in that case is also unavailing.  (*See* Pls. Reply at 25.)  Argentina may have submitted to jurisdiction in New York (*see id.* at 25–26), but Plaintiffs do not even allege that the other 394 entities and individuals on their revised list have.

[10] In *Shaheen Sports, Inc. v. Asia Ins. Co.,* No. 98 Civ. 5951, 2012 WL 919664, at *3, *5 (S.D.N.Y. Mar. 14, 2012), the district court noted that New York state courts were continuing to give effect to the separate entity rule, and pointed out that, "[i]n light of the significant policy principles underlying the separate entity rule and its lengthy history in New York courts, it is not unreasonable to expect that if the New York Court of Appeals had chosen to eliminate it, it would have said so."  *Id*. at *5; *see also Nat'l Union Fires Ins. Co. v. Advanced Emp't. Concepts, Inc.,* 269 A.D.2d 101, 102 (1st Dep't 2000) (eliminating the separate entity doctrine would require "a pronouncement from the Court of Appeals or an act of Legislature").

6

confirmed that the judgment debtor "[did], in fact, conduct business with Bank of India's 'Mumbai Overseas' branch," thus validating the plaintiff's declaration that it had "a reasonable belief that the party receiving the subpoena has in [its] possession information about the *debtor*." *Id*. at 236–37 (emphasis added).

The other cases that Plaintiffs cite likewise provide little support for their position. *EM Ltd*. concerned "only . . . whether obtaining discovery from a third party of a foreign sovereign's assets outside the United States infringes on sovereign immunity," and said nothing about the proper scope of discovery. 695 F.3d at 206 n.5. *Intercontinental Credit Corp. Division of Pan American Trade Development Corp. v. Roth*, 578 N.Y.S.2d 955 (Sup. Ct. N.Y. Cnty. 1990), *vacated on other grounds*, 595 N.Y.S.2d 602 (Sup. Ct. N.Y. Cnty. 1991), involved production of discovery from bank branches in a single country, not worldwide, and only authorized such discovery "provided that there is a practical method by which the bank can obtain the records sought." *Id*. at 957. And despite Plaintiffs' claims, *Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558 (S.D.N.Y. 2003), did not "permit[] discovery from overseas branches." (Pls. Reply at 25.) That case dealt with restraints on accounts, not global discovery, and stated merely that the plaintiff could, as part of an application for equitable relief, seek discovery about the identity of banks' foreign branches at a later date. *Motorola*, 288 F. Supp. 2d. at 562. Plaintiffs' reliance on *Motorola* is therefore entirely inapposite.

### B.      Plaintiffs Should Proceed Under the Hague Convention

When "discovery is sought from a nonparty in a foreign jurisdiction, application of the Hague Convention, which encompasses principles of international comity, is *virtually compulsory*." *Orlich v. Helm Bros.*, 160 A.D.2d 135, 143 (1st Dep't 1990) (emphasis added). Plaintiffs respond to this argument by asserting that resort to the

Hague Convention is not mandatory under federal law and by pointing out that the Second Circuit has declined to "adopt a rule mandating primary resort to the Hague Convention as the means of obtaining discovery" from a non-party.  (Pls. Mem. at 27 (quoting *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21–23 (2d Cir. 1998)).) Plaintiffs' response misses the point of the Citi Entities' argument.  The Citi Entities recognize that courts in this District apply a seven-part balancing test to determine whether reliance on the Hague Convention is appropriate.  *See Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976, 2012 WL 1918866, at *4 (S.D.N.Y. May 23, 2012).  The Citi Entities have also explained how these seven factors, combined with the rationale of *Orlich*, lead to the conclusion that the Hague Convention *should* govern discovery in this case.  (*See* Citi Mem. at 20–21 (discussing each factor).)

Nor does this Court's February 8, 2013 opinion in *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845, 2013 WL 491522 (S.D.N.Y. Feb. 8, 2013), "foreclose[]" the Citi Entities' foreign law arguments.  (Pls. Reply at 12.)  That opinion was based in part on "BNA['s] fail[ure] to give reasonable notice that it planned on raising foreign law as a basis for not complying with the subpoena."  *NML Capital*, 2013 WL 491522, at *3. The Citi Entities, by contrast, have repeatedly informed Plaintiffs that there could be foreign legal barriers to production in a number of the more than 100 jurisdictions in which the Citi Entities are located, such that they should proceed through the Hague Convention.  (*See* Pls. Exs. 29–33, 61, 64; Citi Mem. at 18–22.)  In any event, the Court's opinion in *NML* was addressing a limited number of jurisdictions, not the more than 100 jurisdictions in which the Citi Entities maintain branch and affiliate offices.  Plaintiffs' demand that the Citi Entities prove up the laws of every one of those jurisdictions that

would render compliance with the Subpoenas unlawful is both unreasonably burdensome and premature. Any determination regarding the Citi Entities' foreign law objections should be deferred until after Plaintiffs have appropriately narrowed the scope of their requests as well as the number of jurisdictions implicated, and the Citi Entities have had an opportunity to address particular foreign laws that may prevent or limit disclosure.

## CONCLUSION

The separate entity doctrine, concerns of comity, and the audacious nature of Plaintiffs' demands all point to a single conclusion: even in their amended form, Plaintiffs' discovery requests impose an unreasonable burden on the non-party Citi Entities. Either by directing compliance with the Hague Convention or by rejecting Plaintiffs' demands outright, this Court can ensure that it acts as a clearinghouse for worldwide discovery of Argentina without punishing innocent third parties for Argentina's actions.

For the foregoing reasons, the Citi Entities' cross-motion to quash, modify or for a protective order should be granted, and Plaintiffs' motion to compel the Citi Entities to comply with the Subpoenas should be denied.

Dated: New York, New York  
June 21, 2013

DAVIS POLK & WARDWELL LLP

By: _____  
Karen E. Wagner  
James L. Kerr  
Matthew B. Rowland  
Lindsey T. Knapp

450 Lexington Avenue  
New York, New York 10017  
(212) 450-4000

*Counsel to the Non-Party Citi Entities*

9