Samsun Logix Corp. v Bank of China, 31 Misc.3d 1226(A) (2011)
Case 1:07-cv-02715-TPG   Document 586-4   Filed 06/21/13   Page 1 of 7
929 N.Y.S.2d 202, 2011 A.M.C. 1551, 2011 N.Y. Slip Op. 50861(U)

Unreported Disposition

KeyCite Yellow Flag - Negative Treatment
**Disagreed With by** Eitzen Bulk A/S v. Bank of India, S.D.N.Y., October 5, 2011

31 Misc.3d 1226(A), 929 N.Y.S.2d 202 (Table), 2011 WL 1844061 (N.Y.Sup.), 2011 A.M.C. 1551, 2011 N.Y. Slip Op. 50861(U)

**This opinion is uncorrected and will not be published in the printed Official Reports.**

Samsun Logix Corp., Petitioner, and

v.

Bank of China, BANK OF COMMUNICATIONS, CO. LTD., CHINA CONSTRUCTION BANK CORPORATION, CHINA MERCHANTS BANK CO., LTD., INDUSTRIAL AND COMMERCIAL BANK OF CHINA LIMITED, and AGRICULTURAL BANK OF CHINA LIMITED, Respondents.

105262/10
Supreme Court, New York County
Decided on May 12, 2011

CITE TITLE AS: Samsun
Logix Corp. v Bank of China

### ABSTRACT

Attachment
Proceeding to Compel Delivery of Attached Property
Separate Entity Rule

*Samsun Logix Corp. v Bank of China*, 2011 NY Slip Op 50861(U). Attachment—Proceeding to Compel Delivery of Attached Property—Separate Entity Rule. (Sup Ct, NY County, May 12, 2011, Solomon, J.)

### APPEARANCES OF COUNSEL

Petitioner was represented by Jeremy J.O. Harwood, Esq., of Blank Rome LLP, 405 Lexington Avenue, New York, NY 10174, tel. no. (212) 885-5749.
Respondents Bank of China, Bank of Communications Co., Ltd, China Construction Bank Corp, China Merchants Bank Co., Ltd., Industrial and Commercial Bank of China Limited and Agricultural Bank of China were represented by Dwight A. Healy, Esq., of White & Case LLP, tel. no. (212) 819-8200.
Amici Curiae The Clearing House Assoiacation, LLC and The Institute of International Bankers were represented by Bruce E. Clark, Esq. of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, tel. no. (212) 558-4000,
and Amicus Curiae The Federal Reserve Bank of New York was represented by Thomas C. Baxter, Jr. (Shari D. Leventhal, Esq. and Katherine S. Landy, Esq., of Counsel), 35 Liberty St., New York, NY 10045, tel. no. (212) 720-5035.

### OPINION OF THE COURT

Jane S. Solomon, J.

This decision addresses two motions.

In the first motion, respondents, Bank of China, Bank of Communications Co. Ltd., China Construction Bank Corporation, China Merchants Bank Co., Ltd., Industrial and Commercial Bank of China Limited, and Agricultural Bank of China Limited (collectively, Banks) move, pursuant to CPLR 327 (a), 404 (a), and 5240, for an order dismissing or staying **\*2** the proceeding.

In the second motion, plaintiff Samsun Logix Corp. (Samsun) moves, pursuant to CPLR 306-b, for an order extending the time for service of the petition upon nonparty "Judgment Debtors."

For the reasons discussed below, the Banks' motion is granted, and the proceeding is dismissed. Samsun's motion to extend the time for service of the petition on the Judgment Debtors is denied.

### BACKGROUND

The facts underlying this proceeding were discussed in a related action, *Samsun Logix Corp. v Bank of China*, 740 F Supp 2d 484 [SD NY 2010] [Removal Decision]), in which respondents sought, unsuccessfully, to remove this proceeding to federal court.

As stated in the Removal Decision, Samsun is a South Korean shipping company in bankruptcy proceedings. In July 2009, Samsun obtained a foreign arbitral award (Award) from a London tribunal against Dalian Dong Zhan Group Co. Ltd., Beitai Iron & Steel Group Importing & Exporting Co. Ltd., and Hong Kong Dongzhan Logistics Ltd.

