# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
:     03 Civ. 8845 (TPG)
NML CAPITAL, LTD.,                          :     05 Civ. 2434 (TPG)
:     06 Civ. 6466 (TPG)
              Plaintiff,        :     07 Civ. 1910 (TPG)
:     07 Civ. 2690 (TPG)
        - against -              :     07 Civ. 6563 (TPG)
:     08 Civ. 2541 (TPG)
THE REPUBLIC OF ARGENTINA,                  :     08 Civ. 3302 (TPG)
:     08 Civ. 6978 (TPG)
             Defendant.        :
:
------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE REPUBLIC OF ARGENTINA'S MOTION TO QUASH SUBPOENA

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi
Christopher P. Moore

## **TABLE OF CONTENTS**

| | Page |
|---|---|
| TABLE OF AUTHORITIES ................................................................................. | ii |
| PRELIMINARY STATEMENT ........................................................................... | 1 |
| BACKGROUND ................................................................................................... | 2 |
|     A.   The Court's Previous Discovery Rulings ........................................... | 2 |
|     B.   The Present Subpoena ........................................................................ | 3 |
| ARGUMENT .......................................................................................................... | 6 |
| THE SUBPOENA IMPROPERLY EXCEEDS FSIA AND FEDERAL RULE LIMITATIONS ON DISCOVERY AND MUST BE QUASHED ................... | 6 |
| CONCLUSION ....................................................................................................... | 14 |

## **TABLE OF AUTHORITIES**

| **Cases** | **Page(s)** |
|---|---|
| Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080 (9th Cir. 2007) | 6 |
| Autotech Techs. LP v. Integral Research & Dev. Corp., 499 F.3d 737 (7th Cir. 2007), cert. denied, 552 U.S. 1231 (2008) | 12 |
| Avnet, Inc. v. Am. Motorists Ins. Co., 115 F.R.D. 588 (S.D.N.Y. 1987) | 12 |
| Butler v. Sukhoi Co., 579 F.3d 1307 (11th Cir. 2009) | 6, 11 |
| EM Ltd. v. Republic of Argentina, 473 F.3d 463 (2d Cir. 2007) | 6 |
| EM Ltd. v. Republic of Argentina, No. 08 Civ. 7974 (TPG), et al., 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) | 11 |
| Fidelity Partners, Inc. v. Phillipine Exp. & Foreign Loan Guarantee Corp., 921 F. Supp. 1113 (S.D.N.Y. 1996) | 13 |
| First City Tex. Houston N.A. v. Rafidain Bank, 281 F.3d 48 (2d Cir. 2002) | 6 |
| First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611 (1983) | 7, 10 |
| Flatow v. Islamic Republic of Iran, 76 F. Supp. 2d 16 (D.D.C. 1999) | 8 |
| In re Papandreou, 139 F.3d 247 (D.C. Cir. 1998) | 9 |
| In re Terrorist Attacks on September 11, 2001, 538 F.3d 71 (2d Cir. 2008). cert. denied, 129 S. Ct. 28598 | 9 |
| Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841 (5th Cir.), cert. denied, 531 U.S. 979 (2000) | 10 |
| Letelier v. Republic of Chile, 748 F.2d 790 (2d Cir. 1984), cert. denied, 471 U.S. 1125 (1985) | 10 |

|  | Page(s) |
|---|---|
| Olympic Chartering, S.A. v. Ministry of Indus. and Trade of Jordan, 134 F. Supp. 2d 528 (S.D.N.Y. 2001) | 11 |
| Pravin Banker Assocs., Ltd. v. Banco Popular del Peru, 9 F. Supp. 2d 300 (S.D.N.Y. 1998) | 10 |
| Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat, 244 F. Supp. 2d 1130 (D. Colo. 2002) | 12 |
| Rubin v. Islamic Republic of Iran, 349 F. Supp. 2d 1108 (N.D. Ill. 2004) | 6 |
| Suraleb, Inc. v. Prod. Ass'n "Minsk Tractor Works," Republic of Belarus, No. 06 C 3496 (GMM), 2008 WL 294839 (N.D. Ill. Jan. 31, 2008) | 12 |
| Walters v. People's Republic of China, 672 F. Supp. 2d 573 (S.D.N.Y. 2009) | 6, 13 |

