New York
Menlo Park
Washington DC
São Paulo
London
Paris
Madrid
Tokyo
Beijing
Hong Kong

Davis Polk

**James L. Kerr**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
212 450 4552 tel
212 701 5552 fax
james.kerr@davispolk.com

September 24, 2013

Re: *Aurelius Capital Partners, LP and Aurelius Capital Master, Ltd. v. Republic of Argentina*, Nos. 07 Civ. 2715 (TPG) and 07 Civ. 11327 (TPG);

*Blue Angel Capital I LLC v. Republic of Argentina*, Nos. 07 Civ. 2693 (TPG), 10 Civ. 4101 (TPG), 10 Civ. 4782 (TPG);

*Aurelius Capital Master, Ltd. and ACP Master, Ltd. v. Republic of Argentina*, Nos. 09 Civ. 8757 (TPG) and 09 Civ. 10620 (TPG);

*Aurelius Opportunities Fund II, LLC and Aurelius Capital Master, Ltd. v. Republic of Argentina*, Nos. 10 Civ. 1602 (TPG), 10 Civ. 3507 (TPG), 10 Civ. 3970 (TPG) and 10 Civ. 8339 (TPG);

*NML Capital, Ltd. v. Republic of Argentina*, Nos. 03 Civ. 8845 (TPG), 05 Civ. 2434 (TPG), 06 Civ. 6466 (TPG), 07 Civ. 1910(TPG), 07 Civ. 2690 (TPG), 07 Civ. 6563 (TPG), 08 Civ. 2541 (TPG), 08 Civ. 3302 (TPG), 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), and 09 Civ. 1708 (TPG); and

*Dieter Scheck and Lydia Scheck v. Republic of Argentina*, 10 Civ. 5167 (TPG).

Hon. Thomas P. Griesa
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Dear Judge Griesa:

We write on behalf of non-parties Citibank, N.A., Citicorp North America Inc., Citicorp USA Inc., Citigroup Global Markets Inc., and Citigroup Inc. (collectively, the "Citi Entities"), and with permission, also on behalf of the other non-party banks served with subpoenas by the Aurelius Plaintiffs in certain of the above-referenced matters, specifically: Barclays Bank PLC and Barclays Capital Inc. (together, "Barclays"); Deutsche Bank AG, Deutsche Bank Americas Holding Corp., Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas, and Taunus Corporation (collectively, the "Deutsche Bank Entities"); Banc of America Securities LLC (now known as Merrill Lynch, Pierce, Fenner & Smith Incorporated, as successor by merger), Bank of America Corporation, Bank of America, N.A., Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively, "Bank of America"); and Banco de la Nación Argentina ("BNA", and collectively with the Citi Entities, Barclays, Deutsche Bank, and Bank of America, the "Non-Party Banks").

We write to provide the Court with a proposed order with respect to the rulings made at the hearing on September 3, 2013, attached as Exhibit A, and to object to the proposed order offered by the Aurelius Plaintiffs.

* * *

The Aurelius subpoenas were served on the Non-Party Banks in December 2011 and January 2012. On October 10, 2012, after repeated efforts by the Non-Party Banks to fashion a reasonable approach to producing information in response to their sweeping requests, the Aurelius Plaintiffs filed a motion to compel production. In response, the Non-Party Banks filed motions to quash or for protective orders.

Prior to this time, on May 22, 2012, the Republic had filed a motion to quash the eighteen Aurelius subpoenas served on the Republic and on the various Non-Party Banks, including the Citi Entities. None of the Non-Party Banks appeared in support of that motion. On March 7, 2013, this Court denied the Republic's motion to quash, even though the Court pointed out that the subpoenas were "not appropriately tailored," and were much broader in scope than NML subpoenas previously found to be too broad. <u>Aurelius Capital Partners v. Republic of Argentina</u>, No. 07 Civ. 2715, 2013 U.S. Dist. LEXIS 32459, at *27 (S.D.N.Y. Mar. 7, 2013). The Court indicated that it would reserve ruling on the Non-Party Banks' motions to quash the subpoenas served on them, and the Aurelius Plaintiffs' motions to compel compliance with the subpoenas, until such time as all briefing was completed.