Case 1:07-cv-02715-TPG   Document 586-4   Filed 06/21/13   Page 2 of 7

Samsun Logix Corp. v Bank of China, 31 Misc.3d 1228(A) (2011)
929 N.Y.S.2d 202, 2011 A.M.C. 1551, 2011 N.Y. Slip Op. 50861(U)

(collectively, Judgment Debtors) pertaining to the breach of a maritime contract. Two of the Judgment Debtors are Chinese companies (Dalian Dong Zhan Group Co. Ltd. and Beitai Iron & Steel Group Importing & Exporting Co. Ltd.), and the third is a Hong Kong company (Hong Kong Dong Zhon Logistics Ltd.).

The Award was confirmed in another related action, also in the United States District Court for the Southern District (*Samsun Logix Corp. v Dalian Dong Zhan Group Co. Ltd., et al.*, No. 08 Civ 9458 [SD NY 2008]). In that action, by order dated January 11, 2010, the Court granted Samsun's motion for recognition of the Award, pursuant to the Federal Arbitration Act under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 USC § 203) (Exhibit J to Affidavit of Dwight A. Healy, sworn to October 25, 2010). In that same action, a judgment confirming the Award in the amount of $6,582,272.24 (Judgment) was entered on March 5, 2010.

Samsun commenced this proceeding the following month, on April 21, 2010. The petition in this proceeding seeks to have the Court: (1) recognize and enforce the Judgment; (2) order the Banks to turn over to Samsun any property of the Judgment Debtors that may be in their possession, but located outside New York State; (3) order the Banks to execute and deliver any document necessary to effect payment or delivery of property of the Judgment Debtors to Samsun up to the sum of $6,582,272.24; (4) relieve Samsun of compliance with CPLR 5222 and allow attachment of all property of the Judgment Debtors; and (5) retain jurisdiction over the matter for any further proceedings as may be necessary to satisfy the debt of the Judgment Debtors owed to Samsun.

Thereafter, on May 24, 2010, Bank of China and Bank of Communications Co. Ltd. filed a notice of removal with the United States District Court, Southern District of New York. In the Removal Decision, the Federal District Judge presiding over the matter granted a motion by Samsun to remand the action back to Supreme Court, New York County, i.e., the state court from which it had been removed.

The Banks then made the instant motion to dismiss based on the following grounds: (1) Samsun has not served the order to show cause and petition upon the Judgment Debtors; (2) **\*3** under the separate entity rule, respondents should not be required to bring assets outside of New York into the jurisdiction; (3) due to the absence of any jurisdictional nexus between the Judgment Debtors and this state, granting the relief sought by Samsun would violate due process; (4) federal law preempts Samsun's effort to reach property of the Judgment Debtors outside of New York; (5) under CPLR 5240 and principles of comity, the Court should deny the relief that Samsun seeks; and (6) New York is an inconvenient forum, and the action should be dismissed or stayed pursuant to CPLR 327 (a).

Among these various grounds upon which the Banks seek dismissal of the proceeding, the parties have identified as the primary issue the effect of the Court of Appeals decision in *Koehler v Bank of Bermuda Ltd.* (12 NY3d 533 [2009] [*Koehler*]) on the right of Samsun to maintain this proceeding, and whether the decision in Koehler has had an impact upon the "separate entity rule." Under New York law, the separate entity rule provides that "each branch of a bank be treated as a separate entity for attachment purposes" (*Allied Maritime, Inc. v Descatrade SA*, 620 F3d 70, 74 [2d Cir 2010] [internal quotation marks and citations omitted]). Although the Court in *Koehler* did not specifically mention the separate entity rule, some subsequent decisions have opined that that decision may have impliedly abolished the rule, which is the position that Samsun has taken in this proceeding.

In *Koehler*, the Court of Appeals held that a "New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee" (12 NY3d at 541). The Court of Appeals ruled that "a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225 (b)."

The Banks argue that *Koehler* did not abrogate the separate entity rule, which remains a viable doctrine. Accordingly, each branch of a bank is a separate entity, unconcerned with accounts that depositors maintain in other branches or at the home office. Samsun has not identified any assets of the Judgment Debtors held by the Banks (or any other entity) in this jurisdiction, and they have no New York presence. Thus, the Banks contend that they should not be required to search for or bring assets of the Judgment Debtors that are outside of New York into the jurisdiction for Samsun's benefit, and the proceeding should be dismissed.