**Rules and Statutes**

| | |
|---|---|
| 28 U.S.C. § 1603(b) | 7, 10 |
| 28 U.S.C. § 1610(a) | 1, 6 |
| 28 U.S.C. § 1611(b)(2)(A) | 8-9 |
| 28 U.S.C. § 1611(b)(2)(B) | 8-9 |
| Fed. R. Civ. P. 26(b)(1) | 2, 6-7 |
| H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604 | 2 |

**Other Sources**

| | |
|---|---|
| Brief of the U.S. as Amicus Curiae in Support of Affirmation, Peterson v. Islamic Republic of Iran, No. 08-17756 (9th Cir. filed June 25, 2009) (Docket #26) | 13 |
| Brief for the U.S. as Amicus Curiae Supporting Reversal, Rubin v. Islamic Republic of Iran, No. 08-2805 (7th Cir. filed June 26, 2009) (Docket # 34) | 13-14 |

Defendant the Republic of Argentina ("the Republic") submits this Memorandum of Law in support of its motion, pursuant to Rule 45 of the Federal Rules of Civil Procedure, to quash the subpoena dated March 10, 2010 (the "Subpoena") served by plaintiff NML Capital, Ltd. ("NML") on Bank of America, N.A. ("Bank of America").

## PRELIMINARY STATEMENT

This motion is addressed to the non-party Subpoena served by NML on Bank of America on March 10, 2010. See Ex. A.[1] The Subpoena seeks information from Bank of America about no fewer than 136 named individual public officials (who of course are not personally liable for the obligations of the state). It also demands information concerning 43 independent entities, all of which are separate from the Republic as a matter of law and not liable for the Republic's debts. The Subpoena is improper under both the FSIA and the Federal Rules and grossly intrudes into the financial information of third parties, and it must be quashed.

*First*, the Subpoena exceeds the limitations of the Foreign Sovereign Immunities Act ("FSIA") because it seeks extensive information concerning the accounts of individuals and entities separate from the Republic. As the Court and other courts have repeatedly recognized, execution under the FSIA is limited to property of the foreign state itself that is both "in the United States" and "used for a commercial activity in the United States." 28 U.S.C. § 1610(a). The scope of execution-related discovery is accordingly limited to facts necessary to resolve a colorable question of whether property of the Republic is located in the United States and is used for commercial activity in the United States. There is no basis in law for permitting discovery

---

[1] All exhibits are attached to the accompanying declaration of Carmine D. Boccuzzi, dated May 17, 2010.

concerning possible assets of over 175 individuals and entities independent from the Republic and not liable for its debts.

*Second*, even in the absence of the FSIA, and applying the usual standards under the Federal Rules of Civil Procedure, the demanded discovery about individuals and entities not liable for the obligations of the Republic is by definition not relevant to any "claim or defense" in this litigation. See Fed. R. Civ. P. 26(b)(1). It is also on its face overbroad and unduly burdensome.

*Third*, the sweeping discovery sought by NML is squarely at odds with this Court's past orders in similar contexts. The Court has previously rejected demands by plaintiffs for overbroad discovery not concerning purported commercial activity of the Republic.

## BACKGROUND

### A. The Court's Previous Discovery Rulings

In the past, the Court has repeatedly rejected attempts by plaintiffs to obtain untailored, intrusive discovery. The Court has recognized – as has every other court to address the issue – that discovery in aid of execution against a foreign state, like other proceedings against a foreign state, is limited by the requirements of the FSIA, as the legislative history makes clear. See H.R. Rep. No. 94-1487, at 28 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6627; see also Fed. R. Civ. P. 26(b)(1) (scope of discovery is limited to matters "that [are] relevant to any party's claim or defense").