Once the Non-Party Banks filed their motions to quash or for protective orders, the Aurelius Plaintiffs requested, and were granted, four adjournments of their time to respond, thereby delaying the briefing schedule for many months. (<u>See</u> Endorsed Letter from Emily A. Stubbs to Hon. Thomas P. Griesa, dated May 3, 2013 (Doc. No. 575), at 2.) The Aurelius Plaintiffs did not, however, use this time to respond to the proposals made by the Citi Entities or the other Non-Party Banks prior to the filing of the Aurelius Plaintiffs' motion to compel. Nor did they serve amended subpoenas narrowing the scope of their requests. Instead, the Aurelius Plaintiffs amended their requests in their reply brief filed on May 27, 2013, (<u>see</u> Pls.' Reply Mem. (Doc. No. 576) at 13–14), which they have represented to the Court is the extent of their requests to the Non-Party Banks.

After briefing had been completed, the Court scheduled a status conference for September 3, 2013. At the conference, the Court orally granted the Aurelius Plaintiffs' motion to compel compliance with their amended subpoenas, denied the Non-Party Banks' cross-motions to quash or for a protective order, and requested that the parties draft a proposed order:

> [The Court]: And I'm granting all motions to enforce the subpoenas, and denying all motions to quash. And I'm doing that with complete respect for what has been presented by Mr. Kerr and others, and knowing the fact of life that the discussions have got to exist. The carrying out of this process is complicated. And it will take discussions. And that will take place after today's hearing, it will not be finished at today's hearing. And nothing will be finished, except I'm granting, I'm ruling on the motions, as I have said.

(Sept. 3, 2013 Hr'g Tr. (attached as Ex. B) at 44:14–15.)

On September 6, the Citi Entities served a proposed order reflecting Your Honor's decision on the Aurelius Plaintiffs. That draft order provided:

> For the reasons stated on the record at the hearing held on September 3, 2013, the Court denies the non-party banks' cross-motions to quash the subpoenas and grants the plaintiffs' motion to compel compliance with the subpoenas, subject to modification of details in discussions that will necessarily take place after the hearing, as reflected in the transcript of the hearing on the motions.

Citi Entities' Draft Proposed Order (attached as Ex. C).

Counsel for the Citi Entities promptly met with counsel for the Aurelius Plaintiffs in person on September 12, 2013 to outline the Citi Entities' proposed response to the requests reflected in the Aurelius Plaintiffs' May 27 reply brief.[1] Counsel for the other Non-Party Banks also conferred with counsel for the Aurelius Plaintiffs—Bank of America and BNA on September 16, Barclays and the Deutsche Bank Entities on September 17. The Aurelius Plaintiffs demanded that the subpoenas as amended be complied with in full, without regard to inconsistent laws and other burdens on the Non-Party Banks.

On Friday, September 20, the Aurelius Plaintiffs circulated their own proposed order. On September 23, 2013, the Non-Party Banks and the Aurelius Plaintiffs had a conference call to see if an order with respect to the matters as between them could be agreed. Such agreement could not be reached.

* * *

The Non-Party Banks understand the Court's comments made at the September 3, 2013, hearing to be a reminder to the parties of the rationale and approach that this Court has adopted in the past:

> [The Court]: The problem I have is that there should be some reasonable definition of the information being sought. Also, there is no use getting information about something that might lead to an attachment in Argentina because that would be useless information, for obvious reasons. And I don't see that in your subpoenas there is sufficient definition. In other words, if you want to find out from the New York branch of [a bank] or [a bank] in general what transactions the Republic has, what accounts the Republic has, everything that the Republic does with that bank, it seems to me that is too broad because I have no reason to believe that everything that the Republic did with [the bank] would lead to attachable property.

(Aug. 30, 2011 Hr'g Tr. at 30:8-20.)