Samsun argues that the Banks' New York branches cannot be treated as separate entities because the separate entity rule no longer applies in post-judgment enforcement proceedings under CPLR 5225 (b). It also argues that the separate entity

rule does not apply to federally-chartered banks, including Bank of China and Bank of Communications Co. Ltd.

**DISCUSSION**

As stated above, the separate entity rule provides that each branch of a bank be treated as a separate entity for attachment purposes (*Allied Maritime, Inc. v Descatrade SA,* 620 F3d 70, *supra*). The "mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment merely by serving a New York branch" (*Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts,* 269 AD2d 101, 101 [1st Dept 2000]). Because Samsun has not identified any assets of the Judgment Debtors located in the branches (or under the control) of the Banks that are parties to this proceeding, the Banks are entitled to dismissal of the proceeding. Moreover, neither Samsun nor the Judgment Creditors have any relation with New York, be it business or otherwise. **\*4**

Samsun argues, unpersuasively, that *Koehler* abrogated the separate entity rule in post-judgment enforcement proceedings. It contends that "[h]ere, as in *Koehler*, the Court has in *personam jurisdiction* over all the Banks as a whole, not just the Banks' branches located in New York." (Mem. in Opp., at 6). *Koehler* did not affect this principle, however, because the Bermudan entity that had possession of the property consented to the New York Court's jurisdiction. Here, the bank branch (or subsidiary) with the property has not consented to New York jurisdiction; indeed, it is not even known which entity possesesses property of the Judgment Debtors, if any. Moreover, the Court of Appeals in *Koehler* did not even mention the separate entity rule, thereby strongly indicating that it had not intended to overrule that doctrine (*see Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts,* 269 AD2d at 102 [to extend an exception to the separate entity rule would require a "pronouncement from the Court of Appeals or an act of the Legislature"]).

Contrary to Samsun's assertion, post-*Koehler* decisions have affirmed the viability of the doctrine (*see Allied Maritime Inc. v Descatrade SA,* 620 F3d at 74; *Levin v Bank of New York, et al.,* 2011 WL 812032,\*12, 2011 US Dist. LEXIS 23779 [SD NY 2011]); *John Wiley & Sons, Inc. v Kirtsaeng,* 2009 WL 3003242, \*4, 2009 US Dist LEXIS 86498 [SD NY 2009]).

In *John Wiley & Sons, Inc. v Kirtsaeng*, *supra*, the Court stated:

"But New York courts still hold to the separate entity' rule unless certain requirements are met: [t]he *Diqitrex* exception to the separate entity rule is only applicable where: (1) the restraining notice is served on the bank's main office; (2) the bank's main office and branches are within the same jurisdiction; and (3) the bank branches are connected to the main office by high-speed computers and are under the centralized control of the main office."

Samsun has not shown that any of these requirements has been met. As for the third requirement, the Banks submitted numerous affidavits to the effect that the computer systems in the New York branches of the Banks do not provide access to customer account information at the head office or at branches outside of the United States.

To be sure, other post-*Koehler* decisions contain statements indicating that *Koehler* has placed in doubt the continued viability of the separate entity rule (*see e.g. Eitzen Bulk A/S v State Bank of India*, 09 Civ 10118 (AKH), 7 [SD NY August 3, 2010] ["the Court of Appeals has recently rejected the position that SBI now advances"] at Harwood Declaration, dated November 9, 2010, Ex. Y). That decision is not controlling precedent, and it did not address an issue relevant to this particular proceeding, namely, that the relief sought here greatly exceeds the relief sought in *Koehler*.

In *Koehler*, the plaintiff sought the turnover of an identifiable asset -- a stock certificate representing shares in a Bermuda corporation. Here, Samsun seeks, among other things, the turnover of "any property" of the Judgment Debtors that *may* be in the Banks' possession, but located outside New York State, and an order requiring the Banks to execute and deliver "any document" necessary to effect payment or delivery of property of the Judgment Debtors to Samsun up to the amount of $6,582,272.

Thus, to permit Samsun to maintain this action would extend the holding in *Koehler* to a different factual scenario. Samsun itself seems to agree that granting the petition would extend the holding in *Koehler*, because it remarks that "[f]oreign countries are unlikely to change their **\*5** laws in light of *Koehler*'s *relatively narrow applicability*" (Samsun Mem. in Opp. to Amici Curiae Mem., at 4 [emphasis added]). As discussed above, extending the holding in *Koehler* to the facts presented here would require a broad application of *Koehler,* not a narrow one.