For example, in January 2004, the Court held that a discovery request concerning all Republic property in the United States as well as property of the Republic's agencies and/or instrumentalities was "much too broad" because the "discovery request [was] almost as if it covers a situation where somebody didn't know anything and you got to learn everything." See

Ex. B, Jan. 15, 2004 Tr. at 22, 26. The Court has also held that prior to seeking discovery, plaintiffs should "at least develop some hypothesis. Because if you are just asking me to authorize you to have a lot of discovery, when you really don't know anything about what you are looking for . . . usually that means you hardly know what questions to ask." See Ex. C, Mar. 19, 2004 Tr. at 15.[2]

The Court has accordingly denied requests by plaintiffs for "blanket" discovery as to the Republic's agencies and/or instrumentalities, see Ex. D, May 13, 2004 Tr. at 6, 32; Ex. E, May 23, 2006 Tr. at 26-27, and has also held that information that did not concern a "commercial business" of the Republic was "not a subject for discovery." Ex. F, Dec. 19, 2006 Tr. at 6-8. The Court has also expressly recognized that "[e]ven discovery has Foreign Sovereign Immunities Act aspects. I cannot just order a foreign country to give discovery willy-nilly." Ex. G, Apr. 30, 2008 Tr. at 52.

**B.     The Present Subpoena**

On March 10, 2010, NML served the Subpoena at issue on Bank of America. The Subpoena purports to define "Argentina" to include all "agencies, ministries, instrumentalities, political subdivisions, employees, attorneys, representatives, affiliates, subsidiaries, predecessors, successors, alter-egos and assigns, and all other Persons acting or purporting to act for or on Argentina's behalf." Ex. A at 4, ¶ 1. The definition also states that "'Argentina' includes all Persons listed in Exhibit 1 attached hereto." Id. Exhibit 1 to the Subpoena is a seven-page list of:

---

[2]   That the Republic subsequently provided limited discovery in 2004 as to certain assets located outside of the United States does not, of course, change the fact that such assets are as a matter of law precluded from attachment and execution under the FSIA.

- 148 "Ministries" and "Secretariats" of the Republic – including, for example, the Office of the Presidency, the Department of State, the Office of the Cabinet Chief, and the Ministry of the Interior. There is no basis to conclude that any of the listed entities are involved in commercial activity in the United States.

- 136 names of <u>individual</u> ministers, secretaries, and other officials associated with government entities – for example, the names of the Argentine President, Secretary General, Cabinet Chief, and Minister of Defense – whose private accounts at Bank of America, if any, cannot be attached to satisfy any debt of the Republic.

- 43 juridically separate entities not liable for the Republic's debts, and whose account information is therefore not relevant to NML's efforts to collect against the Republic. Two of the 43 entities on NML's list – Banco de la Nación Argentina and Aerolíneas Argentinas, S.A. – have already been determined by this Court <u>not</u> to be alter egos of the Republic. The bulk of the remaining entities are agencies or instrumentalities of the Republic and therefore presumed to be separate from the Republic.[3]

As to each of the entities and individual persons included in the definition of "Argentina" and named in Exhibit 1, NML seeks breathtakingly expansive categories of account information, including all account opening documentation and information concerning the source of funds in the accounts (Document Request 2); detailed customer information maintained by Bank of America (Document Request 3); information about balances, account history and transaction history (Document Requests 4-8); documents relating to <u>all</u> SWIFT messages received at any time since January 1, 2009 (Document Request 9); and any documents