> [The Court]: If there is a way to narrow the subpoenas to eliminate entities that, realistically where there could be nothing productive gained, I certainly would like to do that.

(Aug. 30, 2011 Hr'g Tr. at 44:6-8.)

> [The Court]: If there's a way to narrow the subpoena, to reduce the burden on the Bank of America in some way, I think that should be done.

(Aug. 30, 2011 Hr'g Tr. at 45:10-12.)

---

[1] For example, the Citi Entities proposed as an initial matter, to search for and produce wire transfer information that mentioned the Republic or any of the more than 130 entities that appear to be offices or ministries of the Republic, including defense and diplomatic entities, because such a search would yield results that are most likely to lead to discovery of information that would lead to enforcement of Aurelius' judgments. The Citi Entities further suggested that the initial search be run from either mid-2012 or January 2013 to the present. The Citi Entities explained that even such a narrowed search could take months.

As to the other demands, the Citi Entities noted the physical, practical and legal limits imposed upon its worldwide branches, and explained that much of the requested information is not in the U.S. or accessible from the U.S. Nevertheless, the Citi Entities agreed to continue to investigate means of obtaining additional information addressing repos, swaps, derivative transactions, or other financial transactions entered into by the Citi Entities and the Republic, thus permitting targeted follow-up inquiries while avoiding an unfocused search for irrelevant or nonexistent documents.

> [The Court]: In discovery there's got to always be a rule of reason, and somehow if there really is – if there are commercial assets legitimately defined and so forth that are substantial and would produce a substantial recovery, we'll find it. That will be found. But it's not going to do anybody any good to go through massive exploration of entities where there is nothing that is going to turn up.

(May 13, 2004 Hr'g Tr. at 5:23-6:4.)

Given the Court's express directive at the September 3 hearing that further discussions are required, the Aurelius Plaintiffs' proposed order exceeds the scope of this Court's instructions to the parties during the hearing. The Aurelius Plaintiffs' proposed order seeks to compel compliance with subpoenas that the Court has already found were "not appropriately tailored," and regarding which the Court intended that the parties confer to narrow the scope, as was done in *NML Capital*. *See, e.g., Aurelius*, 2013 U.S. Dist. LEXIS 32459, at *27. The Non-Party Banks' order (Ex. A at ¶ 2), recognizes that the Court has directed the parties to confer on tailoring of the subpoenas to narrow the scope, and provides a mechanism for resolving disputes between the parties, without requiring additional hearings by this Court, through the appointment of a Magistrate Judge/Special Master. Such a person could also address the complex data processing and search protocol issues that will inevitably arise during the massive exercise upon which the Non-Party Banks are being directed to embark, as well as disputes concerning the overarching breadth of the subpoenas, the fact the Aurelius Plaintiffs assert that such subpoenas reach hundreds of parties not actually served with a subpoena, and issues regarding foreign bank secrecy and data privacy laws. Such an appointment would likely materially serve judicial and party economy.

The Aurelius Plaintiffs' order further proposes that the Non-Party Banks "produce all information responsive to the Aurelius Subpoenas wherever in the world it may be located within 45 days of the date of this Order." The Non-Party Banks and the Aurelius Plaintiffs, however, continue to engage in discussions regarding the subpoenas at issue, as well as an approach that addresses the burden on the Banks. During these discussions, several issues pervade notwithstanding efforts to address them. Moreover, counsel for the Non-Party Banks have explained that compliance will likely take on the order of months given the breadth of scope of the subpoenas at issue, could be exceedingly expensive, and will likely raise additional issues of compliance as searches are made. For these reasons the Non-Party Banks' proposed order contemplates production on a rolling basis, to be completed 180 days from entry of the order. The Magistrate Judge/Special Master will be able to manage the process and deal with the inevitable issues of compliance likely to arise as the Non-Party Banks attempt to comply with the exceedingly broad and complicated requests in the subpoenas.

* * *

The Non-Party Banks request that this Court enter their proposed order.

Very respectfully yours,

James L. Kerr

Enclosures

By Hand Delivery