Samsun Logix Corp. v Bank of China, 31 Misc.3d 1226(A) (2011)
929 N.Y.S.2d 202, 2011 A.M.C. 1551, 2011 N.Y. Slip Op. 50861(U)

Case 1:07-cv-02715-TPG   Document 586-4   Filed 06/21/13   Page 4 of 7

Furthermore, Samsun has not expressed policy reasons that would support such an extension. Indeed, policy considerations support the Banks' position. The Federal Reserve Bank of New York (Reserve Bank), as amicus curiae, submitted a memorandum in support of the Banks. Relying largely on the dissent's arguments in *Koehler* (Smith, J.) [1], it posits that to adopt the position urged by Samsun could lead to conflicting claims to assets held by custodians, trustees, or bailees (Mem. in Support, at 5-6). "[C]laims against a single asset should be decided in a single forum, and that forum should be the court of the jurisdiction in which the asset is located" (*id.* at 6, citing the dissent in *Koehler*, 12 NY3d at 542). The Reserve Bank expressed a concern about the ramifications flowing from the issuance of contradictory turnover orders directed at financial institutions (*id.* at 7). It also contends that New York courts could be a global clearinghouse for judgment creditors seeking to enforce claims with no relationship to New York.

The Clearing House Association, L.L.C. (CHA) and The Institute of International Bankers (IIB), also as amici curiae, presented additional policy arguments tending to favor the Banks' motion for dismissal of the proceeding. They contend, among other things, that banks would "bear the administrative burden and cost of searching for information responsive to broad, invasive discovery requests for confidential banking information, and of enabling deliveries of funds or other property, but also would potentially violate local laws" and subject the Banks to double liability (CCA & IIB Mem. in Support, at 4-5, 8).

In its single policy argument, Samsun states that "[o]nce a judgment has been rendered, society has a strong interest in ensuring that American law affords meaningful relief to prevailing litigants" (Samsun Mem. in Opp., at 9). But what "society" is it referring to? The underlying claim pertains to that of a South Korean shipping company in bankruptcy proceedings in Korea [2], that obtained a foreign arbitral award from a London tribunal against two Chinese companies and one Hong Kong company over a maritime contract, none of which has any connection with the "American law" that Samsun posits should be used to ensure "meaningful relief to prevailing litigants." This vague policy argument is not persuasive as an argument for extending the disposition in *Koehler* -- requiring the turnover of an identified stock certificate -- to a world wide search for assets by an entity with no connection to the underlying claim.

Furthermore, as noted by amici curiae, "Courts in a foreign jurisdiction will interpret the rights of persons in that jurisdiction regarding assets in that jurisdiction according to the law of that jurisdiction, not the law of New York, especially in this case because of the absence of any New York connection to the underlying dispute" (CCA & IIB Mem. in Support, at 3). **\*6**

Samsun's citation to *United States v First Natl. City Bank* (379 US 378 [1965]) [3] and *First Natl. Bank of Boston (Intl.) v Banco Nacional de Cuba* (658 F2d 895 [2d Cir 1981], *cert denied* 459 US 1091 [1982]) for the proposition that the separate entity rule does not apply to the Banks, because they are federally-chartered, is without merit. *United States v First Natl. City Bank* involved jeopardy assessments made by the Internal Revenue Service against a Uruguayan corporation, and it sought to foreclose on a tax lien upon all of the corporation's property, including sums held for the account of the corporation at the respondent bank's foreign branch offices. Significantly, the Court stated:

"That is not to say that a federal court in this country should treat all the affairs of a branch bank the same as it would those of the home office. For overseas transactions are often caught in a web of extraterritorial activities and foreign law beyond the ken of our federal courts or their competence. We have, however, no such involvement here, for there is no showing that the mere freezing of the Montevideo accounts, pending service on Omar, would violate foreign law."

(379 US at 531-32). Samsun made no attempt to show that this would be true here. In contrast, the Banks submitted an expert affidavit regarding Chinese law, opining that Chinese law prohibits Chinese commercial banks from complying with an order issued by a court in a jurisdiction outside of China to disclose information about customer accounts in China, to freeze such accounts, or to transfer funds from such account to a judgment creditor outside of China. A violation could expose the bank's officers and employees to civil and criminal liability. The expert also concludes that Samsun's arbitration Award could be easily enforced in China (Affidavit of Zhipan Wu, professor of law, Executive Vice Chancellor of Peking University, and Dean Emeritus of Peking University Law School).