---

[3] On October 9, 2009, the Republic moved to dismiss NML's alter ego Complaint against the energy company Energía Argentina S.A. ("ENARSA"), one of the 43 entities named in Exhibit 1 of the Subpoena. The alter ego complaint was part of NML's August 2009 attempt to interfere with a shipment of liquefied natural gas needed to provide heat to Argentine citizens in Argentina. The Court denied NML's attachment motion, holding, <u>inter alia</u>, that granting NML's requested attachment would improperly cause prejudice to Morgan Stanley, and that the attempted attachment would inappropriately interfere with delivery of a commodity needed by the Argentine people. <u>See</u> Ex. H, Aug. 11, 2009 Tr. at 52-55 (Court: "[T]he natural gas is intended to be used to provide gas for citizens of Argentina and . . . those citizens need this gas . . . on a schedule which depends on the early delivery of the LNG. . . . The law is certainly clear that there are circumstances such as this which would cause a court to decline to attach property. So one of the reasons I am declining the order of attachment is that this court believes it inappropriate to interfere with a delivery of a commodity needed by the people of Argentina.").

4

concerning letters of credits, loans, and any other "asset or property of any kind whatsoever" (Document Requests 10-12). See Ex. A at 10-11.

On March 19, 2010, Bank of America objected to the Subpoena on the grounds, inter alia, that the Subpoena was "vague and ambiguous … overly broad, unduly burdensome or [sought] information that is not relevant to the subject matter of the case," and that the Subpoena called for "the production of documents that relate to or contain proprietary or confidential business information … belonging to [Bank of America] and/or its clients." See Ex. I, Letter from S. Kivelson to C. Jacob III, dated Mar. 19, 2010. On May 4, 2010, the Republic wrote to NML, explaining that the Subpoena is overbroad and violative of the FSIA and the Federal Rules. See Ex. J, Letter from C. Boccuzzi to Charles R. Jacob III, dated May 4, 2010. The Republic requested that NML withdraw the Subpoena or otherwise confirm that it would narrow the Subpoena to conform with the substantive limitations of the FSIA and the Federal Rules. Id. Rather than acknowledge the vast overbreadth of the Subpoena, on May 12, 2010, NML responded that it was entitled to discovery under the Subpoena concerning assets "anywhere" that "may be available to satisfy its judgments." See Ex. K, Letter from J. Miller to C. Boccuzzi, dated May 12, 2010. This motion followed.

ARGUMENT

THE SUBPOENA IMPROPERLY EXCEEDS FSIA AND FEDERAL RULE
LIMITATIONS ON DISCOVERY AND MUST BE QUASHED

The Subpoena must be quashed because it is vastly overbroad and violates the permissible scope of discovery under the Foreign Sovereign Immunities Act ("FSIA") and the Federal Rules. Under the FSIA, NML may only execute upon (i) property of the sovereign debtor (i.e., the Republic itself) that is (ii) located within the United States and (iii) used for a commercial activity in the United States, see 28 U.S.C. § 1610(a), and accordingly discovery is limited to information concerning such assets. See EM Ltd. v. Republic of Argentina, 473 F.3d 463, 486 (2d Cir. 2007) ("Because the record makes clear that the . . . [f]unds were never an attachable asset of the Republic and that § 1610's 'commercial activity' exception to immunity from attachment does not apply, [plaintiff] was not entitled to any other discovery") (internal quotation marks and citation omitted); Walters v. People's Republic of China, 672 F. Supp. 2d 573, 575 (S.D.N.Y. 2009) (granting motion to quash subpoena seeking information about foreign sovereign assets on the ground that Second Circuit "directs courts to limit any requests for discovery to correspond to the FSIA's substantive reach") (citing EM, 473 F.3d at 486).[4] Discovery about attachable assets under the FSIA is also the only permissible discovery under

---

[4] See also First City Tex. Houston N.A. v. Rafidain Bank, 281 F.3d 48, 53-55 (2d Cir. 2002) (holding that a state is subject to postjudgment asset discovery "to the extent these procedures and responsibilities are related to its commercial activities in the United States"); accord Butler v. Sukhoi Co., 579 F.3d 1307, 1134 (11th Cir. 2009) (noting that jurisdictional discovery against a sovereign and its agencies and/or instrumentalities should be "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination") (quoting First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998)); Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080, 1096 (9th Cir. 2007); Rubin v. Islamic Republic of Iran, 349 F. Supp. 2d 1108, 1111-12 (N.D. Ill. 2004) (denying plaintiffs' discovery requests on the ground that the requests were not relevant to the subject matter of the action, which was "determined by the FSIA" to concern only a "foreign sovereign's property . . . used by the foreign sovereign in the United States for commercial purposes").