Samsun's response to this assertion of potential liability -- that banks must comply with United States court orders regardless of potential liability and that there is no reason why the Banks could not take it upon themselves to seek approval from the

Case 1:07-cv-02715-TPG   Document 586-4   Filed 06/21/13   Page 5 of 7

Samsun Logix Corp. v Bank of China, 31 Misc.3d 1226(A) (2011)
929 N.Y.S.2d 202, 2011 A.M.C. 1551, 2011 N.Y. Slip Op. 50861(U)

Chinese authorities to effectuate the relief sought by Samsun -- only serves to validate the Banks' contention of a due process violation.

Regarding due process, both sides claim as support for their respective positions the Appellate Division decision in [JPMorgan Chase Bank, N.A. v Motorola, Inc. (47 AD3d 293](#) [1st Dept 2007] [*JPMorgan Chase*]). This decision supports the Banks' due process arguments.

In *JPMorgan Chase,* petitioner JP Morgan Chase Bank, N.A. held a judgment against an Indian company ("IITL") without assets in the United States. To collect, it commenced a special proceeding against respondent Motorola, Inc. because Motorola was being sued by IITL in India. JPMorgan Chase hoped to recover any assets going from Motorola to IITL. In the special **\*7** proceeding, Chase had obtained a judgment in this Court, from which Motorola was appealing, that directed Motorola, as garnishee, to pay Chase the amount of Chase's judgment against IITL, in the event that Motorola became indebted to IITL, by judgment or otherwise, in the Indian action. The First Department held that the trial court improvidently granted the judgment of garnishment, because it subjected the garnishee (Motorola) to a substantial risk of double liability.

In *JPMorgan Chase*, the bank itself was the creditor seeking to garnish a nonbanking entity, which explains why Samsun's reliance upon dicta in that decision is unavailing. The Court in *JPMorgan Chase* was distinguishing a line of cases, among which [Petrogradsky Mejdunarodny Kommerchesky Bank v National City Bank of NY (253 NY 23, *rearg denied* 254 NY 563, *cert denied* 282 US 878 [1930])](#) was identified as the most prominent. In making the distinction, the First Department said that a risk of double liability to a bank (unlike to a nonbank entity such as Motorola) is a foreseeable one that banks presumably consider in setting the fees charged to account holders. As stated above, the Court made this comment in the context of the bank being the creditor seeking to collect on a judgment. Here, however, the Banks have no direct involvement in the underlying dispute between Samsun and the Judgment Creditors.

Thus, contrary to Samsun's assertion, there is much language in *JPMorgan Chase* that strongly strengthens the Banks' arguments here, including:

(1) "Chase does not dispute that it would be an injustice for Motorola to be required to pay the same liability twice" [(47 AD3d at 306);](#)

(2) "As the Court of Appeals has stated, this statute grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts"' (*id.* at 307);

(3) "Chase, the party asking us to expose Motorola to the risk of double liability, seeks to garnish an asset to which Chase (unlike the plaintiffs in the *Petrogradsky* line of cases) asserts no claim in its own right, but only a derivative claim as judgment creditor of an absent third party" (*id.* at 311);

(4) "It was Chase, not Motorola, that accepted as loan collateral the payment obligation of IITL, an Indian company without assets in the United States" (*id.* at 312); and

(5) "The uncontroverted opinion of Motorola's expert on Indian law indicates, in no uncertain terms, that the Indian courts will not give effect to any garnishment issued in this proceeding because Indian law precludes recognition of the default judgment that would be enforced by such a garnishment" (*id.* at 312-13).

The other case that Samsun cited, *First Natl. Bank of Boston v Banco Nacional de Cuba,* involved commercial transactions that were affected by the expropriation of property of American companies by the Republic of Cuba in 1960. The plaintiff bank brought suit, as **\*8** assignee, against respondent Banco Nacional de Cuba to recover for unreimbursed letters of credit. The respondent bank was intimately involved with the specifically-identified assets at issue.