6

Federal Rule 26, which limits the scope of discovery to matters that are "relevant to any party's claim or defense." See Fed. R. Civ. P. 26(b)(1).

NML does not, because it cannot, articulate a theory of relevance behind this unwieldy Subpoena, the vast majority of which is not remotely directed to executable assets of the Republic under the FSIA and is improper in the following specific respects:

Definition of "Argentina." As an initial matter, NML's definition of "Argentina" is overbroad on its face. The definition includes "agencies and instrumentalities" of the Republic, which are separate from the Republic and entitled to sovereign immunity in their own right, see e.g., 28 U.S.C. § 1603(b). It is black letter law that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such . . . [and] the instrumentality's assets and liabilities must be treated as distinct from those of its sovereign." First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec"), 462 U.S. 611, 626-27 (1983).

NML's definition of "Argentina" also includes "alter egos" of the Republic, a meaningless legal conclusion bereft of underlying factual allegations. Argentina is additionally defined to include "employees," "attorneys," "successors," and "predecessors" of the Republic, despite the fact that accounts of employees and attorneys of the federal government are not accounts of the Republic, and that a sovereign entity such as the Republic has no "successors" or "predecessors" in the normal corporate sense. This nonsensical definition is further complicated by Exhibit 1, a seven-page list of 148 Ministries and Secretariats of the Republic, 136 individual government officials, and 43 separately incorporated entities.

148 Ministries and Secretariats of the Republic. NML seeks blanket discovery concerning the worldwide accounts of 148 purported "Ministries" and "Secretariats" of the

7

Republic (or sub-offices of such "Ministries" and "Secretariats"), notwithstanding its failure to articulate any basis to conclude that the listed entities are engaged in commercial activity in the United States. As the Court has held, such freewheeling discovery is improper in the absence of a "hypothesis" as to whether these entities hold property used for commercial activity in the United States. See Ex. C, Mar. 19, 2004 Tr. at 15.[5]

In addition, despite the fact that NML seeks discovery about accounts of Republic entities that serve obvious diplomatic functions – including, for example, the Ministry of Foreign Affairs, International Trade and Religious Affairs, see Ex. A at 13 – there is no carve-out in the Subpoena excluding diplomatic accounts. To the extent that the Subpoena seeks discovery concerning non-commercial property of the Republic, it must be quashed. See Flatow v. Islamic Republic of Iran, 76 F. Supp. 2d 16, 22-23 (D.D.C. 1999) (describing a foreign state's "diplomatic activities in the United States [as] an inherently sovereign activity").

Nor does the Subpoena exclude military property – including, for example, accounts of the Ministry of Defense, an entity listed on Exhibit 1 – from discovery, despite the fact that Section 1611 of the FSIA unequivocally states that "property that is, or is intended to be, used in connection with a military activity" and is either "of a military character" or "under the control of a military authority or defense agency" is immune from attachment or execution.

---

[5] Consistent with its blunderbuss approach, NML lists Banco Central de la República Argentina among the "Ministries" and "Secretariats" of the Republic and seeks discovery against the Central Bank. The Court has already addressed the limits of the relevant discovery against the Central Bank during the course of the alter ego action brought by NML against the Central Bank and the Republic, and within those limits the Central Bank has produced extensive discovery. NML in fact agreed to forgo further discovery against the Central Bank in favor of an agreement by the parties to proceed by a stipulation of facts. NML should not now be permitted to seek additional backdoor discovery concerning the Central Bank through this Subpoena in cases in which the Central Bank is not even a defendant.