Samsun's petition to compel the Banks located in New York to conduct a worldwide search for any assets of the Judgment Debtors is made more problematic by its failure to serve the petition upon the Judgment Debtors, which it has not done, but concedes is required to do. [CPLR 5225](#) (b) provides that "[n]otice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail . . . ." [CPLR 306-b](#) provides that in special proceedings, the petition must be served within 120 days from the date of filing.

Case 1:07-cv-02715-TPG   Document 586-4   Filed 06/21/13   Page 6 of 7

Samsun Logix Corp. v Bank of China, 31 Misc.3d 1228(A) (2011)
929 N.Y.S.2d 202, 2011 A.M.C. 1551, 2011 N.Y. Slip Op. 50861(U)

In its motion, Samsun argues that "upon good cause shown" or "in the interest of justice," the Court should extend the time limit set forth in CPLR 306-b. Samsun supports its claim that it acted diligently in attempting to effect service by describing the stumbling blocks placed in its way by an international service regime with complex requirements, which takes much time to accomplish, at least for service in China and Hong Kong. Samsun explains that because of the Notice of Removal, filed on May 24, 2010, it did not proceed with service on the Judgment Debtors because different service rules might govern, depending on whether the action remained in federal court or was remanded back to state court. Within two months after the Remand Order, on November 24, 2010, Samsun arranged service on the Judgment Debtors pursuant to the "exacting requirements" of the Hague Convention on Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters. This required, among other things, the translation of 113 pages of complicated English legal documents into Mandarin Chinese. Samsun anticipates that service in China will take between six to nine months, if not longer.

Samsun asserts that the interest of justice standard is to be liberally applied, especially here, involving service upon foreign parties under the Hague Convention. Moreover, it argues that the proceeding is in its infancy, and the Judgment Debtors have actual notice of the proceeding from Samsun's mailing of the pleadings by Fed Ex. Samsun notes that the Judgment Debtors could seek to intervene, but have not chosen to do so.

The Banks oppose, arguing that Samsun waited until November 2010 to begin the process of service under the Hague Convention, eight months after it filed the action in April 2010, and, because both federal and state courts permit service under the Hague Convention, the Notice of Removal did not interfere.

Whether Samsun's request is based upon good cause or in the interest of justice, diligence is an important factor, though less so concerning the interest of justice standard (*see* Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 105 [2001]).

However, the disputed factual issue of diligence need not be resolved because Samsun has not suggested how service on the Judgment Debtors would affect the disposition of this proceeding decided on the other grounds discussed above.

Furthermore, Samsun's detailed explanations of the difficulty it has encountered in attempting to serve the Judgment Debtors under Chinese law, such as the need to translate 113 pages of complicated English legal documents into Mandarin Chinese, supports the appropriateness of the (uncontroverted) conclusion of the Bank's expert, Zhipan Wu, that the arbitration Award could be easily enforced in China. **\*9**

Accordingly, it is

ORDERED that the motion by respondents, Bank of China, Bank of Communications Co. Ltd., China Construction Bank Corporation, China Merchants Bank Co., Ltd., Industrial and Commercial Bank of China Limited, and Agricultural Bank of China Limited, for dismissal of the petition is granted; and it is further

ORDERED that the motion by Samsun Logix Corp. for an order extending the time for service of the petition upon the Judgment Debtors is denied; and it is further

ORDERED and ADJUDGED that the petition is denied and the proceeding is dismissed.

Dated: May 12, 2011

ENTER:

_____

J.S.C.

## FOOTNOTES

Copr. (c) 2013, Secretary of State, State of New York

## Footnotes

1. *Koehler* was decided by a four to three margin.
2. *See* Declaration of Marika Maris, dated June 21, 2010, at Exhibit P to Declaration of Jeremy Harwood, dated November 9, 2010.
3. The dissent in *Koehler* also cited *United States v First Natl City Bank*, contending that that decision "implies that the judgment creditor should not be permitted to do what the judgment creditor could not do," i.e. compel the bank of Bermuda to deliver the shares to the judgment creditor in New York (12 NY3d at 543-44).

Samsun Logix Corp. v Bank of China, 31 Misc.3d 1226(A) (2011)
929 N.Y.S.2d 202, 2011 A.M.C. 1551, 2011 N.Y. Slip Op. 50861(U)

Case 1:07-cv-02715-TPG   Document 586-4   Filed 06/21/13   Page 7 of 7

**End of Document**

© 2013 Thomson Reuters. No claim to original U.S. Government Works.