28 U.S.C. § 1611(b)(2)(A) & (B). NML is not entitled to discovery about military accounts which cannot be attached or executed upon by creditors of the Republic as a matter of law.

<u>136 Individual Government Officials</u>. Exhibit 1 of the Subpoena also lists the names of 136 individual public officials about whom NML seeks account information, ranging from the President of the Republic of Argentina to many secretaries and sub-secretaries, among other officials. NML cannot offer any theory as to how any of these individuals could have their personal property and assets seized to satisfy the debts of the sovereign, and there is no justification whatever for this sweeping and intrusive discovery into the personal financial information of public officials. <u>Cf.</u> <u>In re Terrorist Attacks on September 11, 2001</u>, 538 F.3d 71, 81 (2d Cir. 2008) (holding that an individual government official of a foreign state acting in his official capacity is the "agency or instrumentality" of the foreign state and thus entitled to sovereign immunity), <u>cert. denied</u>, 129 S. Ct. 28598 (2009); <u>In re Papandreou</u>, 139 F.3d 247, 254 (D.C. Cir. 1998) (granting mandamus) ("Principles of comity dictate that we accord the same respect to foreign officials as we do to our own. Thus, absent some showing of need for oral testimony from [Greek cabinet ministers], the district court erred in authorizing their depositions."); Ex. L, Oct. 31, 2003 Tr. at 41 ("I'm not saying that there will be discovery and I'm surely not saying that some high official [of] the Argentinian government is going to have to be deposed.").

<u>43 Independent Entities</u>. Exhibit 1 of the Subpoena lists 43 "Corporations In Which Argentina Has Ownership Interest." Ex. A at 18. <u>None</u> of the named entities is liable for the debts of the Republic. A number of the entities – for example, Empresa Argentina de Soluciones Satelitales, Correo Oficial de la República Argentina S.A., and Lotería Nacional –

9

are juridically independent *Sociedades Anónimas* or *Sociedades del Estado*[6] in which the Republic holds a majority interest. Others, such as Banco de la Nación Argentina, are *entes autarquicos,* or autarkic entities – independent entities created to serve a government purpose.[7]

These S.As, S.E.s, and *entes autarquicos* are "agencies or instrumentalities" of the Republic under Section 1603 of the FSIA and entitled to a strong presumption of separateness from the Republic. See 28 U.S.C. § 1603(b) (defining "agency or instrumentality" as any entity "which is a separate legal person," which "is an organ of a foreign state . . . or a majority of whose shares or other ownership interest is owned by a foreign state."); Bancec, 462 U.S. at 624-27; Pravin Banker Assocs., Ltd. v. Banco Popular del Peru, 9 F. Supp. 2d 300, 305 (S.D.N.Y. 1998) (stating that presumption of separateness "should not be easily defeated"); see also Letelier v. Republic of Chile, 748 F.2d 790, 795 (2d Cir. 1984) ("[B]oth Bancec and the FSIA legislative history caution against too easily overcoming the presumption of separateness."), cert. denied, 471 U.S. 1125 (1985). There is no basis for conducting discovery into the financial affairs of these presumptively separate entities. See Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 849 (5th Cir.), cert. denied, 531 U.S. 979 (2000) ("'A necessary prerequisite to an order for limited discovery is a district court's clear understanding of the plaintiff's claims against a sovereign entity.'") (quoting Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 534

---

[6] A *Sociedad Anónima* ("S.A.") is a stock corporation organized under Law 19,550 (Ley de Soceidades Comerciales or Commercial Corporations Act). See Ex. M. Under Article 2 of Law 19,550, S.A.s are independent juridical entities with their own legal personality. A *Sociedad del Estado* ("S.E.") is a corporation governed by Law 20,705. See Ex. N. Like S.A.s, S.E.s are juridical entities with independent legal personalities. Pursuant to Law 20,705, only certain public entities can own an interest in S.E.s. These entities include the national government, the provincial states, municipalities, duly authorized organs of the state, and other S.E.s. See Ex. N, Article 1.

[7] *Entes autarquicos* are public juridical entities with autonomous decision-making authority and legal status distinct from the state. See Ex. O, Argentine Civil Code, Article 33. The essential features of an autarquic entity are that: (1) it is a public legal entity; (2) it fulfills specific governmental purposes; and (3) it holds its own assets separately from the State. See Ex. P, Miguel S. Marienhoff, Tratado de Derecho Administrativo [Treatise on Administrative Law] (2d ed.) Vol. I, 118-19 (1977).

(5th Cir.), cert. denied, 506 U.S. 956 (1992)); accord Butler, 579 F.3d at 1313-14 (affirming dismissal of complaint and denial of discovery under the FSIA: "The only 'conduct' alleged in the complaint is that appellants and SDB are alter-egos . . . [which] is insufficient to divest appellants of their sovereign immunity because, even if substantiated through discovery, it does not bring the claim within one of one the statutorily-enumerated exceptions either to pre-judgment or post-judgment immunity under the FSIA.") (citation omitted).[8]

Among the 43 entities are two agencies and instrumentalities of the Republic that have already been determined by this Court not to be alter egos of the Republic: Aerolineas Argentinas, S.A. ("Aerolineas") and Banco de la Nacion Argentina ("BNA"). See Order, Seijas v. Republic of Argentina, 04 Civ. 400 (TPG), and related cases, (S.D.N.Y. August 19, 2009) (denying plaintiffs' motion to turnover assets of Aerolineas on the grounds that Aerolineas was not the alter ego of the Republic); EM Ltd. v. Republic of Argentina, No. 08 Civ. 7974 (TPG), et al., 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) (granting Republic's motion to dismiss alter ego action against BNA). Courts have held that entities determined not to be the alter ego of a sovereign are not subject to discovery, let alone liable for the debts of a sovereign. See Olympic Chartering, S.A. v. Ministry of Indus. and Trade of Jordan, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001) (granting motion to quash subpoena served on Central Bank on the grounds that "once a party is found to be immune under the FSIA, it is immune from discovery regarding its assets as well as discovery regarding its transactions with other entities"). NML is simply not entitled to

---

[8] Also listed are certain entities which are not majority-owned Republic-owned entities at all, but rather minority-owned entities or entities related to the City of Buenos Aires and the provinces – for example, Banco Ciudad de Buenos Aires, Banco de Cordoba, and Banco Provincia de Buenos Aires. Again, NML does not, because it cannot, offer any hypothesis as to how property of such entities could be deemed to be property of the Republic, much less property of the Republic located in the United States and "used for" commercial activity in the United States.

11

discover financial information about Aerolineas or BNA, whose assets this Court has already determined may not be attached to satisfy judgments against the Republic.

*    *    *

NML's request that Bank of America disclose extensive, detailed information concerning assets of entities <u>not</u> engaged in commercial activity in the United States, and assets of hundreds of persons and entities independent from the Republic, clearly runs afoul of the FSIA and the Federal Rules. Under the FSIA, NML has an "obligation to state specific facts that would bring this action within a recognized FSIA exception to foreign sovereign immunity." <u>See, e.g.</u>, <u>Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat</u>, 244 F. Supp. 2d 1130, 1142 (D. Colo. 2002); <u>Autotech Techs. LP v. Integral Research & Dev. Corp.</u>, 499 F.3d 737, 750 (7th Cir. 2007), <u>cert. denied</u>, 552 U.S. 1231 (2008) ("[I]n order to determine whether immunity from execution or attachment has been waived, the plaintiff must identify specific property upon which it is trying to act. A court cannot give a party a blank check when a foreign sovereign is involved. . . . The only way the court can decide whether it is proper to issue the writ is if it knows which property is targeted."). Indeed, this Court has stated that "I have indicated over and over that I'm not giving people blanket orders of attachment that they can just serve on various and sundry places." Ex. Q, Mar. 24, 2006 Tr. at 16; <u>accord</u> <u>Suraleb, Inc. v. Prod. Ass'n "Minsk Tractor Works," Republic of Belarus</u>, No. 06 C 3496 (GMM), 2008 WL 294839, at *2 (N.D. Ill. Jan. 31, 2008) ("because MTW is a foreign state under the FSIA, [the court] cannot issue a blanket writ for all property located within this district"); <u>see also</u> <u>Avnet, Inc. v. Am. Motorists Ins. Co.</u>, 115 F.R.D. 588, 592 (S.D.N.Y. 1987) ("The discovery rules are not a hunting license to conjure up a claim that does not exist."). NML is precluded from conducting such sweeping discovery into assets that are clearly not subject to attachment and execution under the

12

FSIA.

Finally, NML is also not entitled to discovery concerning Republic assets and assets of third parties located <u>outside</u> the United States – which by definition exceeds the scope of executable property under the FSIA and provides no basis for discovery. See <u>Walters</u>, 672 F. Supp. 2d at 574-75 (quashing subpoenas directed to "property belonging to the [People's Republic of China]. . . that may not be restrained under the FSIA"; "Because assets held outside of the U.S. fall outside of the exception to sovereign immunity provided by the FSIA. . . the Banks' motion to vacate the notice of restraint and to quash [plaintiffs'] subpoenas is granted") (citation omitted); <u>Fidelity Partners, Inc. v. Phillipine Exp. & Foreign Loan Guarantee Corp.</u>, 921 F. Supp. 1113, 1119 (S.D.N.Y. 1996) ("Under the FSIA, assets of foreign states located outside the United States retain their traditional immunity from execution to satisfy judgments entered in United States courts."); Ex. G, Apr. 30, 2008 Tr. at 52 (denying discovery directed "on its face" to "trust bonds held in Belgium and Germany" on FSIA grounds).

Were there any doubt on the subject, the United States has recently authoritatively confirmed – through amicus briefs filed in the Seventh and Ninth Circuits – the reasons why the FSIA limits post-judgment asset discovery of a foreign state to property that is subject to an exception to immunity from execution. See Brief of the U.S. as Amicus Curiae in Support of Affirmance, <u>Peterson v. Islamic Republic of Iran</u>, No. 08-17756, at 24 n.5 (9th Cir. filed June 25, 2009) (Docket # 26) ("U.S. court orders permitting private litigants to take discovery from foreign states regarding their worldwide assets, even though those assets are not within the court's execution authority under the FSIA, could cause harm to our foreign relations.") (citation omitted); Brief for the U.S. as Amicus Curiae Supporting Reversal, <u>Rubin v. Islamic Republic of Iran</u>, No. 08-2805, at 19-20 (7th Cir. filed June 26, 2009) (Docket # 34) ("As other courts of

appeals have recognized, discovery against a foreign sovereign should be ordered circumspectly and only to verify allegations of specific facts crucial to the immunity determination. That approach is consistent with accepted international practice, which allows the United States to appear in foreign courts for specific, limited purposes – such as to assert the immunity of specific assets from attachment or the immunity of specific officials for specific conduct – without exposing itself to general discovery.") (internal quotation marks and citation omitted). As the United States has thus made clear, there is no legal basis for NML's sweeping assertion that it is entitled by virtue of its judgments against the Republic to discovery "anywhere" of any property of any other person it wants.

## CONCLUSION

For the foregoing reasons, the Subpoena should be quashed.

Dated: New York, New York
May 17, 2010

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Jonathan I. Blackman (jblackman@cgsh.com)
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
Christopher P. Moore (cmoore@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

14